D. Colton Boyles, Esq.
The Davillier Law Group, LLC
212 N First Ave., Suite 303
Sandpoint, Idaho 83864
Phone: 208-920-6140
Fax: 208-920-6130
ISBN# 10282

IN THE DISTRICT COURT OF THE FIRST JUDICIAL DISTRICT
OF THE STATE OF IDAHO, IN AND FOR THE COUNTY OF KOOTENAI

| | |
|---|---|
| Big Sky Development, Inc.,<br>*Plaintiff*<br><br>v.<br><br>Travelers Casualty and Surety<br>Company of America,<br>*Defendant* | Case No.: CV28-18-3274<br><br>Filing Fee: $221<br><br>**INITIAL COMPLAINT**<br>**AND**<br>**DEMAND FOR**<br>**JURY TRIAL** |

NOW INTO COURT, through undersigned counsel, does come and appear Plaintiff, Big

Sky Development, Inc., and for its Complaint against Defendant, Travelers Casualty and

Surety Company of America, hereby complains and alleges as follows:

## I.    THE PARTIES

1.  Plaintiff is, and was at all times relevant hereto, a duly formed Idaho corporation in

good standing with its principal place of business at 10063 Navion Drive, Hayden,

Kootenai County, Idaho 83835.

Meyer, Cynthia K.C.

2. Defendant is, and was at all times relevant hereto, a duly formed Connecticut corporation with its principal place of business at One Tower Square, Hartford, Connecticut 06183, and qualified and registered to do business, and conducting business in, the State of Idaho.

3. The underlying contract of insurance at issue in this action (the "Policy") was issued by Defendant to Plaintiff for delivery in the State of Idaho, was delivered by Defendant to Plaintiff in the State of Idaho, and the actions of Defendant complained of herein by Plaintiff took place in, or had substantial impact in, Kootenai County, Idaho.

## II.     JURISDICTION AND VENUE

4. Plaintiff hereby incorporates the allegations set forth in the preceding paragraphs as if fully set forth at this point herein.

5. Venue in this honorable Court is proper under the Idaho Code Title 41, Chapter 18, Section 1838 because the cause of action arose in Kootenai County, Idaho, the Plaintiff resides in Kootenai County, Idaho, and the Plaintiff is the Policy holder instituting this action.

6. Jurisdiction over this action lies with this honorable Court because the Policy was issued by Defendant to Plaintiff for delivery in the State of Idaho, was delivered by Defendant to Plaintiff in the State of Idaho, and the actions of Defendant complained of herein by Plaintiff took place in, or had substantial impact in, Kootenai County, Idaho.

## III. GENERAL ALLEGATIONS

### A. *The Policy, the Notice of Claim, and the Denial*

7. Plaintiff hereby incorporates the allegations set forth in the preceding paragraphs as if fully set forth at this point herein.

8. On July 31, 2015, Defendant issued the Policy to Plaintiff, and delivered the Policy to Plaintiff in Kootenai County, Idaho. The Policy bears number 106160096, and provides various coverages for Crime, as more fully set forth below. A true and correct copy of the Policy and its endorsements is attached hereto, made a part hereof, and labeled for identification as Plaintiff's Exhibit 1.

9. The Inception Date of the Policy was 12:01 a.m. Pacific Standard Time on August 13, 2015, and the Expiration Date of the Policy is 12:01 a.m. Pacific Standard Time on August 13, 2018. Plaintiff duly paid all premiums required by the Policy. Accordingly, the Policy is currently in force and effect.

10. The Policy coverage is noted as Crime, and includes various coverages, including Computer Crime coverage and Funds Transfer Fraud.

11. On August 13, 2016, an endorsement was added to the Policy, for a premium of ONE THOUSAND FIVE HUNDRED AND SIXTY-TWO DOLLARS ($1,562.00), that, *inter alia*, added coverage for social engineering fraud under an endorsement entitled Social Engineering Fraud Insuring Agreement Endorsement and bearing the number CRI-19070-0515. A true and correct copy of Social Engineering Fraud Insuring Agreement Endorsement CRI-19070-0515 (hereinafter, the "SEF Endorsement") is attached hereto, made a part hereof, and labeled for identification as Plaintiff's

Exhibit 2. The SEF Endorsement was in effect at all times relevant hereto, and remains in effect at this time.

12. On April 24, 2017, Plaintiff filed a Notice of Claim under the Policy with the Defendant, claiming a loss in the primary amount of TWO HUNDRED AND FORTY-EIGHT THOUSAND DOLLARS ($248,000). The Notice of Claim states in part:

> "We note that Policy Number 106160096 has several coverages addressing criminal and fraudulent activity. Particularly, we note Endorsement CRI-19070-0515, SOCIAL ENGINEERING FRAUD INSURING AGREEMENT ENDORSEMENT."

A true and correct copy of the Notice of Claim is attached hereto, made a part hereof, and labeled for identification as Plaintiff's Exhibit 3.

13. On April 26, 2017, Plaintiff received from Defendant a formal acknowledgement of the Notice of Claim together with a form for filing the Proof of Loss to support the claim. A true and correct copy of the April 26, 2017 acknowledgement of claim is attached hereto, made a part hereof, and labeled for identification as Plaintiff's Exhibit 4.

14. On August 7, 2017, Plaintiff, through undersigned counsel's law firm, properly and timely filed with the Defendant a Proof of Loss, in accordance with the terms of the Policy and the written instructions of the Defendant, setting forth the facts supporting the claim, attaching documentation of the loss, and providing complete correspondence with regard to the claim and the loss. A true and correct copy of the

Proof of Loss dated August 7, 2017, is attached hereto, made a part hereof, and labeled for identification as Plaintiff's Exhibit 5.

15. On September 28, 2017, Plaintiff received, through undersigned counsel's law firm, a formal letter from Defendant, denying all coverage under the Policy and rejecting the Claim (the "Denial Letter"). A true and correct copy of the Denial Letter is attached hereto, made a part hereof, and labeled for identification as Plaintiff's Exhibit 6. Even though Plaintiff called the SEF Endorsement to Defendant's attention in the Notice of Claim, as noted in paragraph 12 hereinabove, the Denial Letter never mentions the Social Engineering Fraud coverage at any point, including in its review of the Policy and its coverage analysis. The Denial Letter never mentions any investigation conducted by Defendant to determine coverage under the SEF Endorsement. Despite clearly ignoring the SEF Endorsement after Plaintiff specifically called that coverage to its attention in the Notice of Claim, Defendant falsely and misleadingly stated in its Denial Letter:

> "Travelers has reviewed this claim under *all available Insuring Agreements in the Policy*, including Insuring Agreements F. Computer Crime and G. Funds Transfer Fraud, which appear to give Big Sky the most favorable possibility of coverage." (emphasis added).

Defendant intentionally failed to address the primary coverage upon which Plaintiff relied in its Notice of Claim and Proof of Loss, as is more fully addressed hereinbelow.

*B. The Social Engineering Fraud Insuring Agreement Endorsement*

16. Social Engineering Fraud is a relatively new crime policy form which Defendant offered to Plaintiff for the first time in 2016. Plaintiff availed itself of the coverage Defendant offered, Defendant bound the coverage effective August 13, 2016, and Plaintiff faithfully paid all premiums due for such coverage as directed by Defendant.

17. The SEF Endorsement adds the following language to the Insuring Agreement section of the Policy:

> **SOCIAL ENGINEERING FRAUD**
>
> The Company will pay the **Insured** for the **Insured's** direct loss from the transferring, paying or delivering **Money** or **Securities**, directly caused by **Social Engineering Fraud** committed by a person purporting to be:
>
> a.    a **Vendor**; or
>
> b.    a **Client**.

18. The SEF Endorsement provides the following definitions to terms relevant to the additional coverage it affords to Plaintiff under the language noted above in paragraph 17:

> **Communication** means an electronic, telegraphic, cable, teletype, telephone, or written instruction received by an **Employee** that:
>
> a.  directs the **Employee** to transfer, pay, or deliver **Money** or **Securities**;
>
> b.  contains a misrepresentation of a material fact; and

c. is relied upon by the **Employee**, believing the material fact to be true.

*Social Engineering Fraud* means the intentional misleading of an **Employee** through the use of a **Communication**. *Vendor* means an entity or natural person that has provided goods or services to the Insured under a genuine, pre-existing:

d. written agreement; or

e. other arrangement,

**Vendor** does not mean any **Financial Institution**, asset manager, armored motor vehicle company, or similar entity.

19. The SEF Endorsement further provides:

This **Crime Policy** will not apply to loss resulting directly or indirectly from:

1. the giving or surrendering of **Money, Securities** or **Other Property** in any exchange or purchase, whether genuine or fictitious; or

2. any other giving or surrendering of, or voluntary parting with, **Money, Securities** or **Other Property**, whether or not induced by any dishonest or fraudulent act, *except when covered under*:

    i.      Insuring Agreement A.;

   ii. Insuring Agreement E.;

   iii. *the Social Engineering Fraud Insuring Agreement*; or

   iv. Insuring Agreement G., but only as respects **Funds Transfer Fraud** as defined in section *III. DEFINITIONS*, AA. 3. (emphasis supplied)

C. *The Facts of The Claim*

20. Rob Welling ("Welling") operated a front company called X5 Transport in Calgary, Canada ("X5"). Welling was a vendor who successfully supplied minor transport and custom services to Plaintiff in the past. More recently, however, Welling falsely purported to be a construction equipment vendor to Plaintiff as part of a scheme to defraud Plaintiff of money.

21. Through a series of email, text message, and telephone communications that contained misrepresentations of material facts, Welling intentionally misled Plaintiff's employee Jacki Fullerton ("Fullerton"), who relied upon the material misstatements made by Welling, believing them to be true. Through those fraudulent communications, Welling gained Fullerton's trust over time, and directed Fullerton to pay $248,000.00 to X5 during late April, 2017, for the sale of three pieces of equipment that X5 claimed to own but did not. The relevant communications are set forth in the Proof of Loss, Plaintiff's Exhibit 5.

22. Welling began the scam through a series of communications during April of 2016, when he introduced himself to Fullerton as a legitimate equipment delivery and

customs clearing service during a period when, due to the downturn in the oil industry in Calgary, construction equipment could be purchased at auction at attractive prices.

23. Plaintiff purchased two pieces of equipment at auction, after which Fullerton was approached by Welling.

24. Welling gained Fullerton's confidence by acting as a legitimate equipment delivery and customs clearing service during this time. Welling successfully delivered two pieces of equipment at minimal charges in order to establish his *bona fides* as a legitimate vendor, and gain Fullerton's confidence. He then used that confidence to scam Fullerton into believing that X5 had title to expensive pieces of construction equipment that it could sell to Plaintiff, when X5 did not in fact have title to any pieces of construction equipment. Thus, through a series of communications, Welling convinced Fullerton to pay X5 $248,000.00 under false pretenses, as X5 never had title to the equipment, and in fact had nothing to sell.

25. Upon information and belief, Weller has engaged in this scam repeatedly, preying on businesses in the United States from across the Canadian border. X5 purports to be a legitimate vendor to US businesses in order to gain their confidence and scam them of large sums, as was done in this instance.

26. Welling engaged in social engineering fraud as defined in the SEF Endorsement to the Policy. He intentionally misled an employee of Plaintiff, through a series of electronic and telephonic instructions received by the employee, by purporting to be a legitimate vendor when he was not, and directed the employee to transfer, pay or deliver money to Welling's front company, X5. The communications contained

misrepresentations of material facts in that Welling represented that he owned and was able to deliver clear title to the equipment to Plaintiff, when that was not true. Plaintiff's employee relied upon Welling's communications, believing the material facts to be true when they were not.

27. Despite Plaintiff laying these facts out very clearly in its Notice of Claim as well as its Proof of Loss, Defendant intentionally misrepresented in its Denial Letter that no aspect of the Insuring Agreement provided coverage, and failed to even consider or address the SEF Endorsement when it is not fairly debatable that the loss is covered by the Policy under the plain language of the SEF Endorsement.

28. Despite Plaintiff filing a clear Notice of Claim and Proof of Loss, Defendant has intentionally refused to pay Plaintiff's claims without even conducting a reasonable investigation based upon all available information, which is evident from the fact that no investigation was conducted into whether the SEF Endorsement covered the claim given that the Denial Letter makes no mention whatsoever of that coverage.

29. Despite Plaintiff filing a clear Notice of Claim and Proof of Loss, which established that Defendant's liability for the claim was reasonably clear under the terms of the SEF Endorsement, Defendant intentionally did not attempt in good faith to effectuate prompt, fair and equitable settlement of the claim, which is evident from the fact that no investigation was conducted into whether the SEF Endorsement covered the claim, Defendant intentionally misrepresented in its Denial Letter that no aspect of the Insuring Agreement provided coverage, and

Defendant failed to even consider or address the SEF Endorsement when it is not fairly debatable that the loss is covered by the plain language of the SEF Endorsement.

30. Despite Plaintiff filing a clear Notice of Claim and Proof of Loss, which established that Defendant's liability for the claim was reasonably clear under the terms of the SEF Endorsement, Defendant failed to promptly provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for its denial of the claim, which is evident from the fact that no investigation was conducted into whether the SEF Endorsement covered the claim, Defendant intentionally misrepresented in its Denial Letter that no aspect of the Insuring Agreement provided coverage, and Defendant failed to even consider or address the SEF Endorsement when it is not fairly debatable that the loss is covered by the plain language of the SEF Endorsement.

## IV.  CAUSES OF ACTION

### A.  First Cause of Action
*(Breach of Contract)*

31. Plaintiff hereby incorporates the allegations set forth in the preceding paragraphs as if fully set forth at this point herein.

32. There is a valid and existing insurance agreement between Plaintiff and Defendant.

33. Plaintiff performed, or was excused from performance, under the insurance agreement.

34. The plain language of the insurance agreement covers the claim made by Plaintiff under that insurance agreement.

35. Defendant breached the insurance agreement by, *inter alia,* refusing to properly compensate Plaintiff as required under the agreement.

36. Plaintiff sustained damages as a result of Defendant's breach of the agreement in an amount to be proven at trial, but in excess of the jurisdictional minimum of this Court, and in excess of the applicable Policy limits.

37. Plaintiff has been required to retain the services of an attorney to commence this action and are entitled to attorney's fees and costs in accordance with Idaho Code 41-1839.

## B. Second Cause of Action
*(Contractual Breach of the Implied Covenant of Good Faith and Fair Dealing)*

38. Plaintiff hereby incorporates the allegations set forth in the preceding paragraphs as if fully set forth at this point herein.

39. A covenant of good faith and fair dealing is implied in every Idaho insurance agreement.

40. Plaintiff and Defendant entered into a valid and existing insurance agreement in the State of Idaho, as is more fully described hereinabove.

41. Defendant owed Plaintiff a duty of good faith and fair dealing.

42. Defendant breached its duty of good faith and fair dealing by, *inter alia,* refusing to properly compensate Plaintiff as required by the Policy, refusing to properly consider the plain language of the Policy as it applies to the claim properly made by Plaintiff, refusing to properly investigate the claim under the applicable terms of the Policy,

and refusing to provide Plaintiff with a reasonable explanation of the denial of Plaintiff's claim.

43. Plaintiff sustained damages as a result of Defendant's breach of its duty of good faith and fair dealing in an amount to be proven at trial, but in excess of the jurisdictional minimum of this Court, and in excess of the Policy limits.

44. Plaintiff has been required to retain the services of an attorney to commence this action and is entitled to attorney's fees and costs in accordance with Idaho Code 41-1839.

### C. Third Cause of Action
*(Tortious Breach of the Implied Covenant of Good Faith and Fair Dealing)*

45. Plaintiff hereby incorporates the allegations set forth in the preceding paragraphs as if fully set forth at this point herein.

46. A covenant of good faith and fair dealing is implied in every Idaho insurance agreement.

47. Plaintiff and Defendant entered into a valid and existing insurance agreement in the State of Idaho, as is more fully described hereinabove.

48. Defendant owed Plaintiff a duty of good faith and fair dealing.

49. As an insurer, Defendant owed Plaintiff a fiduciary-like duty and there was a special element of reliance by Plaintiff.

50. Defendant negligently and/or intentionally breached its duty of good faith and fair dealing by, *inter alia,* refusing to properly compensate Plaintiff as required by the Policy, refusing to properly consider the plain language of the Policy as it applies to

the claim properly made by Plaintiff, refusing to properly investigate the claim under the applicable terms of the Policy, and refusing to provide Plaintiff with a reasonable explanation of the denial of Plaintiff's claim.

51. Plaintiff sustained damages as a result of Defendant's tortious breach of its duty of good faith and fair dealing in an amount to be proven at trial, but in excess of the jurisdictional minimum of this Court, and in excess of the Policy limits.

52. Plaintiff is further entitled to punitive damages as a result of Defendant's tortious breach of the implied covenant of good faith and fair dealing.

53. Plaintiff has been required to retain the services of an attorney to commence this action and is entitled to attorney's fees and costs in accordance with Idaho Code 41-1839.

### D. Fourth Cause of Action
*(Bad Faith)*

54. Plaintiff hereby incorporates the allegations set forth in the preceding paragraphs as if fully set forth at this point herein.

55. The plain language of the applicable Policy provisions covered the claim submitted by Plaintiff, and required the Defendant to pay the loss sustained by Plaintiff.

56. The validity of the claim submitted by Plaintiff is not fairly debatable under the applicable provisions of the Policy.

57. The Defendant intentionally and unreasonably denied coverage of Plaintiff's claim under the applicable terms of the Policy, and intentionally and unreasonably refused to pay Plaintiff's loss as required by the Policy.

58. Defendant's denial of Plaintiff's claim, and failure to pay Plaintiff's loss, under the applicable terms of the Policy was not due to a good faith mistake, but to the contrary was intentional.

59. The harm resulting to Plaintiff due to Defendant's intentional and unreasonable denial of Plaintiff's claim is not fully compensable by contractual damages.

60. The acts and omissions of Defendant as complained of herein, and yet to be discovered in this matter, constitute bad faith under the laws of the State of Idaho.

61. Plaintiff sustained damages as a result of Defendant's bad faith in an amount to be proven at trial, but in excess of the jurisdictional minimum of this Court, and in excess of the Policy limits.

62. Plaintiff is further entitled to punitive damages as a result of Defendant's bad-faith.

63. Plaintiff has been required to retain the services of an attorney to commence this action and is entitled to attorney's fees and costs in accordance with Idaho Code 41-1839.

### E.  Fifth Cause of Action
*(Unfair Claim Settlement Practices Under Idaho Code 41-1329)*

64. Plaintiff hereby incorporates the allegations set forth in the preceding paragraphs as if fully set forth at this point herein.

65. Defendant has intentionally engaged in unfair claim settlement practices, including but not limited to Defendant's intentional failure to properly settle and pay Plaintiff's claim as set forth hereinabove, including the following non-exhaustive particulars:

---

a. Misrepresenting pertinent facts or insurance policy provisions relating to coverages at issue;

b. Refusing to pay claims without conducting a reasonable investigation based upon all available information;

c. Not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear; and

d. Failing to promptly provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement.

66. Plaintiff sustained damages as a result of Defendant's unfair claim practices in an amount to be proven at trial, but in excess of the jurisdictional minimum of this Court, and in excess of the Policy limits.

67. Plaintiff is further entitled to punitive damages as a result of Defendant's unfair trade practices.

68. Plaintiff has been required to retain the services of an attorney to commence this action and is entitled to attorney's fees and costs in accordance with Idaho Code 41-1839.

/ /

WHEREFORE, Plaintiff hereby demands a jury trial and prays for judgment against the above-named Defendant as follows:

1. For general damages in an amount in excess of the Policy limits;

2. For special damages in an amount in excess of the Policy limits;

3. For punitive damages in an amount to be determined at trial;

4. For reasonable attorney's fees and costs of suit in accordance with Idaho Code 41-1839;

5. For interest at the statutory rate; and

6. For all such other and further legal and equitable relief as the Jury and/or this honorable Court shall deem just and proper.

Respectfully submitted,
Davillier Law Group, LLC

_____
D. Colton Boyles
212 North First Ave., Suite 303
Sandpoint, Idaho 83864
208-920-6140
208-920-6130 -- facsimile

# Plaintiff's Exhibit 1

# IMPORTANT NOTICE REGARDING INDEPENDENT AGENT AND BROKER COMPENSATION

For information on how Travelers compensates independent agents, brokers, or other insurance producers, please visit this website: www.travelers.com/w3c/legal/Producer_Compensation_Disclosure.html

If you prefer, you can call the following toll-free number: 1-866-904-8348. Or you can write to us at Travelers, Enterprise Development, One Tower Square, Hartford, CT 06183.


**TRAVELERS**

July 31, 2015

BIG SKY DEVELOPMENT, INC.
10063 N Navion Drive
HAYDEN, ID 83835

Re: Important Information about **Claims Information Line**

Dear  BIG SKY DEVELOPMENT, INC.

Travelers Bond & Specialty Insurance is pleased to announce its **1-800-842-8496** Claims Information Line.  This line is designed to provide insureds with an additional resource on how to report claims or those circumstances or events which may become claims.

Policyholders will be able to obtain assistance on the following topics from the Claims Information Line:

·The information that needs to be included with the claim notice

·The address, electronic mail address and/or facsimile number to which the policyholder can send claims related information

· Get questions on the claim process answered

The Declarations Page of your policy sets forth where you should report claims and claims related information.  You should also review the policy's reporting requirements to be aware of how much time you have to report a claim to Travelers.  The sooner Travelers is notified, the sooner we can become involved in the process and offer assistance to our policyholder.  A delay in reporting may result in all or part of a matter to fall outside of the coverage provided.

The Claims Information Line should streamline the claim reporting process and allow policyholders to ask questions on what information is needed as well as other questions which will assist them in working with Travelers.  While the Claims Information Line provides policyholders a valuable resource by answering questions and providing information, the line does not replace the reporting requirements contained in the Policy.

We hope this improvement to customer service is something our policyholders will find helps them understand the claim process and provides them a resource for reporting.

Best regards,
**Kourtney Shorts**

# IDAHO NOTICE

## KEEP THIS NOTICE WITH YOUR INSURANCE PAPERS

You can contact The Idaho Department of Insurance at the following address:

Idaho Department of Insurance
Consumer Affairs
700 W State Street, 3rd Floor
PO Box 83720
Boise, ID 83720-0043

or you can call 1-800-721-3272 or 208-334-4250.

You can also visit the Web site www.DOI.Idaho.gov.

© 2012 The Travelers Indemnity Company. All rights reserved.



**TRAVELERS**
**One Tower Square**
**Hartford, CT 06183**

07/31/2015

**BIG SKY DEVELOPMENT, INC.**
**10063 N Navion Drive**
**HAYDEN, ID 83835**

**RE: Risk Management PLUS+ Online® from Travelers Bond & Specialty Insurance** (www.rmplusonline.com)

Travelers Bond & Specialty Insurance is pleased to provide you with Risk Management PLUS+ Online, the industry's most comprehensive program for mitigating your management liability and crime exposures related to:

- Employment practices risks
- Employee Pension and Benefit Plan Fiduciary Liability
- Directors & Officers Liability
- Employee dishonesty and other crime related risks
- Kidnap and Ransom
- CyberRisk
- Identity Fraud Expense Reimbursement
- Professional liability

Risk Management PLUS+ Online is a flexible, comprehensive loss prevention program specifically designed for Travelers Bond & Specialty Insurance customers and is available to you at no additional cost. Included in the site is a library of articles, checklists and training on relevant risk mitigation, employment and management topics.

Risk Management PLUS+ Online is a full-featured knowledge base developed to aid you in more than just protection against lawsuits, but as a great resource for HR administrators, managers and executives as well. Browse from the Quick Links or News & Information sections. Share industry articles with managers and executive leaders to help develop ideas to increase workplace productivity, solutions for business issues and more!

**Highlights of Risk Management PLUS+ Online services include:**
- Web-based training for executives, managers and human resource personnel
- Practical solutions for problems faced in the workplace and managing your organization
- Topical webinars and weekly articles on current issues
- Model Employee Handbook, including policies and forms for downloading or printing that reduce risks in the workplace

The attached Risk Management PLUS+ Online Registration Instructions contain easy, step-by-step instructions to register for this valuable tool. For more information, call 1-888-712-7667 and ask for your Risk Management PLUS+ Online representative. It's that simple.

We strongly encourage you to take full advantage of this program to improve your organization.

Thank you for choosing Travelers Bond & Specialty Insurance for your insurance needs. Travelers is a market leader in providing management liability and crime coverages that are specifically customized for your organization. As your risks evolve, so do we, through our ability to provide you with responsive risk management services.

<u>Instructions for Registration & Orientation to Risk Management PLUS+ Online®</u>

*Registration for Site Administrators:*
The Site Administrator is the person in your organization who will oversee Risk Management PLUS+ Online for the organization. The Site Administrator is typically a person who leads human resources and/or financial functions or is responsible for legal matters pertaining to personnel. The Site Administrator may add other Site Administrators later to assist with their responsibilities. To register:

1. Go to www.rmplusonline.com.
2. In the Sign-In box, click **Register**.
3. Enter the password/passcode: TRVP110000
4. Fill in the Registration Information and click **Submit**.
5. Your organization is registered, and you are registered as Site Administrator.

*Learning to Navigate the Site:*
1. Go to www.rmplusonline.com. On each page, you will see a box outlined in blue that contains the instructions for use of that page.
2. If you have any questions, just click on **Contact Us** on the front page. Enter your question in the form provided, and the System Administrator will get back to you quickly with the answer.
3. You can also schedule a live walk-through of the site by sending a request for a walk-through via the contact link on the front page.



 

**CRIME
DECLARATIONS**

Travelers Casualty and Surety Company of America
Hartford, Connecticut
(A Stock Insurance Company, herein called the Company)

| ITEM 1 | **NAMED INSURED:**<br><br>**BIG SKY DEVELOPMENT, INC.**<br><br><br>D/B/A:<br><br><br><br>Principal Address:<br>**10063 N Navion Drive**<br>**HAYDEN, ID 83835** |
|---|---|
| ITEM 2 | **POLICY PERIOD:**<br><br>Inception Date: **August 13, 2015**        Expiration Date: **August 13, 2018**<br>12:01 A.M. standard time both dates at the Principal Address stated in ITEM 1. |
| ITEM 3 | **ALL NOTICES OF CLAIM OR LOSS MUST BE SENT TO THE COMPANY BY EMAIL, FACSIMILE, OR MAIL AS SET FORTH BELOW:**<br><br>**Email:BSIclaims@travelers.com**<br>**FAX:(888) 460-6622**<br><br>**Mail:Travelers Bond & Specialty Insurance Claim**<br>      **385 Washington St. – Mail Code 9275-NB03F**<br>      **St Paul, MN  55102** |
| ITEM 4 | **COVERAGE INCLUDED AS OF THE INCEPTION DATE IN ITEM 2:**<br><br>Crime |

| ITEM 5 | CRIME | | |
|---|---|---|---|
| | Insuring Agreement | Single Loss Limit of Insurance | Single Loss Retention |
| | **A. Fidelity** | | |
| | 1. Employee Theft | **$250,000** | **$2,500** |
| | 2. ERISA Fidelity | **Not Covered** | |
| | 3. Employee Theft of Client Property | **Not Covered** | |
| | **B. Forgery or Alteration** | **Not Covered** | |
| | **C. On Premises** | **Not Covered** | |
| | **D. In Transit** | **Not Covered** | |
| | **E. Money Orders and Counterfeit Money** | **Not Covered** | |
| | **F. Computer Crime** | | |
| | 1. Computer Fraud | **$250,000** | **$2,500** |
| | 2. Computer Program and Electronic Data Restoration Expense | **$250,000** | **$2,500** |
| | **G. Funds Transfer Fraud** | **$250,000** | **$2,500** |
| | **H. Personal Accounts Protection** | | |
| | 1. Personal Accounts Forgery or Alteration | **Not Covered** | |
| | 2. Identity Fraud Expense Reimbursement | **Not Covered** | |
| | **I. Claim Expense** | **$5,000** | **$0** |

| | |
|---|---|
| **ITEM 5.**<br>**(Cont'd)** | If *"Not Covered"* is inserted above opposite any specified Insuring Agreement, or if no amount is included in the Limit of Insurance, such Insuring Agreement and any other reference thereto is deemed to be deleted from this **Crime Policy**.<br><br>**Policy Aggregate Limit of Insurance:** ☐ Applicable ☒ Not Applicable<br><br>If a Policy Aggregate Limit of Insurance is applicable, then the Policy Aggregate Limit of Insurance for each **Policy Period** for Insuring Agreements A through H, inclusive, is: **Not Applicable**<br>If a Policy Aggregate Limit of Insurance is not included, then this **Crime Policy** is not subject to a Policy Aggregate Limit of Insurance as set forth in Section V. CONDITIONS B. PROVISIONS AFFECTING LOSS ADJUSTMENT AND SETTLEMENT 1. <u>Limit of Insurance</u> a. <u>Policy Aggregate Limit of Insurance</u>.<br><br>**Cancellation of Prior Insurance:**<br>By acceptance of this **Crime Policy**, the **Insured** gives the Company notice canceling prior policies or bonds issued by the Company that are designated by policy or bond numbers **Not Applicable**,<br>such cancellation to be effective at the time this **Crime Policy** becomes effective.<br><br>**INSURED'S PREMISES COVERED:**<br><br>All Premises of the Insured in the United States of America, its territories and possessions, Canada, or any other country throughout the world, except:<br>**Not Applicable** |
| **ITEM 6** | **PREMIUM FOR THE POLICY PERIOD:**<br><br>$1,140.00    Policy Premium<br><br>$380.00    Annual Installment Premium |
| **ITEM 7** | **FORMS AND ENDORSEMENTS ATTACHED AT ISSUANCE:**<br>CRI-3001-0109; CRI-5013-0613; CRI-19060-0713; ACF-7006-0511; CRI-19072-0315 |

**THE DECLARATIONS, THE APPLICATION, THE CRIME TERMS AND CONDITIONS, ANY PURCHASED INSURING AGREEMENTS, AND ANY ENDORSEMENTS ATTACHED THERETO, CONSTITUTE THE ENTIRE AGREEMENT BETWEEN THE COMPANY AND THE NAMED INSURED.**

Countersigned By

IN WITNESS WHEREOF, the Company has caused this policy to be signed by its authorized officers.

Executive Vice President

Corporate Secretary

©2009 The Travelers Companies, Inc. All Rights Reserved


## CRIME TERMS AND CONDITIONS

### PLEASE READ ALL TERMS AND CONDITIONS CAREFULLY

**CONSIDERATION CLAUSE**

**IN CONSIDERATION** of the payment of the premium stated in the Declarations, and subject to the Declarations and pursuant to all the terms, conditions, exclusions and limitations of this **Crime Policy**, the Company will pay the **Insured** for direct loss that the **Insured** sustains which is directly caused by a **Single Loss** taking place at any time and which is **Discovered** by the **Insured** during the **Policy Period** or during the Extended Period to Discover Loss pursuant to the terms set forth in Section V. CONDITIONS A. GENERAL CONDITIONS 3. Extended Period to Discover Loss.

---

**I.     INSURING AGREEMENTS**

This **Crime Policy** provides coverage under each of the following Insuring Agreements. Notwithstanding the aforesaid, if ITEM 5 of the Declarations indicates that any Insuring Agreement is "*Not Covered,*" then such Insuring Agreement and any other reference thereto is deemed to be deleted from this **Crime Policy**.

**A.     FIDELITY**

     1.     Employee Theft

        The Company will pay the **Insured** for the **Insured's** direct loss of, or direct loss from damage to, **Money, Securities** and **Other Property** directly caused by **Theft** or **Forgery** committed by an **Employee**, whether identified or not, acting alone or in collusion with other persons.

     2.     ERISA Fidelity

        The Company will pay the **Insured** for direct loss of, or direct loss from damage to, **Money, Securities** and **Other Property** that belongs to an **Employee Benefit Plan**, directly caused by **Theft** or **Forgery** committed by a **Fiduciary**, whether identified or not, acting alone or in collusion with other persons.

     3.     Employee Theft of Client Property

        The Company will pay the **Insured** for direct loss of, or direct loss from damage to, **Money, Securities** and **Other Property** sustained by the **Insured's Client**, directly caused by **Theft** or **Forgery** committed by an identified **Employee**.

**B.     FORGERY OR ALTERATION**

     The Company will:

        1.     pay the **Insured** for the **Insured's** direct loss directly caused by **Forgery** or alteration of, on or in any written **Covered Instruments** that are:

---

©2009 The Travelers Companies, Inc. All Rights Reserved

    a.    made by, drawn by, or drawn upon, the **Insured**, or purport to have been so made or drawn; or

    b.    made or drawn by one acting as the **Insured's** agent, or purport to have been so made or drawn; and

2.    reimburse the **Insured** for reasonable legal defense expenses that the **Insured** has paid if the **Insured** is sued for refusing to pay any written **Covered Instrument** under this Insuring Agreement B. on the basis that it has been **Forged** or altered. Reimbursement of such legal expenses is conditioned upon the **Insured's** receipt of the Company's prior written consent to defend against such suit. The amount of any legal expenses reimbursed under Insuring Agreement B. is in addition to the applicable Single Loss Limit of Insurance for Insuring Agreement B.

A signature that is a mechanical or electronic reproduction of a handwritten signature produced by a mechanical check-writing machine or a computer printer is treated the same as a handwritten signature. An **Electronic Signature** is not treated the same as a mechanical or electronic reproduction of a handwritten signature and is not a **Forgery** under this Insuring Agreement B.

For purposes of this Insuring Agreement B., the term "check" includes a "substitute check" as defined in the Check Clearing for the 21st Century Act, and will be treated the same as the original it replaced.

**C.    ON PREMISES**

The Company will pay the **Insured** for:

1.    the **Insured's** direct loss of **Money** or **Securities** located inside the **Premises** or **Financial Institution Premises** directly caused by **Theft**, committed by a person present inside such **Premises** or **Financial Institution Premises**;

2.    the **Insured's** direct loss of **Money** or **Securities** located inside the **Premises** or **Financial Institution Premises** directly caused by disappearance, damage or destruction;

3.    the **Insured's** direct loss of, or direct loss from damage to, **Other Property** located inside the **Premises**:
    a.    directly caused by an actual or attempted **Robbery**; or
    b.    in a safe or vault, directly caused by an actual or attempted **Safe Burglary**; and

4.    the **Insured's** direct loss from damage to the **Premises** or its exterior resulting directly from an actual or attempted **Theft**, **Robbery** or **Safe Burglary**, if the **Insured** is the owner of the **Premises** or is liable for damage to it; or

5.    the **Insured's** direct loss of, or loss from damage to, a locked safe, vault, cash register, cash box or cash drawer located inside the **Premises** resulting directly from an actual or attempted **Theft**, **Robbery** or **Safe Burglary**, if the **Insured** is the owner of the locked safe, vault, cash register, cash box or cash drawer or is liable for damage thereto.

**D.    IN TRANSIT**

1.    The Company will pay the **Insured** for the **Insured's** direct loss of **Money** or **Securities** directly caused by **Theft**, disappearance, damage or destruction while in transit outside the **Premises** and in the care and custody of:

a. **a Messenger**, including while temporarily within the living quarters of a **Messenger**; or

b. an armored motor vehicle company.

2. The Company will pay the **Insured** for the **Insured's** direct loss of, or the **Insured's** direct loss from damage to, the **Insured's Other Property** directly caused by an actual or attempted **Robbery** while in transit outside the **Premises** and in the care and custody of:

a. **a Messenger**; or

b. an armored motor vehicle company.

3. The Company will pay the **Insured** for the **Insured's** direct loss of, or direct loss from damage to, the **Insured's Other Property** directly caused by an actual or attempted **Theft** of the **Insured's Other Property** while it is temporarily within the living quarters of a **Messenger**.

Coverage under this Insuring Agreement D. begins immediately upon receipt of the **Money, Securities** or **Other Property** by the transporting party and ends immediately upon delivery to the designated recipient or its agent.

E. **MONEY ORDERS AND COUNTERFEIT MONEY**

The Company will pay the **Insured** for the **Insured's** direct loss directly caused by the **Insured's** good faith acceptance of:

1. original money orders, issued or purportedly issued by any post office, express company or bank located in the United States of America, its territories and possessions, Canada, or any other country in which the **Insured** maintains a physical **Premises**, that are not paid upon presentation; or

2. **Counterfeit Money**, of the United States of America, its territories and possessions, Canada, or any other country in which the **Insured** maintains a physical **Premises** that is acquired during the regular course of business;

in exchange for merchandise, **Money** or services.

F. **COMPUTER CRIME**

1. Computer Fraud

The Company will pay the **Insured** for the **Insured's** direct loss of, or direct loss from damage to, **Money, Securities** and **Other Property** directly caused by **Computer Fraud**.

2. Computer Program and Electronic Data Restoration Expense

The Company will pay the **Insured** for reasonable **Restoration Expense** that the **Insured** incurs to restore or replace damaged or destroyed **Computer Programs** or **Electronic Data** stored within the **Insured's Computer System** directly caused by a **Computer Violation**.

For purposes of this Insuring Agreement F.2., a **Single Loss** involving **Computer Program** and **Electronic Data Restoration Expense** applies to reasonable **Restoration Expense** incurred by the **Insured** between the time the **Insured Discovers** the damage or destruction and the time the

©2009 The Travelers Companies, Inc. All Rights Reserved

**Insured's Computer Program** or **Electronic Data** is restored to the level of operational capability that existed immediately preceding a **Computer Violation**. Recurrence of the same **Computer Virus** after the **Insured's Computer Program** or **Electronic Data** has been restored constitutes a separate **Single Loss**.

Payment of reasonable **Restoration Expense** applies:

a. only to **Computer Programs** and **Electronic Data** which the **Insured** owns or leases, or for which the **Insured** is legally liable; and
b. only if the **Insured** is unable to reproduce such **Computer Programs** or **Electronic Data** from back-up data copies.

Payment of reasonable **Restoration Expense** will be made to the **Insured** upon the completion of the restoration of the damaged or destroyed **Computer Programs** or **Electronic Data**.

If a **Single Loss** is covered under both Insuring Agreements F.1. and F.2., then only the Retention for a **Single Loss** under Insuring Agreement F.1. will be applicable and the payment of **Restoration Expense** under Insuring Agreement F.2. will be part of, and not in addition to, the Single Loss Limit of Insurance for Insuring Agreement F.1.

**G. FUNDS TRANSFER FRAUD**

The Company will pay the **Insured** for the **Insured's** direct loss of **Money** and **Securities** contained in the **Insured's Transfer Account** directly caused by **Funds Transfer Fraud**.

**H. PERSONAL ACCOUNTS PROTECTION**

1. Personal Accounts Forgery or Alteration

The Company will pay the **Insured**, on behalf of the **Insured's Management Staff Member**, for loss incurred by the **Insured's Management Staff Member**, directly caused by **Forgery** or alteration of, on or in any written **Covered Personal Instruments** that are:

a. drawn upon personal accounts of the **Insured's Management Staff Member**, or purported to have been so drawn; or
b. made or drawn by one acting as an agent of the **Insured's Management Staff Member**, or purport to have been so made or drawn.

A signature that is a mechanical or electronic reproduction of a handwritten signature produced by a mechanical check-writing machine or a computer printer will be treated the same as a handwritten signature. An **Electronic Signature** is not treated the same as a mechanical or electronic reproduction of a handwritten signature and is not a **Forgery** under this Insuring Agreement H.

For purposes of this Insuring Agreement H.1. the term "check" includes a substitute check as defined in the Check Clearing for the 21st Century Act, and will be treated the same as the original it replaced.

2. Identity Fraud Expense Reimbursement

The Company will reimburse the **Insured**, on behalf of the **Insured's Management Staff Member**, for **Identity Fraud Expense** incurred by the **Insured's Management Staff Member** as a direct result of any **Identity Fraud**.

©2009 The Travelers Companies, Inc. All Rights Reserved

## I. CLAIM EXPENSE

The Company will pay the **Insured** for reasonable **Claim Expenses** incurred and paid by the **Insured** to establish the existence, amount and preparation of the **Insured's** proof of loss in support of a covered claim for loss under any Insuring Agreement of this **Crime Policy**.

The following conditions specifically apply to this Insuring Agreement I.:

1.   any **Claim Expenses** payable to the **Insured** are only applicable to any covered loss which exceeds the Single Loss Retention for the Insuring Agreement that is the subject of a claim under this **Crime Policy**;

2.   **Claim Expenses** that are payable to the **Insured** are in addition to the Single Loss Limit of Insurance for the Insuring Agreement that is the subject of a claim under this **Crime Policy**; and

3.   **Claim Expenses** payable to the **Insured** will be paid to the **Insured** at the same time as the payment of the valid and collectible loss under the Insuring Agreement that is the subject of a claim under this **Crime Policy**.

## II. GENERAL AGREEMENTS

### A. JOINT INSURED

1.   If the **Insured** consists of more than one entity, then the **First Named Insured** acts for itself and for every other **Insured** for all purposes of this **Crime Policy**.

2.   If any **Insured**, or a partner or **Management Staff Member** of that **Insured**, has knowledge of any information relevant to this **Crime Policy**, that knowledge is considered knowledge of every **Insured**.

3.   An **Employee** of any **Insured** is considered to be an **Employee** of every **Insured**.

4.   The Company will not pay the **Insured** more for loss or losses sustained by more than one **Insured** than the amount the Company would pay if all loss or losses had been sustained by one **Insured**.

5.   Payment by the Company to the **First Named Insured** for loss sustained by any **Insured**, or payment by the Company to the **Employee Benefit Plan** for loss sustained under Insuring Agreement A.2, fully releases the Company on account of such loss.

6.   If this **Crime Policy** or any of its Insuring Agreements are canceled or terminated as to any **Insured**, loss sustained by that **Insured** is covered only if **Discovered** by the **Insured** during the period of time provided in the Extended Period To Discover Loss pursuant to the terms set forth in Section V. CONDITIONS A. GENERAL CONDITIONS 3. Extended Period to Discover Loss; provided, this extended period to discover loss terminates as to that **Insured** immediately upon the effective date of any other insurance obtained by that **Insured** replacing in whole or in part the insurance afforded by this **Crime Policy**, whether or not such other insurance provides coverage for loss sustained prior to its effective date.

### B. ADDITIONAL OFFICES

If the **Insured** establishes any additional offices, other than by consolidation with, merger with, purchase of, or acquisition of assets or liabilities of another organization while this **Crime Policy** is in effect, such offices are automatically covered by this **Crime Policy** from the date of such establishment without the requirement of notice to the Company or the payment of additional premium for the remainder of the **Policy Period**.

C.  **CONSOLIDATION, MERGER OR PURCHASE OF ASSETS**

If, during the **Policy Period**, the **Insured** merges with, purchases or acquires the assets or liabilities of another entity, this **Crime Policy** will provide coverage for that merged, purchased, or acquired entity, subject to all other terms and conditions herein, but only for loss **Discovered** by the **Insured** after the effective date of such merger, purchase, or acquisition; provided, the **Insured** gives the Company written notice of such merger, purchase, or acquisition, and specific application has been submitted on the Company's form in use at the time, together with such documentation and information as the Company may require, all within 90 days after the effective date of such merger, purchase, or acquisition. Coverage for the merged, purchased, or acquired entity will not be afforded following such 90-day period unless the Company has agreed to provide such coverage, subject to any additional terms and conditions as the Company may require, and the **Insured** has paid the Company any additional premium as may be required by the Company. Any **Employee Benefit Plan** or **Sponsored Plan** acquired as above will be included as **Insureds** as specified in Item 1 of the Declarations.

The 90-day notice requirement and the 90-day limitation of coverage will not apply, provided: (1) the assets of the merged, purchased, or acquired entity do not exceed 30% of the total assets of all **Insureds** as reflected in the **Insured's** most recent fiscal year-end financial statement, or (2) the merger, purchase, or acquisition occurs less than 90 days prior to the end of the **Policy Period**.

D.  **ACQUISITIONS**

If, during the **Policy Period**, the **Insured** acquires a **Subsidiary**, this **Crime Policy** will provide coverage for such **Subsidiary** and its respective **Management Staff Members**, **Employee Benefit Plans**, and **Sponsored Plans**, subject to all other terms and conditions of this **Crime Policy**, provided written notice of such acquisition has been given to the Company, and specific application has been submitted on the Company's form in use at the time, together with such documentation and information as the Company may require, all within 90 days after the effective date of such acquisition. Coverage for such **Subsidiary** will not be afforded following such 90-day period unless the Company has agreed to provide such coverage, subject to any additional terms and conditions as the Company may require, and the **Insured** has paid the Company any additional premium as may be required by the Company.

The 90-day notice requirement and the 90-day limitation of coverage will not apply provided that: (1) the assets of the acquired **Subsidiary** do not exceed 30% of the **Insured's** total assets as reflected in the **Insured's** most recent fiscal year-end financial statement; or (2) the acquisition occurs less than 90 days prior to the end of the **Policy Period**.

E.  **CHANGE OF CONTROL – NOTICE REQUIREMENTS**

When the **Insured** learns that a **Change of Control** has taken place as to any **Insured**, or will take place during the **Policy Period**, the **Insured** must give the Company written notice within 90 days of the effective date of such **Change of Control**.

---

*III.*   *DEFINITIONS*

Wherever appearing in this **Crime Policy**, the following words and phrases appearing in bold type have the meanings set forth in this Section III. DEFINITIONS:

A.   ***Change of Control*** means:

1.   the acquisition of any **Insured**, or of all or substantially all of its assets, by another entity, or the merger or consolidation of any **Insured** into or with another entity such that the **Insured** is not the surviving entity; or

2.   the obtaining by any person, entity or affiliated group of persons or entities of the right to elect, appoint or designate more than 50% of the board of directors or board of managers or to exercise a majority control of the board of directors, board of managers, or a functional equivalent thereof of any **Insured**.

B.   **Claim Expenses** means reasonable fees, costs and expenses of outside accountants, attorneys, consultants or experts retained by the **Insured** to determine the amount and extent of loss covered under this **Crime Policy**. The reasonableness of such expenses will be determined by the Company. The phrase does not mean or include any of the **Insured's** internal corporate fees, costs (direct or indirect), obligations or **Employee** wages and salaries.

C.   **Client** means an entity designated as a **Client** by endorsement to this **Crime Policy** for which the **Insured** performs services as specified in a written agreement, but only while the written agreement is in effect.

D.   **Client's Premises** means the interior of that portion of any building the **Insured's Client** occupies in conducting its business.

E.   **Computer Fraud** means:

The use of any computer to fraudulently cause a transfer of **Money**, **Securities** or **Other Property** from inside the **Premises** or **Financial Institution Premises**:

  1.   to a person (other than a **Messenger**) outside the **Premises** or **Financial Institution Premises**; or
  2.   to a place outside the **Premises** or **Financial Institution Premises**.

F.   **Computer Program** means a set of related electronic instructions that direct the operations and functions of a **Computer System** or devices connected to it that enable the **Computer System** or devices to receive, process, store, retrieve, send, create or otherwise act upon **Electronic Data**.

G.   **Computer System** means a computer and all input, output, processing, storage and communication facilities and equipment that are connected to such a device and that the operating system or application software used by the **Insured** are under the direct operational control of the **Insured**. Off-line media libraries are deemed to be part of such **Computer System**.

H.   **Computer Violation** means:

  1.   a **Computer Virus** designed to damage or destroy a **Computer Program** or **Electronic Data**; or
  2.   vandalism by a natural person, including an **Employee**, who has gained unauthorized electronic access to the **Insured's Computer System**.

I.   **Computer Virus** means a set of unauthorized instructions, programmatic or otherwise:

  1.   directed solely against the **Insured**; and
  2.   that propagate themselves through the **Computer System** or networks;

provided such instructions were maliciously introduced by a natural person.

J.   **Counterfeit** means an imitation of **Money** that is intended to deceive and to be taken as genuine.

K.   **Covered Instruments** means:
  1.   checks, drafts, promissory notes, bills of exchange or similar written promises, orders or directions to pay a sum certain in **Money**; and
  2.   written instruments required in conjunction with any transaction involving any **Credit, Debit or Charge Card** issued to the **Insured**, the **Insured's Employees** or the **Insured's Management Staff Members** for business purposes.

L.   **Covered Personal Instruments** means:
  1.   checks, drafts, promissory notes or similar written promises, orders or directions to pay a sum certain in **Money**; and

2.    written instruments required in conjunction with any transaction involving any **Credit, Debit or Charge Card** issued to a **Management Staff Member** for personal use.

M.    ***Credit, Debit or Charge Card*** means any card, plate or other similar device used for the purpose of obtaining **Money**, property, labor or services on credit or for immediate payment. The terms do not mean a note, check, draft, money order or other negotiable instrument.

N.    ***Crime Policy*** means, collectively, the Declarations, the application, the Crime Terms and Conditions, and any endorsements attached thereto.

O.    ***Digital Signature*** means an electronic identifier created by computer, within, attached to or logically associated with a record and executed or adopted by a person with the intent to sign the record.

P.    ***Discover, Discovered,*** or ***Discovery*** means the moment when the **Insured**, any partner in the **Insured**, or **Management Staff Member**:

        1.    first become(s) aware of facts that would cause a reasonable person to assume that a loss of a type covered by this **Crime Policy** has been or will be incurred, regardless of when the act or acts causing or contributing to such loss occurred, even though the exact details of loss may not then be known; or

        2.    first receive(s) notice of a claim against the **Insured** alleging facts which, if true, would constitute a loss under this **Crime Policy**,

whichever occurs first.

Q.    ***Electronic Data*** means facts or information converted to a form:

        1.    usable in a **Computer System**;

        2.    that does not provide instructions or directions to a **Computer System**; or

        3.    that is stored on electronic processing media for use by a **Computer Program**.

R.    ***Electronic Signature*** means a **Digital Signature**, an electronic sound, symbol or process, within, attached to, or logically associated with a record and executed or adopted by a person with the intent to sign the record.

S.    ***Employee*** means:

        1.    any natural person:

                a.    while in the **Insured's** service or for 60 days after termination of service, unless such termination is due to **Theft** or **Forgery** or any other dishonest act committed by the **Employee**;

                b.    who the **Insured** compensates directly by salary, wages or commissions; and

                c.    who the **Insured** has the right to direct and control while performing services for the **Insured**;

        2.    any natural person who is temporarily furnished to the **Insured**:

                a.    to substitute for an **Employee** as set forth in paragraph 1. above, who is on medical, military or other leave of absence; or

                b.    to meet seasonal or short-term workload conditions;

        while that person is subject to the **Insured's** direction and control and performing services for the **Insured**; provided, any such natural person who has care and custody of property outside the **Premises** is specifically excluded from this definition;

---

©2009 The Travelers Companies, Inc. All Rights Reserved

3.      any natural person, other than a temporary **Employee** described in paragraph 2. above, who is leased to the **Insured** under a written agreement between the **Insured** and a labor leasing firm, while that person is subject to the **Insured's** direction and control and performing services for the **Insured**;

4.      any natural person:

         a.      who is a member of the board of directors, member of the board of trustees or **LLC Manager** while acting as a member of any of the **Insured's** elected or appointed committees, including any member of such committee, to perform on the **Insured's** behalf, specific, as distinguished from general, directorial acts;

         b.      who is a non-compensated officer;

         c.      other than a non-compensated fund solicitor, while performing services for the **Insured** that are usual to the duties of an **Employee** or officer;

         d.      while acting as a non-compensated fund solicitor during fund raising campaigns;

         e.      who is a former **Employee**, member of the board of directors, partner, **LLC Manager**, or member of the board of trustees retained as a consultant while that person is subject to the **Insured's** direction and control and performing services for the **Insured**;

         f.      who is a guest student or intern pursuing studies or duties in any of the **Insured's** offices or **Premises**; while such person is subject to the **Insured's** direction and control and performing services for the **Insured**;

         g.      who is a volunteer, while such person is subject to the **Insured's** direction and control and is performing services for the **Insured**, or

5.      any attorney retained by the **Insured**, and any employee of such attorney, while performing legal services for the **Insured**.

*Employee* also means any individual described in paragraphs 1-5 above while such person is on medical, military, or other leave of absence from the **Insured**. Coverage applies to any such **Employee** while on leave, regardless of whether such person remains subject to the **Insured's** direction and control during the time of leave.

*Employee* does not mean any agent, broker, factor, commission merchant, consignee, independent contractor or representative or other person of the same general character not specified in paragraphs 1. through 5. above.

T.      ***Employee Benefit Plan*** means an employee welfare benefit plan or an employee pension benefit plan as more fully set forth in Title 1, Section 3 of the Employee Retirement Income Security Act of 1974 and any amendments thereto (ERISA) and which is solely sponsored by an **Employee Benefit Plan Sponsor**.

U.      **Employee Benefit Plan Sponsor** means:

     1.      the **First Named Insured**,

     2.      any **Subsidiary**, or

     3.      any other entity listed in Item 1. of the Declarations.

©2009 The Travelers Companies, Inc. All Rights Reserved

V.   *Fiduciary* means any natural person who is a trustee, an officer, an **Employee** or an administrator of any **Employee Benefit Plan**; and any person, or a member of the board of directors, an officer, an **Officer-Shareholder**, a member of the board of trustees, an **LLC Manager**, or an **Employee** while that person is handling **Money**, **Securities** and **Other Property** that belongs to any **Employee Benefit Plan**.

**Fiduciary** does not mean any agent, broker, independent contractor, broker/dealer, registered representative, investment advisor, custodian or other person or entity of the same general character.

W.   *Financial Institution* means:

   1.   a bank, trust company, savings bank, credit union, savings and loan association or similar thrift institution; or

   2.   a stock brokerage firm, mutual fund, liquid assets fund or similar investment institution.

X.   *Financial Institution Premises* means the interior of that portion of any building occupied by a **Financial Institution** (including any night depository chute and any safe maintained by such **Financial Institution**), transfer agent or registrar or similarly recognized place of safe deposit.

Y.   *First Named Insured* means the entity first named in ITEM 1 of the Declarations.

Z.   *Forgery*, or *Forged* means the signing of the name of another person or organization with a handwritten signature physically affixed directly to a **Covered Instrument** or **Covered Personal Instrument**, without authority and with the intent to deceive; it does not mean a signature that consists in whole or in part of one's own name signed with or without authority in any capacity, for any purpose.

AA.   *Funds Transfer Fraud* means:

   1.   an electronic, telegraphic, cable, teletype or telephone instruction fraudulently transmitted to a **Financial Institution** directing such institution to debit a **Transfer Account** and to transfer, pay or deliver **Money** or **Securities** from the **Transfer Account** which instruction purports to have been transmitted by the **Insured**, but was in fact fraudulently transmitted by someone other than the **Insured** without the **Insured's** knowledge or consent;

   2.   a fraudulent written instruction, other than one covered under Insuring Agreement B., issued to a **Financial Institution** directing such **Financial Institution** to debit a **Transfer Account** and to transfer, pay or deliver **Money** or **Securities** from such **Transfer Account** by use of an electronic funds transfer system at specified intervals or under specified conditions, which written instruction purports to have been issued by the **Insured** but was in fact fraudulently issued, **Forged** or altered by someone other than the **Insured** without the **Insured's** knowledge or consent; or

   3.   an electronic, telegraphic, cable, teletype, telefacsimile, telephone or written instruction initially received by the **Insured**, which purports to have been transmitted by an **Employee**, but which was in fact fraudulently transmitted by someone else without the **Insured's** or the **Employee's** consent.

BB.   *Identity Fraud* means the act of knowingly transferring or using, without lawful authority, a means of identification of a **Management Staff Member** with the intent to commit, aid, or abet any unlawful activity that constitutes a violation of federal law or a felony under any applicable jurisdiction.

CC.   *Identity Fraud Expense* means:

   1.   costs for notarizing fraud affidavits or similar documents for credit agencies, financial institutions, merchants or other credit grantors that have required that such affidavits be notarized;

   2.   costs for certified mail to law enforcement agencies, credit agencies, financial institutions, merchants or other credit grantors;

---

©2009 The Travelers Companies, Inc. All Rights Reserved

3.     costs for long distance telephone calls to law enforcement agencies, credit agencies, financial institutions, merchants or other credit grantors to report or discuss any actual **Identity Fraud**;

4.     lost wages, up to a maximum payment of $1,000. per week for a maximum period of five (5) weeks, as a result of absence from employment:

      a.     to communicate with law enforcement agencies, legal counsel, credit agencies, financial institutions, merchants or other credit grantors;

      b.     to complete fraud affidavits or similar documents; or

      c.     due to wrongful incarceration arising solely from someone having committed a crime in the **Management Staff Member's** name; provided, that lost wages will not apply in the case of wrongful incarceration absent all charges being dismissed or an acquittal;

5.     loan application fees for re-applying for a loan or loans when the original application is rejected solely because the lender received incorrect credit information;

6.     reasonable attorney fees incurred, with the Company's prior written consent, for:

      a.     defense of lawsuits brought against the **Insured's Management Staff Member** by financial institutions, merchants, other credit grantors or their collection agencies;

      b.     the removal of any criminal or civil judgments wrongly entered against the **Insured's Management Staff Member**; or

      c.     challenging the accuracy or completeness of any information in a consumer credit report; and

7.     costs for daycare and eldercare incurred solely as a direct result of any **Identity Fraud Discovered** during the **Policy Period**.

*Identity Fraud Expense* does not include any expense or loss not listed in paragraphs 1. through 7. of this Definition CC..

DD.    *Insured* means:

     1.     for the purposes of Insuring Agreement A.2., any and all **Employee Benefit Plans**;

       a.     which have been established or maintained by an **Employee Benefit Plan Sponsor** as of the inception date of this **Crime Policy**, or

       b.     which have been created or acquired by an **Employee Benefit Plan Sponsor** after the inception date of this **Crime Policy**, subject to the provisions of General Agreements C and D.

    or

     2.     for the purposes of all other Insuring Agreements:

       a.     the **First Named Insured**,

       b.     any **Subsidiary**,

       c.     any **Sponsored Plan,** or

       d.     any other entity listed in Item 1. of the Declarations.

EE.    *LLC Manager* means any natural person who was, is or becomes a manager, member of the board of managers, or a functionally equivalent executive of a limited liability company.

FF.    *LLC Member* means any natural person who has an ownership interest in a limited liability company.

©2009 The Travelers Companies, Inc. All Rights Reserved

GG.    **Management Staff Member** means the **Insured's** proprietor, natural person partner, member of the board of directors, member of the board of trustees, officer, risk manager, in-house general counsel, **LLC Manager**, or **LLC Member**.

HH.    **Messenger** means any **Management Staff Member**, or relative thereof, any **Officer-Shareholder**, or any **Employee**, duly authorized, while having care and custody of covered property outside the **Premises**.

II.    **Money** means a medium of exchange in current use and authorized or adopted by a domestic or foreign government, including currency, coins, bank notes, bullion, travelers' checks, registered checks and money orders held for sale to the public.

JJ.    **Officer-Shareholder** means any officer who has a 25% or greater ownership interest in any one or more **Insureds**.

KK.    **Other Property** means any tangible property other than **Money** and **Securities** that has intrinsic value.

LL.    **Policy Period** means the period from the Inception Date to the Expiration Date set forth in ITEM 2 of the Declarations. In no event will the **Policy Period** continue past the effective date of cancellation or termination of this **Crime Policy**.

MM.    **Premises** means the interior of that portion of any building the **Insured** occupies in conducting the **Insured's** business.

NN.    **Restoration Expense** means reasonable costs incurred by the **Insured** to reproduce **Computer Programs** or **Electronic Data** and enable the **Insured** to restore the **Insured's Computer System** to the level of operational capability that existed immediately preceding a **Computer Violation**.

**Restoration Expense** does not include:

1.    the **Insured's** internal corporate costs and expenses, including **Employee** remuneration and any costs related to any legal action;

2.    expenses incurred as a result of the reconstruction of **Computer Programs** and **Electronic Data** recorded on media, including magnetic or optical media if there are no analyses files, specifications or backups of **Computer Programs** or **Electronic Data** held outside the **Premises**;

3.    expenses incurred as a result of the reconstruction of **Computer Programs** and **Electronic Data** if the **Insured** knowingly used illegal copies of programs;

4.    expenses incurred to render the **Computer Programs** and **Electronic Data** usable by replacement processing equipment;

5.    expenses incurred to design, update or improve **Computer Programs** or **Electronic Data** or to perfect their operation or performance;

6.    expenses incurred as a result of alteration in **Computer Programs** and **Electronic Data** held on magnetic media due to the effect of magnetic fields, incorrect usage of the **Computer Programs** and **Electronic Data**, or the obsolescence of the **Computer System**;

7.    the **Insured's** lost revenue, sales or profits; or

8.    expenses incurred by any customer.

OO.    **Robbery** means the unlawful taking of **Money**, **Securities** and **Other Property** from the care and custody of the **Insured**, the **Insured's** partners or any other person (except any person acting as a watchperson or janitor) by one who has:

1.    caused or threatened to cause that person bodily harm; or

2.    committed an unlawful act witnessed by that person.

PP.    **Safe Burglary** means the unlawful taking of:

1.    **Money**, **Securities** and **Other Property** from within a locked safe or vault by a person unlawfully entering the safe or vault as evidenced by marks of forcible entry upon its exterior; or

2. a safe or vault from inside the **Premises**.

QQ. **Securities** means written negotiable and non-negotiable instruments or contracts representing **Money** or property including:

1. tokens, tickets, revenue and other stamps (whether represented by actual stamps or unused value in a meter) in current use; and

2. evidences of debt issued in connection with any **Credit**, **Debit or Charge Card**, which cards are not issued by the **Insured**;

but does not include **Money**.

RR. **Single Loss** means:

1. for purposes of Insuring Agreement A.:

a. an individual act;
b. the combined total of all separate acts; or
c. a series of related acts;

committed by an **Employee** or committed by more than one **Employee** acting alone or in collusion with other persons both during and before the **Policy Period**;

2. for purposes of Insuring Agreements B. and H.1., all loss caused by any person, or loss in which that person is involved, whether the loss involves one or more written **Covered Instruments** or **Covered Personal Instruments**; and

3. for purposes of all other Insuring Agreements:

a. any act or series of related acts or events involving one or more persons; or
b. any act, acts or events involving a person or group of persons acting together;

whether identified or not, both during and before the **Policy Period**.

SS. **Sponsored Plan** means any employee benefit plan or employee pension benefit plan solely sponsored by any **Insured** that is not subject to the terms of ERISA.

TT. **Subsidiary** means:

1. any corporation, partnership, limited liability company or other entity, organized under the laws of any jurisdiction in which, on or before the Inception Date set forth in ITEM 2 of the Declarations, the **Insured** owns, directly or indirectly, more than 50% of the outstanding securities or voting rights representing the present right to elect, appoint, or exercise a majority control over such entity's board of directors, board of trustees, board of managers, natural person general partners, or functional equivalent; or

2. subject to the provisions set forth in Section II. GENERAL AGREEMENTS D. ACQUISITIONS, of the Crime Terms and Conditions, any entity that the **Insured** acquires or forms during the **Policy Period** in which the **Insured** owns, directly or indirectly, more than 50% of the outstanding securities or voting rights representing the present right to elect, appoint or exercise a majority control over such entity's board of directors, board of trustees, board of managers, natural person general partners, or functional equivalent.

**Subsidiary** does not include any entity in which any **Insured** is engaged as a participant in any type of joint venture unless such entity is specifically scheduled as an additional **Insured** by endorsement to this **Crime Policy**.

UU. **Theft** means:

1. under Insuring Agreement A.3., the intentional unlawful taking of **Money**, **Securities** and **Other Property** to the deprivation of a **Client**;

2. under Insuring Agreements C. or D., the intentional unlawful taking of **Money** and **Securities** to the **Insured's** deprivation.

3. under all other Insuring Agreements, the intentional unlawful taking of **Money**, **Securities** and **Other Property** to the **Insured's** deprivation.

VV. **Transfer Account** means an account maintained by the **Insured** at a **Financial Institution** from which the **Insured** can initiate the transfer, payment or delivery of **Money** or **Securities**:

1. by means of electronic, telegraphic, cable, teletype, telefacsimile or telephone instructions communicated directly or through an electronic funds transfer system; or

2. by means of written instructions (other than those described in Insuring Agreements B. and H.1.) establishing the conditions under which such transfers are to be initiated by such **Financial Institution** through an electronic funds transfer system.

## IV. EXCLUSIONS

A. This **Crime Policy** will not apply to loss resulting directly or indirectly from war, whether or not declared; civil war; insurrection; rebellion or revolution; military, naval or usurped power; governmental intervention, expropriation or nationalization; or any act or condition related to any of the foregoing.

B. This **Crime Policy** will not apply to loss resulting directly or indirectly from seizure or destruction of property by order of governmental authority.

C. This **Crime Policy** will not apply to loss resulting directly or indirectly from any fraudulent, dishonest or criminal act committed by the **Insured**, the **Insured's** natural person partners, any **LLC Member** or **Officer-Shareholder**, whether acting alone or in collusion with others; provided, this Exclusion C. will not apply to loss covered under Insuring Agreement A.2..

D. This **Crime Policy** will not apply to loss resulting directly or indirectly from any fraudulent, dishonest or criminal act committed by any **Employee** or **Fiduciary** whether acting alone or in collusion with others, unless covered under Insuring Agreements A.1., A.2., A.3., F.2., or H..

E. This **Crime Policy** will not apply to loss resulting directly or indirectly from any **Funds Transfer Fraud**, unless covered under Insuring Agreements A.1., A.2., A.3., or G..

F. This **Crime Policy** will not apply to loss resulting directly or indirectly from the **Insured's** acceptance of money orders or **Counterfeit Money**, unless covered under Insuring Agreements A.1., A.2., A.3. or E..

G. This **Crime Policy** will not apply to loss or damages resulting directly or indirectly from the input of **Electronic Data** by a natural person having the authority to enter the **Insured's Computer System**, unless covered under Insuring Agreements A.1., A.2., A.3., F.2. or G..

H. This **Crime Policy** will not apply to loss resulting directly or indirectly from forged, altered or fraudulent documents or written instruments used as source documentation in the preparation of **Electronic Data**, unless covered under Insuring Agreements A.1., A.2., or A.3..

I. This **Crime Policy** will not apply to any expenses incurred by the **Insured** in establishing the existence or the amount of any loss covered under this **Crime Policy**, unless covered under Insuring Agreement I..

J. This **Crime Policy** will not apply to loss of income, whether or not earned or accrued, or potential income, including interest and dividends, not realized by the **Insured** as the result of any loss covered under this **Crime Policy**.

K. This **Crime Policy** will not apply to damages of any type, except the **Insured's** direct compensatory damages resulting from a loss covered under this **Crime Policy**.

©2009 The Travelers Companies, Inc. All Rights Reserved

L.     This **Crime Policy** will not apply to indirect or consequential loss of any nature, including fines, penalties, multiple or punitive damages.

M.     This **Crime Policy** will not apply to loss resulting directly or indirectly from any **Theft**, disappearance, damage, destruction or disclosure of any intangible property or confidential information including:

       1.     trade secret information, confidential processing methods or other confidential information or intellectual property of any kind, or **Electronic Data** unless otherwise covered under Insuring Agreement F.2.; or

       2.     **Computer Programs**.

N.     This **Crime Policy** will not apply to loss of, or damage to, manuscripts, records, accounts, microfilm, tapes or other records, whether written or electronic, or the cost of reproducing any information contained in such lost or damaged records, except when covered under Insuring Agreements C., D., or F.2..

O.     This **Crime Policy** will not apply to loss, or that part of any loss, the proof of which as to its existence or amount is dependent solely upon:

       1.     an inventory computation or physical count; or

       2.     a profit and loss computation;

provided that where the **Insured** establishes wholly apart from such computations or physical count that the **Insured** has sustained a loss covered under Insuring Agreements A.1., A.2, A.3. or F.1., then the **Insured** may offer the **Insured's** inventory records and an actual physical count of inventory in support of other evidence as to the amount of loss claimed.

P.     This **Crime Policy** will not apply to loss resulting directly or indirectly from trading whether or not in the name of the **Insured** or whether or not in a genuine or fictitious account, unless covered under Insuring Agreement A.1, A.2. or A.3..

Q.     This **Crime Policy** will not apply to loss resulting directly or indirectly from fire, except:

       1.     loss of or damage to **Money** or **Securities**; or

       2.     damage to any safe or vault caused by the application of fire thereto in connection with any actual or attempted **Safe Burglary** when covered under Insuring Agreement C..

R.     This **Crime Policy** will not apply to loss resulting directly or indirectly from the giving or surrendering of **Money**, **Securities** or **Other Property** in any exchange or purchase, whether or not fraudulent, with any other party not in collusion with an **Employee**, except when covered under Insuring Agreement E..

S.     This **Crime Policy** will not apply to loss of **Money**, **Securities** or **Other Property** while in the custody of any **Financial Institution**, trust company, or similarly recognized place of safe deposit or armored motor vehicle company unless the loss is in excess of the amount recovered or received by the **Insured** under the **Insured's** contract, if any, with, or insurance carried by, any of the aforementioned.

T.     This **Crime Policy** will not apply to loss of **Money**, **Securities** or **Other Property** held by an armored motor vehicle company for the **Insured**, and which is stored by such company overnight inside buildings used in the conduct of its business.

U.     This **Crime Policy** will not apply to loss resulting directly or indirectly from nuclear reaction, nuclear radiation, radioactive contamination, biological or chemical contamination or to any related act or incident.

V.     This **Crime Policy** will not apply to loss of **Money**, **Securities** or **Other Property** resulting directly or indirectly from kidnap, extortion or ransom payments (other than **Robbery**) surrendered to any person as a result of a threat.

W.     This **Crime Policy** will not apply to loss resulting directly or indirectly from **Forgery** or alteration, except when covered under Insuring Agreements A.1., A.2., A.3., B., or H..

X.     This **Crime Policy** will not apply to loss resulting directly or indirectly from **Computer Fraud**, except when covered under Insuring Agreements A.1., A.2., A.3., F.1., or H.1..

Y.  This **Crime Policy** will not apply to loss under Insuring Agreements C. or D. resulting directly or indirectly from:

    1.    an accounting or arithmetical error or omission;

    2.    the loss of property from within any money operated device, unless the amount of **Money** deposited in it is recorded by a continuous recording device;

    3.    anyone, acting on the **Insured's** express or implied authority, being induced by any dishonest act to voluntarily part with title to or possession of any property;

    4.    damage to motor vehicles, trailers or semi-trailers or equipment and accessories attached to them; or

    5.    damage to the **Premises** or its exterior or to containers of covered property by vandalism or malicious mischief.

Z.  This **Crime Policy** will not apply to loss resulting directly or indirectly from the diminution in value of **Money**, **Securities** or **Other Property**.

AA.  This **Crime Policy** will not apply to loss arising from any **Credit**, **Debit or Charge Card** if the **Insured**, the **Insured's Employee** or **Management Staff Member** has not fully complied with the provisions, conditions or other terms under which any card was issued.

BB.  This **Crime Policy** will not apply to loss sustained by any **Subsidiary** or related **Employee Benefit Plan** or **Sponsored Plan**, occurring at any time during which such entity was not a **Subsidiary** or related **Employee Benefit Plan** or **Sponsored Plan**.

CC.  This **Crime Policy** will not apply to loss sustained by the **Insured** or any **Subsidiary** to the extent it results in a benefit, gain or transfer to the **Insured** or any **Subsidiary**, except to the extent that such loss is covered under Insuring Agreement A.2..

## V.  CONDITIONS

## A.  GENERAL CONDITIONS

1.  Territory Covered

Except as indicated in Item 5. of the Declarations,

    a.    the Company will cover loss the **Insured** sustains anywhere in the world, and

    b.    the Company will cover all of the **Insured's** offices and **Premises**, including any additional offices or **Premises** pursuant to Sections II. GENERAL AGREEMENTS B. ADDITIONAL OFFICES, C. CONSOLIDATION, MERGER OR PURCHASE OF ASSETS, and D. ACQUISITIONS in this **Crime Policy**.

2.  Cooperation

The **Insured** must cooperate with the Company in all matters pertaining to this **Crime Policy** as stated in its terms, conditions and limitations.

3.  Extended Period to Discover Loss

The Company will pay the **Insured** for loss that the **Insured** sustained prior to the effective date of cancellation or termination of this **Crime Policy**, which is **Discovered** by the **Insured**:

    a.    no later than 90 days from the date of cancellation or termination; and

    b.    as respects any **Employee Benefit Plan**, no later than one (1) year from the date of cancellation or termination.

Notwithstanding the above, this extended period to **Discover** loss terminates immediately upon the effective date of any other insurance obtained by the **Insured** replacing in whole or in part the insurance afforded by this **Crime Policy**, whether or not such other insurance provides coverage for loss sustained prior to its effective date.

4.    Other Insurance

This **Crime Policy** applies only as excess insurance over, and will not contribute with: (1) any other valid and collectible insurance available to any **Insured** unless such insurance is written specifically excess of this **Crime Policy** by reference in such other policy to the Policy Number of this **Crime Policy**; and (2) indemnification to which any **Insured** is entitled from any other entity other than any **Insured**. As excess insurance, this **Crime Policy** will not apply or contribute to the payment of any loss to the **Insured** until the amount of such other insurance or indemnity has been exhausted by loss covered thereunder. If the limit of the other insurance or indemnity is insufficient to cover the entire amount of the loss, this **Crime Policy** will apply to that part of the loss not recoverable or recovered under the other insurance or indemnity. This **Crime Policy** will not be subject to the terms of any other insurance.

Any loss that is applicable to this Condition A.4. is subject to both the applicable Single Loss Limit of Insurance and applicable Single Loss Retention shown in ITEM 5 of the Declarations.

If this **Crime Policy** replaces prior insurance that provided the **Insured** with an extended period of time after the termination or cancellation of such prior insurance in which to **Discover** loss, then, and only with respect to loss **Discovered** during such extended period but sustained prior to the termination of such prior insurance, the coverage afforded by this **Crime Policy** applies as follows:

a.    the Company will have no liability for such loss, unless the amount of such loss exceeds the limit of insurance of that prior insurance; provided, that in such case, the Company will pay the **Insured** for the excess of such loss subject to the terms and conditions of this **Crime Policy**; and

b.    any payment the Company makes to the **Insured** for such excess loss will not be greater than the difference between the limit of insurance of the **Insured's** prior insurance and the applicable Single Loss Limit of Insurance of this **Crime Policy**. The Company will not apply the applicable Single Loss Retention to such excess loss.

5.    Ownership of Property; Interests Covered

a.    The property covered under this **Crime Policy** except as provided in 5.b. below is limited to property:
i.    that the **Insured** owns or leases;
ii.    that the **Insured** holds for others:
(a)    on the **Insured's Premises** or the **Insured's Financial Institution Premises**; or
(b)    while in transit and in the care and custody of a **Messenger**; or
iii.    for which the **Insured** is legally liable, except for property located inside the **Insured's Client's Premises** or the **Insured's Client's Financial Institution Premises**.

Notwithstanding the above, this **Crime Policy** is for the **Insured's** benefit only and provides no rights or benefits to any other person or organization. Any claim for loss that is covered under this **Crime Policy** must be presented by the **Insured**.

b.    If ITEM 5 of the Declarations indicates that coverage under Insuring Agreement A.3. Employee Theft of Client Property has been purchased, then the property covered under Insuring Agreement A.3. is limited to property:

i.     that the **Insured's Client** owns or leases;

ii.     that the **Insured's Client** holds for others; or

iii.     for which the **Insured's Client** is legally liable;

while the property is inside the **Insured's Client's Premises** or the **Insured's Client's Financial Institution Premises**.

Notwithstanding the above, this **Crime Policy** is for the **Insured's** benefit only and provides no rights or benefits to any other person or organization, including the **Insured's Client**. Any claim for loss by the **Insured's Client** that is covered under this **Crime Policy** must be presented by the **Insured**.

6.     Representation, Concealment, Misrepresentation or Fraud

No statement made by the **Insured**, whether contained in the application, underwriting information or otherwise, is deemed to be a warranty of anything except that it is true to the best of the knowledge and belief of the person making the statement.

This **Crime Policy** is void in any case of fraud by the **Insured** as it relates to this **Crime Policy** at any time. This **Crime Policy** is also void if the **Insured**, at any time, intentionally conceals or misrepresents a material fact concerning:

a.     this **Crime Policy**;

b.     the **Money, Securities or Other Property**;

c.     the **Insured's** interest in the **Money, Securities** or **Other Property**; or

d.     a claim under this **Crime Policy**.

7.     Premiums

The **First Named Insured** is responsible for the payment of all premiums and will be the payee for any return premiums the Company pays.

8.     Transfer of Rights and Duties Under this **Crime Policy**

Rights and duties under this **Crime Policy** may not be transferred without the Company's written consent except in the case of the death of a natural person **Insured**. If such person dies, then the decedent's rights and duties will be transferred to the decedent's legal representative, but only while acting within the scope of duties as the decedent's legal representative. Until a legal representative is appointed, anyone having proper temporary custody of the decedent's property will have all rights and duties but only with respect to that property.

## B.     PROVISIONS AFFECTING LOSS ADJUSTMENT AND SETTLEMENT

1.     Limit of Insurance

a.     Policy Aggregate Limit of Insurance

If ITEM 5 of the Declarations indicates that this **Crime Policy** includes a Policy Aggregate Limit of Insurance, then the Company's total liability for all loss **Discovered** during the **Policy Period** will not exceed such Policy Aggregate Limit of Insurance. The Policy Aggregate Limit of Insurance will be reduced by the amount of any payment made under the terms of this **Crime Policy**. If the Policy Aggregate Limit of Insurance is exhausted by any payment made for loss **Discovered** during the **Policy Period**, the Company will have no further liability for loss regardless of when **Discovered** and whether or not previously reported to the Company.

If applicable, the Policy Aggregate Limit of Insurance will be reinstated to the extent of any net recovery pursuant to Condition B.6. that is received by the Company during the **Policy Period** and before the Crime Policy Aggregate Limit of Insurance is exhausted. Recovery from reinsurance or indemnity, or both, for the Company's benefit will not be deemed a recovery as used herein. In the event that a loss of **Securities** is settled by the Company through the use of a Lost Securities Bond, such loss will not reduce the Crime Policy Aggregate Limit of Insurance, but any payment under the Lost Securities Bond reduces the Policy Aggregate Limit of Insurance under this **Crime Policy**.

The provisions of this Condition B.1.a. will not be applicable to Insuring Agreement A.2.

If ITEM 5 of the Declarations indicates that this **Crime Policy** does not include a Crime Policy Aggregate Limit of Insurance, then payment of loss under this **Crime Policy** will not reduce the Single Loss Limit of Insurance for other **Single Losses**.

b.    <u>Single Loss Limit of Insurance</u>

The maximum Single Loss Limit of Insurance for each Insuring Agreement will not exceed the applicable amount set forth in ITEM 5 of the Declarations for such Insuring Agreement.

c.    <u>Special Limit of Insurance for Specified Other Property</u>

The Company's liability for loss under Insuring Agreements C. and D. is limited as follows

    i.    the lesser of $25,000. or the amount shown as the Single Loss Limit of Insurance for any **Single Loss** involving precious metals, precious or semi-precious stones, pearls, furs, or completed articles made of or containing such enumerated materials that constitute more than half the value of such articles;

    ii.    the lesser of $25,000. or the amount shown as the Single Loss Limit of Insurance for any **Single Loss**, including damage to manuscripts, drawings or records of any kind, or the cost of reconstructing them or reproducing any information contained in them;

The Special Limit of Insurance for Specified Other Property is part of, and not in addition to, any applicable limit of liability.

d.    <u>Identity Fraud Expense Reimbursement Single Loss Limit of Insurance</u>

The maximum limit of insurance per the **Insured's Management Staff Member** for each **Identity Fraud** covered under Insuring Agreement H.2. will not exceed the applicable Single Loss Limit of Insurance stated in ITEM 5 of the Declarations. All acts incidental to an **Identity Fraud**, any series of **Identity Frauds**, and all **Identity Frauds** arising from the same method of operation, whether committed by one or more persons, will be deemed to arise out of one act and will be treated as one **Identity Fraud**. If an act causes a covered loss under Insuring Agreement H.2. to more than one **Management Staff Member**, the applicable Single Loss Limit of Insurance and Retention under Insuring Agreement H.2. applies to each **Management Staff Member** separately.

e.    <u>Loss Covered Under More Than One Insuring Agreement of this **Crime Policy**</u>

Subject to any applicable Crime Policy Aggregate Limit of Insurance, if any **Single Loss** is comprised of loss covered under more than one Insuring Agreement, the most the Company will pay the **Insured** for such **Single Loss** is the lesser of:

    i.    the actual amount of such **Single Loss**; or

©2009 The Travelers Companies, Inc. All Rights Reserved

ii.      the sum of the Single Loss Limits of Insurance applicable to such Insuring Agreements applying to such loss.

2.      Single Loss Retention

The Company will not pay the **Insured** for any **Single Loss** unless the amount of such **Single Loss** exceeds the Single Loss Retention shown in Item 5 of the Declarations. The Company will pay the **Insured** the amount of any **Single Loss** in excess of the Single Loss Retention, up to the Single Loss Limit of Insurance for the applicable Insuring Agreement.

If more than one Single Loss Retention applies to the same **Single Loss**, then only the highest Single Loss Retention will be applied.

No Single Loss Retention applies to any legal expenses paid to the **Insured** solely under Insuring Agreement B.

3.      The Insured's Duties in the Event of a Loss

After the **Insured Discovers** a loss or a situation that may result in loss of or loss from damage to **Money**, **Securities** or **Other Property** that exceeds 25% of the Single Loss Retention, the **Insured** must:

        a.      notify the Company as soon as possible;
        b.      notify law enforcement authorities if the **Insured** has reason to believe that any loss, except for loss covered under Insuring Agreements A.1., A.2., A.3., or F.2., involves a violation of law;
        c.      submit to examination under oath at the Company's request and give the Company a signed statement of the **Insured's** answers;
        d.      give the Company a detailed, sworn proof of loss within 120 days; and
        e.      cooperate with the Company in the investigation and settlement of any claim.

Proof of loss under Insuring Agreement B. and H.1. must include: (1) an affidavit of **Forgery** setting forth the amount and cause of loss; and (2) the original written **Covered Instruments** or **Personal Covered Instruments** or a copy of such written instruments.

4.      Valuation / Settlement

Subject to the applicable limit of insurance provision (Section V. CONDITIONS B. PROVISIONS AFFECTING LOSS ADJUSTMENT AND SETTLEMENT 1. <u>Limit of Insurance</u>) the Company will pay the **Insured** for:

        a.      loss of **Money** but only up to and including its face value, and, at the Company's option, pay for loss of **Money** issued by any country other than the United States of America:

                i.      at face value in the **Money** issued by that country; or

                ii.     in the United States of America dollar equivalent determined by the rate of exchange published in The Wall Street Journal on the day the loss was **Discovered**;

        b.      loss of **Securities** but only up to and including their value at the close of business on the day the loss was **Discovered**, and at the Company's option:

                i.      pay the **Insured** the value of such **Securities** or replace them in kind, in which event the **Insured** must assign to the Company all the **Insured's** rights, title and interest in those **Securities**; or

ii.     pay the cost of any Lost Securities Bond required in connection with issuing duplicates of the **Securities**; provided, the Company will be liable only for the cost of the Lost Securities Bond as would be charged for a bond having a penalty not exceeding the lesser of the value of the **Securities** at the close of business on the day the loss was **Discovered**;

c.     loss of, or loss from damage to, **Other Property** or **Premises** including its exterior for the replacement cost without deduction for depreciation; provided, the Company will pay the **Insured** the lesser of the following:

i.     the applicable Single Loss Limit of Insurance;

ii.     the cost to replace **Other Property** or **Premises** including its exterior with property of comparable material and quality, and used for the same purpose; or

iii.     the amount the **Insured** actually spends that is necessary to repair or replace such property;

provided, the Company will, at its option, pay the **Insured** for loss of, or loss from damage to, **Other Property** or **Premises** including its exterior, in the **Money** of the country in which the loss occurred, or in the United States of America dollar equivalent of the **Money** of the country in which the loss occurred determined by the rate of exchange published in The Wall Street Journal on the day the loss was **Discovered**.

The Company will not pay the **Insured** on a replacement cost basis for any loss or damage until such property is actually repaired or replaced, and unless the repairs or replacement are made as soon as reasonably possible after the loss or damage. If the lost or damaged property is not repaired or replaced, the Company will pay the **Insured** actual cash value on the day the loss was **Discovered**.

Any property that the Company pays the **Insured** for or replaces becomes the Company's property.

5.     Records

The **Insured** must keep records of all **Money**, **Securities**, and **Other Property** under this **Crime Policy** so the Company can verify the amount of any loss.

6.     Recoveries

a.     All recoveries for payments made under this **Crime Policy** should be applied, after first deducting the costs and expenses incurred in obtaining such recovery, in the following order of priority:

i.     first, to the **Insured** to reimburse the **Insured** for loss sustained that would have been paid under this **Crime Policy** but for the fact that it is in excess of the applicable Single Loss Limit(s) of Insurance;

ii.     second, to the Company in satisfaction of amounts paid or to be paid to the **Insured** in settlement of the **Insured's** covered claim;

iii.     third, to the **Insured** in satisfaction of any Single Loss Retention; and

iv.     fourth, to the **Insured** in satisfaction of any loss not covered under this **Crime Policy**.

b.     The value of all property received by the **Insured** from any source whatever and whenever received, in connection with any matter from which a loss has arisen, will be valued as of the date received and will be deducted from the covered loss.

©2009 The Travelers Companies, Inc. All Rights Reserved

    c.    Recoveries do not include any recovery:

        i.    from insurance, suretyship, reinsurance, security or indemnity taken for the Company's benefit; or

        ii.    of original **Securities** after duplicates of them have been issued.

7.    Transfer of the Insured's Rights of Recovery Against Others to the Company

The **Insured** must transfer to the Company all the **Insured's** rights of recovery against any person or organization for any loss the **Insured** sustained and for which the Company has paid or settled. The **Insured** must also do everything necessary to secure those rights and do nothing after loss to impair them.

8.    Legal Action Against the Company

The **Insured** may not bring any legal action against the Company involving loss:

    a.    unless the **Insured** has complied with all the terms of this **Crime Policy**;

    b.    until 90 days after the **Insured** has filed proof of loss with the Company; and

    c.    unless brought within two (2) years from the date the **Insured Discovers** the loss.

If any limitation in this Condition B.8. is deemed to be inconsistent with applicable law, such limitation is amended so as to equal the minimum period of limitation provided by such law.

9.    Liberalization

If the Company adopts any revision to the Crime Terms and Conditions of this **Crime Policy** that would broaden coverage and such revision does not require an additional premium or endorsement and the revision is adopted within 45 days prior to or during the **Policy Period**, the broadened coverage will apply to this **Crime Policy** as of the date the revision is approved for general use by the applicable department of insurance.

## C.    EMPLOYEE BENEFIT PLAN PROVISIONS – INFLATION GUARD

In compliance with certain provisions of ERISA:

1.    if any **Employee Benefit Plan** is insured jointly with any other entity under this **Crime Policy**, the **Insured** must select a Single Loss Limit of Insurance for Insuring Agreement A.2. that is sufficient to provide an amount of insurance for each **Employee Benefit Plan** that is at least equal to that required if each **Employee Benefit Plan** were insured separately;

2.    if the **Insured** is an entity other than an **Employee Benefit Plan**, any payment the Company makes to the **Insured** for loss sustained by any **Employee Benefit Plan** will be held by such **Insured** for the use and benefit of the **Employee Benefit Plan(s)** sustaining the loss; and

3.    if two or more **Employee Benefit Plans** are covered under this **Crime Policy**, any payment the Company makes for loss:

    a.    sustained by two or more **Employee Benefit Plans**; or

©2009 The Travelers Companies, Inc. All Rights Reserved

          b.        of commingled **Money**, **Securities** or **Other Property** of two or more **Employee Benefit Plans**;

that arises out of a **Single Loss** is to be shared by each **Employee Benefit Plan** sustaining loss, in the proportion that the limit of insurance required under ERISA for each such **Employee Benefit Plan**, bears to the total of those limits of insurance.

        4.    .    If, at the inception date of this **Crime Policy**, or a preceding policy written by the Company that provided ERISA fidelity coverage for **Employee Benefit Plans**, the **Insured** has or had a Single Loss Limit of Insurance under such ERISA fidelity coverage for **Employee Benefit Plans** that is or was equal to or greater than the limit of insurance required under ERISA, the Single Loss Limit of Insurance under Insuring Agreement A.2. will equal the greater of the amount of the limit of insurance required by ERISA or the Single Loss Limit of Insurance set forth in Item 5. of the Declarations for Insuring Agreement A.2.

## D.    CANCELLATION OR TERMINATION

1.    The **Insured** may cancel:

        a.    this **Crime Policy** in its entirety;

        b.    an Insuring Agreement; or

        c.    coverage for any **Insured**;

by mailing or delivering to the Company advance written notice of cancellation.

2.    The Company may cancel:

        a.    this **Crime Policy** in its entirety;

        b.    an Insuring Agreement; or

        c.    coverage for any **Insured**;

by mailing or delivering to the **First Named Insured** written notice of cancellation at least 20 days before the effective date of cancellation if the Company cancels for nonpayment of premium; or 60 days before the effective date of cancellation if the Company cancels for any other reason.

The Company will mail or deliver the Company's notice to the **First Named Insured's** last mailing address known to the **Company**. Notice of cancellation will state the effective date of cancellation and the **Policy Period** will end on that date. If this **Crime Policy** or an Insuring Agreement is cancelled, the Company will send the **First Named Insured** any premium refund due. If the Company cancels this **Crime Policy**, the refund will be pro rata. If the **Insured** cancels, the earned premium will be computed in accordance with the customary short rate table and procedure. The cancellation will be effective even if the Company has not made or offered a refund. If notice is mailed, proof of mailing will be sufficient proof of notice.

3.    This **Crime Policy** terminates:

        a.    in its entirety immediately upon the expiration of the **Policy Period**;

©2009 The Travelers Companies, Inc. All Rights Reserved

b. in its entirety immediately upon exhaustion of the Policy Aggregate Limit of Insurance, if applicable; provided, that no **Crime Policy** termination under this Condition D.3.b. will be effective with respect to any **Employee Benefit Plan** covered under Insuring Agreement A.2.;

c. in its entirety immediately upon the voluntary liquidation or dissolution of the **First Named Insured**; provided, that no **Crime Policy** termination under this Condition D.3.c. will be effective with respect to any **Employee Benefit Plan** covered under Insuring Agreement A.2.; or

d. as to any **Subsidiary** immediately upon the **Change of Control** of such **Subsidiary**.

4. This **Crime Policy** terminates as to any **Employee**:

a. as soon as the **Insured's** partner, any of the **Insured's Management Staff Members** or any **Employee** with managerial or supervisory responsibility not in collusion with the **Employee** becomes aware of any dishonest or fraudulent employment related act involving an amount in excess of $10,000; or

b. 60 days after the **Insured's** partner, any of the **Insured's Management Staff Members** or any **Employee** with managerial or supervisory responsibility not in collusion with the **Employee** becomes aware of any dishonest or fraudulent non-employment related act; either of which acts were committed by such **Employee** in the **Insured's** service, during the term of employment by the **Insured** or prior to employment by the **Insured**, provided such dishonest or fraudulent non-employment related act involved **Money**, **Securities** or **Other Property** is in an amount in excess of $10,000.

## E. CHANGES

Only the **First Named Insured** is authorized to make changes in the terms of this **Crime Policy** and solely with the Company's prior written consent. This **Crime Policy's** terms can be changed, amended or waived only by endorsement issued by the Company and made a part of this **Crime Policy**. Notice to any representative of the **Insured** or knowledge possessed by any agent or by any other person will not effect a waiver or change to any part of this **Crime Policy**, or estop the Company from asserting any right under the terms, conditions and limitations of this **Crime Policy**, nor may the terms, conditions and limitations hereunder be waived or changed, except by a written endorsement to this **Crime Policy** issued by the Company.

## F. ENTIRE AGREEMENT

The Declarations, the application, the Crime Terms and Conditions, and any endorsements attached thereto, constitute the entire agreement between the **Insured** and the Company.

## G. HEADINGS

The titles of the various paragraphs of this **Crime Policy** and its endorsements are inserted solely for convenience or reference and are not to be deemed in any way to limit or affect the provision to which they relate.

©2009 The Travelers Companies, Inc. All Rights Reserved

## IDAHO CANCELLATION OR TERMINATION ENDORSEMENT

This endorsement changes the following:

**Crime**

---

**It is agreed that:**

1. The following replaces section **V., CONDITIONS**, **D.2.**:

    2. The Company may cancel:
        a.   this **Crime Policy** in its entirety;
        b.   an Insuring Agreement; or
        c.   coverage for any **Insured**;

    by mailing or delivering to the **First Named Insured** written notice of cancellation at least **20** days (number of days must equal or exceed 20 days) before the effective date of cancellation if the Company cancels for nonpayment of premium; or **60** days (number of days must equal or exceed 60 days) before the effective date of cancellation if the Company cancels for any reason scheduled below. The Company may cancel for any of the following reasons:
        a.   nonpayment of premium,
        b.   fraud or material misrepresentation,
        c.   activities or omissions by the **Insured** which increase hazards,
        d.   change in risks which may increase loss,
        e.   loss or decrease of the Company's reinsurance,
        f.   continuation of the policy would place the Company in violation of the insurance laws,
        g.   violation or breach of policy terms by the **Insured**

    The Company will mail or deliver the Company's notice to the **First Named Insured's** last mailing address known to the Company. Notice of cancellation will state the effective date of cancellation and the **Policy Period** will end on that date. If this **Crime Policy** or an Insuring Agreement is cancelled, the Company will send the **First Named Insured** any premium refund due, computed on a pro-rata basis. The cancellation will be effective even if the Company has not made or offered a refund. If notice is mailed, proof of mailing will be sufficient proof of notice.

2. The following is added to section **V., CONDITIONS**, **D. CANCELLATION OR TERMINATION**:

    5. The Company will not be required to renew this **Liability Policy** upon its expiration. If the Company elects not to renew, the Company will provide to the **First Named Insured** written notice to that effect **45** days (number of days must equal or exceed 45 days) before the Expiration Date set forth in ITEM 2 of the Declarations.

---

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, exclusions or limitations of the above-mentioned policy, except as expressly stated herein. This endorsement is part of such policy and incorporated therein.

**Issuing Company: Travelers Casualty and Surety Company of America**
Policy Number: **106160096**

©2013 The Travelers Indemnity Company, Inc. All rights reserved.

## REPLACE GENERAL AGREEMENT E. - CHANGE OF CONTROL - NOTICE REQUIREMENTS ENDORSEMENT

This endorsement changes the following:

**Crime**

---

**It is agreed that:**

The following replaces section **II. GENERAL AGREEMENTS, E. CHANGE OF CONTROL – NOTICE REQUIREMENTS:**

**E.    CHANGE OF CONTROL – NOTICE REQUIREMENTS**

When the **Insured** learns that a **Change of Control** has taken place as to the **First Named Insured**, or will take place during the **Policy Period**, the **Insured** must give the Company written notice within 90 days of the effective date of such **Change of Control**.

---

Nothing herein contained shall be held to vary, alter, waive, or extend any of the terms, conditions, exclusions, or limitations of the above-mentioned policy, except as expressly stated herein. This endorsement is part of such policy and incorporated therein.

Issuing Company: **Travelers Casualty and Surety Company of America**
Policy Number: **106160096**

CRI-19060 Ed. 07-13                                                                                              Page 1 of 1
© 2013 The Travelers Indemnity Company. All rights reserved.

| THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY. |
|---|

# REMOVAL OF SHORT-RATE CANCELLATION ENDORSEMENT

This endorsement changes the following:
**Crime**

**It is agreed that:**

In any cancellation, termination or non-renewal provision, any reference to computing a premium on a short rate basis is replaced with a reference to computing such premium on a pro-rata basis.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, exclusions or limitations of the above-mentioned policy, except as expressly stated herein. This endorsement is part of such policy and incorporated therein.

Issuing Company: **Travelers Casualty and Surety Company of America**
Policy Number: **106160096**

© 2011 The Travelers Indemnity Company. All rights reserved.

## GLOBAL COVERAGE COMPLIANCE ENDORSEMENT – ADDING FINANCIAL INTEREST COVERAGE AND SANCTIONS CONDITION AND AMENDING TERRITORY CONDITION

This endorsement changes the following:

**Crime**

**It is agreed that:**

1.  The following is added to section **III. DEFINITIONS**:

    *Financial Interest* means the **First Named Insured's** insurable interest in an **Insured** that is domiciled in a country or jurisdiction in which the Company is not licensed to provide this insurance, as a result of the **First Named Insured's**:

    1.  ownership of the majority of the outstanding securities or voting rights of the **Insured** representing the present right to elect, appoint, or exercise a majority control over such **Insured's** board of directors, board of trustees, board of managers, natural person general partner, or functional foreign equivalent;

    2.  indemnification of, or representation that it has an obligation to indemnify, the **Insured** for loss sustained by such **Insured**; or

    3.  election or obligation to obtain insurance for such **Insured**.

2.  The following replaces section **V. CONDITIONS, A. GENERAL CONDITIONS, 1.**, Territory Covered:

    1.  Territory Covered

        a.  Except as indicated in Item 5. of the Declarations,

            i.   the Company will cover loss the **Insured** sustains anywhere in the world, and

            ii.  the Company will cover all of the **Insured's** offices and **Premises**, including any additional offices or **Premises** pursuant to sections II. GENERAL AGREEMENTS B. ADDITIONAL OFFICES, C. CONSOLIDATION, MERGER OR PURCHASE OF ASSETS, and D. ACQUISITIONS in this **Crime Policy**.

        b.  This **Crime Policy** does not apply to:

            i.   loss sustained by an **Insured** domiciled; or

            ii.  loss of **Other Property** located,

            in any country or jurisdiction in which the Company is not licensed to provide this insurance, to the extent that providing this insurance would violate the laws or regulations of such country or jurisdiction.

        c.  In the event an **Insured** sustains loss referenced in b. above to which this **Crime Policy** would have applied, the Company will reimburse the **First Named Insured** for its loss, on account of its **Financial Interest** in such **Insured**.

© 2015 The Travelers Indemnity Company. All rights reserved.

3. The following is added to section **V. CONDITIONS, B. PROVISIONS AFFECTING LOSS ADJUSTMENT AND SETTLEMENT**:

In the event the Company reimburses the **First Named Insured** on account of its **Financial Interest** in an **Insured**, as a condition precedent to exercising rights under this **Crime Policy**, the **First Named Insured** will cause the **Insured** to comply with the conditions of this **Crime Policy**.

4. The following is added to section **V. CONDITIONS**:

**SANCTIONS**

This **Crime Policy** will provide coverage for any loss or expenses, or otherwise will provide any benefit, only to the extent that providing such coverage or benefit does not expose the Company or any of its affiliated or parent companies to any trade or economic sanction under any law or regulation of the United States of America or any other applicable trade or economic sanction, prohibition or restriction.

---

Nothing herein contained shall be held to vary, alter, waive, or extend any of the terms, conditions, exclusions, or limitations of the above-mentioned policy, except as expressly stated herein. This endorsement is part of such policy and incorporated therein.

© 2015 The Travelers Indemnity Company. All rights reserved.

# Plaintiff's Exhibit 2

## POLICY CHANGES ENDORSEMENT

This endorsement modifies the following:

**Crime**

**It is agreed that:**

1. As of the Effective Date of this endorsement, the Declarations is amended, as indicated below by ⊠:

☐ **ITEM 1:**

    ☐ **NAMED INSURED:**

    ☐ D/B/A:

    ☐ Principal Address:

☐ **ITEM 2:**

POLICY PERIOD:

Inception Date:           Expiration Date:

12:01 A.M. standard time both dates at the Principal Address stated in ITEM 1.

⊠ **ITEM 5:** (but only for direct loss that the **Insured** sustains which is directly caused by a **Single Loss Discovered** on or after the Effective Date of this endorsement)

| CRIME | | |
|---|---|---|
| | **Single Loss Limit of Insurance** | **Single Loss Retention** |
| ⊠ **Insuring Agreement A. Fidelity** <br> 1. Employee Theft <br> 2. ERISA Fidelity <br> 3. Employee Theft of Client Property | $500,000 <br> $500,000 | $2,500 <br> $0 |
| ☐ **Insuring Agreement B. Forgery or Alteration** | | |
| ☐ **Insuring Agreement C. On Premises** | | |
| ☐ **Insuring Agreement D.** | | |

Issuing Company: **Travelers Casualty and Surety Company of America**    Effective Date: **August 13, 2016**

Policy Number: **106160096**

©2014 The Travelers Indemnity Company. All rights reserved

| | | |
|---|---|---|
| **In Transit** | | |
| ☐ **Insuring Agreement  E.** **Money Orders and Counterfeit Money** | | |
| ☒ **Insuring Agreement F.** **Computer Crime** | | |
|    1.  Computer Fraud | $500,000 | $2,500 |
|    2.  Computer Program and Electronic Restoration Expense | $250,000 | $2,500 |
| ☒ **Insuring Agreement G.** **Funds Transfer Fraud** | $500,000 | $2,500 |
| ☐ **Insuring Agreement H.** **Personal Accounts Protection**    1.  Personal Accounts Forgery or Alteration    2.  Identity Fraud Expense Reimbursement | | |
| ☐ **Insuring Agreement I.** **Claim Expense** | | |

☐    Policy Aggregate Limit of Insurance:    ☐   Applicable    ☐   Not Applicable

If a Policy Aggregate Limit of Insurance is applicable, then the Policy Aggregate Limit of Insurance for each **Policy Period** for Insuring Agreements A through H, inclusive, is:    .

If a Policy Aggregate Limit of Insurance is not included, then this **Crime Policy** is not subject to a Policy Aggregate Limit of Insurance as set forth in Section V. CONDITIONS B. PROVISIONS AFFECTING LOSS ADJUSTMENT AND SETTLEMENT 1. Limit of Insurance a. Policy Aggregate Limit of Insurance.

☐   **INSURED'S PREMISES COVERED:** - All Premises of the Insured in the United States of America, its territories and possessions, Canada, or any other country throughout the world, except:

☒   **ITEM 6**:

PREMIUM FOR THE POLICY PERIOD:

**$1,562.00**   Policy Premium

**$591.00**   Annual Installment Premium

2.  As of the Effective Date of this endorsement, this policy is amended as indicated below by ☒:

©2014 The Travelers Indemnity Company. All rights reserved

☒ Forms and endorsements added:
**CRI-19070-0515**

☐ Forms and endorsements deleted:

☐ Forms and endorsements amended:

---

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, exclusions or limitations of the above-mentioned policy, except as expressly stated herein. This endorsement is part of such policy and incorporated therein.

©2014 The Travelers Indemnity Company. All rights reserved

| THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY. |

## SOCIAL ENGINEERING FRAUD INSURING AGREEMENT ENDORSEMENT

This endorsement changes the following:

**Crime**

---

**It is agreed that:**

1. The following is added to ITEM 5. of the DECLARATIONS:

| Insuring Agreement | Single Loss Limit of Insurance | Single Loss Retention |
|---|---|---|
| **Social Engineering Fraud** | $250,000 | $25,000 |

2. The following **INSURING AGREEMENT** is added to section *I. INSURING AGREEMENTS*:

   **SOCIAL ENGINEERING FRAUD**

   The Company will pay the **Insured** for the **Insured's** direct loss from the transferring, paying or delivering **Money** or **Securities**, directly caused by **Social Engineering Fraud** committed by a person purporting to be:

   a. a **Vendor**; or

   b. a **Client**.

3. The following are added to section *III. DEFINITIONS*:

   **Communication** means an electronic, telegraphic, cable, teletype, telephone, or written instruction received by an **Employee** that:

   1. directs the **Employee** to transfer, pay, or deliver **Money** or **Securities**;

   2. contains a misrepresentation of a material fact; and

   3. is relied upon by the **Employee**, believing the material fact to be true.

   *Social Engineering Fraud* means the intentional misleading of an **Employee** through the use of a **Communication**.

   *Vendor* means an entity or natural person that has provided goods or services to the Insured under a genuine, pre-existing:

   1. written agreement; or

   2. other arrangement,

   **Vendor** does not mean any **Financial Institution**, asset manager, armored motor vehicle company, or similar entity.

4. Solely with respect to the Social Engineering Fraud Insuring Agreement, the following replace section *III. DEFINITIONS*, C. and S.:

---

C. **Client** means an entity or natural person for which the **Insured**:

1. provides goods; or

2. performs services,

for a fee, or as specified in a pre-existing, written agreement, but only while the written agreement is in effect.

S. **Employee** means:

1. any natural person:

    a. while in the **Insured's** service or for 60 days after termination of service, unless such termination is due to **Theft** or **Forgery** or any other dishonest act committed by the **Employee**;

    b. who the **Insured** compensates directly by salary, wages or commissions; and

    c. who the **Insured** has the right to direct and control while performing services for the **Insured**;

2. any natural person who is temporarily furnished to the **Insured**:

    a. to substitute for an **Employee** as set forth in paragraph 1. above, who is on medical, military or other leave of absence; or

    b. to meet seasonal or short-term workload conditions;

    while that person is subject to the **Insured's** direction and control and performing services for the **Insured**; provided, any such natural person who has care and custody o f property outside the **Premises** is specifically excluded from this definition;

3. any natural person, other than a temporary **Employee** described in paragraph 2. above, who is leased to the **Insured** under a written agreement between the **Insured** and a labor leasing firm, while that person is subject to the **Insured's** direction and control and performing services for the **Insured**; or

4. any natural person:

    a. who is a member of the board of directors, member of the board of trustees or **LLC Manager** while acting as a member of any of the **Insured's** elected or appointed committees, including any member of such committee, to perform on the **Insured's** behalf, specific, as distinguished from general, directorial acts;

    b. who is a non-compensated officer;

    c. other than a non-compensated fund solicitor, while performing services for the **Insured** that are usual to the duties of an **Employee** or officer;

    d. while acting as a non-compensated fund solicitor during fund raising campaigns;

    e. who is a former **Employee**, member of the board of directors, partner, **LLC Manager**, or member of the board of trustees retained as a consultant while that person is subject to the **Insured's** direction and control and performing services for the **Insured**;

© 2015 The Travelers Indemnity Company. All rights reserved.

f.  who is a guest student or intern pursuing studies or duties in any of the **Insured's** offices or **Premises**; while such person is subject to the **Insured's** direction and control and performing services for the **Insured**;

g.  who is a volunteer, while such person is subject to the **Insured's** direction and control and is performing services for the **Insured**.

*Employee* also means any individual described in paragraphs 1-4 above while such person is on medical, military, or other leave of absence from the **Insured**. Coverage applies to any such **Employee** while on leave, regardless of whether such person remains subject to the **Insured's** direction and control during the time of leave.

*Employee* does not mean any agent, broker, factor, commission merchant, consignee, independent contractor, attorney retained by the **Insured** or any employee of such attorney, or any representative or other person of the same general character not specified in paragraphs 1. through 4. above.

5.  The following replace section *IV. EXCLUSIONS*, E., G., H., and R.:

E.  This **Crime Policy** will not apply to loss resulting directly or indirectly from any **Funds Transfer Fraud**, unless covered under Insuring Agreements A.1., A.2., A.3., G., or the Social Engineering Fraud Insuring Agreement.

G.  This **Crime Policy** will not apply to loss or damages resulting directly or indirectly from the input of **Electronic Data** by a natural person having the authority to enter the **Insured's Computer System**, unless covered under Insuring Agreements A.1., A.2., A.3., F.2., G., or the Social Engineering Fraud Insuring Agreement.

H.  This **Crime Policy** will not apply to loss resulting directly or indirectly from forged, altered or fraudulent documents or written instruments used as source documentation in the preparation of **Electronic Data**, unless covered under Insuring Agreements A.1., A.2., A.3., or the Social Engineering Fraud Insuring Agreement.

R.  This **Crime Policy** will not apply to loss resulting directly or indirectly from:

1.  the giving or surrendering of **Money**, **Securities** or **Other Property** in any exchange or purchase, whether genuine or fictitious; or

2.  any other giving or surrendering of, or voluntary parting with, **Money**, **Securities** or **Other Property**,

whether or not induced by any dishonest or fraudulent act, except when covered under:

i.  Insuring Agreement A.;

ii.  Insuring Agreement E.;

iii.  the Social Engineering Fraud Insuring Agreement; or

iv.  Insuring Agreement G., but only as respects **Funds Transfer Fraud** as defined in section *III. DEFINITIONS*, AA. 3.

© 2015 The Travelers Indemnity Company. All rights reserved.

6. Solely with respect to the Social Engineering Fraud Insuring Agreement, the following replaces section **IV. EXCLUSIONS, T.**:

    T.    This **Crime Policy** will not apply to loss of **Money Securities** or **Other Property**:

        1.    while in the mail; or

        2.    while in the custody of any messenger, carrier for hire, or armored motor vehicle company.

7. Solely with respect to the Social Engineering Fraud Insuring Agreement, the following are added to section **IV. EXCLUSIONS**:

    This **Crime Policy** will not apply to:

    a.    loss or damage due to **Theft** by an **Employee**, **Forgery**, **Computer Fraud**, **Funds Transfer Fraud**, or acceptance of money orders or **Counterfeit Money**;

    b.    loss due to any investment in **Securities**, or ownership in any corporation, partnership, real property, or similar instrument, whether or not such investment is genuine;

    d.    loss due to the failure, malfunction, illegitimacy, inappropriateness, or inadequacy of any product or service;

    c.    loss resulting directly or indirectly from the failure of any party to perform in whole or in part under any contract;

    e.    loss due to any non-payment of or default upon any loan, extension of credit, or similar promise to pay;

    f.    loss due to any party's use of or acceptance of any **Credit**, **Debit** or **Charge Card** or similar card or instrument, whether or not genuine; or

    g.    loss due to items of deposit which are not finally paid for any reason, including forgery or any other fraud; however, this exclusion does not apply to United States Government checks or drafts that are returned by the United States Government for any reason after the funds for said checks or drafts have been credited to the **Insured's** account at a **Financial Institution**.

Nothing herein contained shall be held to vary, alter, waive, or extend any of the terms, conditions, exclusions, or limitations of the above-mentioned policy, except as expressly stated herein. This endorsement is part of such policy and incorporated therein.

# Plaintiff's Exhibit 3



April 24, 2017

**Via Email: JTyndell@bkjet.com**

Mr. Josh Tyndell
BK-Jet Insurance Brokers
West 999 Riverside, Suite 510
Spokane, WA 99201

### *Re: Notice of Claim – $248,000.00 Fraud by X5 Transport Inc.*

Dear Josh:

Please accept this letter as notice by your insured, Big Sky Development, Inc. ("Big Sky"), of a claim under Travelers Casualty and Surety Company of America Policy Number 106160096.

The basic facts are as follows:

Big Sky has on several occasions in the past successfully purchased heavy equipment from a vendor in Canada called X5 Transport Inc. ("X5"). Recently, Big Sky attempted to purchase equipment from X5. As part of this purchase, Big Sky made partial equipment payments, via the transfer of money to X5, in the amount of two hundred and forty-eight thousand dollars ($248,000.00). However, as of today, X5 has not delivered the equipment as promised. Additionally, the principal of X5 is not returning calls. Finally, based on VIN number tracking of the equipment, at least one piece of the equipment to be purchased by Big Sky through X5 has been confirmed as not for sale. As a result of the foregoing, Big Sky has concluded that X5 is attempting to defraud, or has defrauded, Big Sky of the partial equipment payments.

The transfer of money noted above was the direct result of an employee of Big Sky being intentionally misled by the vendor through communications containing misrepresentations of material facts upon which the Big Sky employee relied, believing them to be true. These communications directed the Big Sky employee to make payments to the vendor. The employee made the payments to the vendor in good faith, in reliance upon the truth of vendor's communications, which unfortunately contained material misrepresentations.

Big Sky hereby reports the claim to you for transmission on to Travelers Casualty and Surety Company of America ("Travelers"). We note that Policy Number 106160096 has several coverages addressing criminal and fraudulent activity. Particularly, we note Endorsement CRI-19070-0515, SOCIAL ENGINEERING FRAUD INSURING AGREEMENT ENDORSEMENT.

Although we tender the entire matter to Travelers under the coverage noted above, in order to mitigate losses, and in light of the twenty-five thousand dollar ($25,000.00) self-insured retention attached to the above noted coverage, Big Sky has retained The Davillier Law Group to investigate this matter and to attempt recovery of the funds. We ask that Travelers contact Mr. George R. Wentz, Jr. of The Davillier Law Group at 504-458-7143 to discuss this matter. Mr. Wentz may also be reached by email at GWentz@DavillierLawGroup.com.

We look forward to hearing from you at your soonest opportunity as we feel time of the essence in this matter.

Sincerely,

Jeremy Tripp
President
Big Sky Development, Inc.

cc:     George R. Wentz, Jr., Esq.

# Plaintiff's Exhibit 4

 **TRAVELERS** 

385 Washington Street
Mail Code 9275-NB03F
St. Paul, MN 55102

April 26, 2017

Jeremy Tripp
Big Sky Development, Inc.
10063 N Navion Drive
HAYDEN, ID 83835

RE:     Insured Name:      Big Sky Development, Inc.
        Policy Number:     106160096
        Matter Number:     037-BSE-T1705497-NR

Dear Sir/Madam:

This letter formally acknowledges Travelers Casualty and Surety Company of America's receipt of the above matter.

Travelers understands that life is full of uncertainty. Rest assured that our claim professionals are ready to help. When working with Travelers you can always expect to be assisted promptly and treated with the utmost respect, integrity, professionalism and skill. Please refer to the attached Claim Service Guide for information on the Travelers Claim Experience.

This matter has been assigned to the below-referenced claim professional who will contact you shortly. Please refer to the matter number 037-BSE-T1705497-NR on all future communications to us.

Jill James
Claim Counsel
Bond & Specialty Insurance Claim
Phone: (651) 310-3927
Fax: (866) 608-9632
Email: JAJAMES@travelers.com

For your convenience, attached is a Proof of Loss form which can be used when submitting your claim. Please note the instructions on the form. **A completed, signed and notarized Proof of Loss**, with all substantiating documentation attached should be submitted in accordance with the time frames set forth in your Policy. Compliance with those time frames is a condition precedent to coverage under the Policy. Whenever possible please submit an electronic or scanned copy of your Proof of Loss and documentation in support of your claim to the email address listed above.

Note that substantiating or proof of loss documentation may include any documentation which relates to your loss, including, but not limited to: investigative reports, police report(s), correspondence, proof of ownership and cost of any lost property, a narrative describing how the loss occurred and how it was discovered. Please include any other documentation in support of the amount of loss being claimed.

If the loss was caused by Employee theft, please provide the employee's personnel file (including any performance review documentation). We have also attached a questionnaire dealing with circumstances surrounding your loss and ask that a copy be submitted when you forward the Personnel information.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\* **Our toll-free number is 800-842-8496** \*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
If possible, please send future communications and documents concerning this claim via email to JAJAMES@travelers.com Please include the claim number in the subject line. (Please note that in certain cases we may still request original documents).
Rev 05/09/15                                                                                                  CR-01

If your loss, or part thereof, involved the forgery, alteration or fraudulent use of any banking instrument(s), we have enclosed a form letter to assist you in providing the necessary notification to the banking institution(s) or any party cashing or otherwise dealing with the instrument(s) in question. Should you not wish to use the attached notification letter, please note that it is still necessary for you to protect your rights of recovery and ours by providing timely notification of this matter to any party cashing or otherwise dealing with the instrument(s) in question.

Upon receipt of the fully executed Proof of Loss (as described above), the claim professional assigned to help you will begin investigating your claim and will be communicating with you through the claim process regarding coverage for this matter. Please note that our attention to this matter shall not be deemed a waiver of any rights or defenses that may be available to Travelers Casualty and Surety Company of America and all such rights and defenses are hereby expressly reserved.

Travelers Bond & Specialty Insurance
Travelers Casualty and Surety Company of America

cc:      BK-JET GROUP LLC
        Patty Cowen
        999 W RIVERSIDE STE 510
        SPOKANE, WA 99201

        Josh Tyndell

# PROOF OF LOSS

| Name and Address of Insured | | Bond or Policy Number(s) |
|---|---|---|
| Date(s) of Loss | Date Insured Discovered Loss | Date Loss Reported to Company or Agent |

## SECTION I. (TO BE COMPLETED FOR EMPLOYEE DISHONESTY OR EMPLOYEE THEFT CLAIMS)

I, _____ certify that
(Name & Title {e.g. Owner, Partner, Managing Director, President, Chief Financial Officer, etc.} Of Person Signing
This Proof of Loss)

_____ has sustained a loss as a result of
(Name of Insured)

Employee Dishonesty or Employee Theft committed by _____
(Name of Employee(s))

while employed as _____
(Job Title of employee(s))

## SECTION II. (TO BE COMPLETED FOR ALL OTHER CLAIMS)

I, _____ certify that
(Name & Title {e.g. Owner, Partner, Managing Director, President, Chief Financial Officer, etc.} Of Person Signing This
Proof of Loss)

_____ has sustained a loss as a result of (check appropriate box):
(Name of Insured)

☐ Forgery                                  ☐ Computer Crime
☐ On Premises                              ☐ Funds Transfer Fraud
☐ In Transit                               ☐ Personal Accounts Protection
☐ Money Order or Counterfeit Money         ☐ Claim Expense
                                           ☐ Other

## SECTION III. (TO BE COMPLETED FOR ALL CLAIMS)

I further certify that: (1) the amount of money or property loss is _____ ($ _____ );
(Amount in Words)

(2) that said amount is a true net loss for the period from _____ to _____ ;

and (3) that the following is a detailed statement of loss:

In the space below specify how the loss was caused; when the loss occurred; the name and addresses of all persons who have knowledge of the details of the loss; and how and when the loss was discovered; and provide all documents available to support the claimed loss or identify and state where such documents are located and available for review and copying.  Attach Additional Pages If Necessary.)

_____

_____

_____

_____

_____

_____

## SECTION IV. (TO BE COMPLETED FOR ALL CLAIMS)

### (Attach Additional Pages If Necessary)

In the space below describe: Each item of loss for which claim is made and the amount claimed, (if merchandise list cost to insured) and each credit to be applied to this loss. Credits include any item of value available to offset against or reduce the loss. Attach additional sheets if necessary.

| Date of Loss or Credit | Description of Item of Loss or Credit | Amount Claimed or Credited |
|---|---|---|
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | Total Loss | |

It is understood that the above facts and details of loss are subject to verification. The acceptance and retention of this form by the Company as completed by the undersigned does not constitute a waiver of any stipulation or condition of the bond or policy, or an admission of coverage or liability thereunder.

**Fraud Warning: The undersigned affirms that he/she has reviewed the attached list of fraud warnings and has carefully read the fraud warning applicable in the state where the insured listed above is located, which fraud warning is hereby fully incorporated herein by reference.**

State of _____ }
 } ss
County of _____ }

_____ being duly sworn, states that, he/she is

_____ of _____ , the insured listed

above, and that the statements above, on the reverse side and in any papers attached constitute a complete and truthful recital of all facts now known concerning this claim; and that no material facts are being withheld or suppressed by the insured.

_____
(Signature Of Person Completing This Proof Of Loss)

Subscribed and sworn to before me, this _____ day of _____ 20 _____

(Notary Seal)

_____
Notary Public

STSP_FW1_

Date: _____ (Insert Date) _____

RE: Account Number _____

Dear: _____

This letter is to advise you that this company has suffered a loss involving the negotiation of the check(s) listed below. Your institution was a party to the negotiation of the instrument(s) on dates to be determined. Please accept this letter as notice that your actions may have caused or contributed, in whole or in part, to our loss. As our investigation continues, we, or our insurance carrier, will inform you of the full particulars of our loss:

| Date: | Check # | Payee | Amount: |
| --- | --- | --- | --- |

Yours very truly,

_____

cc: Travelers

# FIDELITY LOSS SUPPORTING DETAIL

**Insured** _____

**Principal (Employee)** _____

| |
|---|
| 1. Do you have an outside accounting firm?  If yes, were they hired to conduct an Audit, Review, or Compilation?  What was the date of the most recent report prepared by the accounting firm? |
| 2. Identify all services performed by your outside accountants in addition to those stated in their engagement letters (i.e. bookkeeping functions, preparation of payroll tax returns, sales tax reports, reconciliations and accounting procedure review, etc.) |
| 3. Does your company have an Internal Audit Department?  If yes, how long has it been operating?  What involvement does the outside accountant have in the internal audit function?  Did the internal audit dept. perform any reviews involving the area in which the embezzlement occurred? |

4. Does your company have an Accounting Procedures Manual? If so, how long has it been in use? Have the outside accountants made inquiries regarding the manual and/or have they been given a copy? Did the manual include procedures relative to the area of accounting in which the embezzlement occurred?

5. What steps have been taken to prevent a similar loss of this nature in the future?

6. Do you have copies of any of the outside accountant's workpapers? If yes, please attach to this form.

## PLEASE ATTACH THE FOLLOWING DOCUMENTS TO THIS FORM :

*\* \* Provide for EACH year beginning with the year preceding the date the loss began through the year preceding the date the loss was discovered \* \**

1. Outside Accountant's Engagement Letters

2. Outside Accountant's Management Reports

3. Outside Accountant's Financial Statements

4. All communication between your Company and the outside Accountants

# FRAUD WARNINGS BY STATE

| State | Fraud Warning |
|---|---|
| **All States Not Separately Listed Below** | Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime and subjects such person to criminal and civil penalties. |
| **Alaska** | Any person who knowingly and with intent to injure, defraud, or deceive an insurance company files a claim containing false, incomplete, or misleading information may be prosecuted under state law. |
| **Arizona** | For your protection Arizona law requires the following statement to appear on this form. Any person who knowingly presents a false or fraudulent claim for payment of a loss is subject to criminal and civil penalties. |
| **Arkansas** | Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison. |
| **California** | For your protection, California law requires the following to appear on this form: Any person who knowingly presents false or fraudulent claim for the payment of a loss is guilty of a crime and may be subject to fines and confinement in state prison. |
| **Colorado** | It is unlawful to knowingly provide false, incomplete, or misleading facts or information to an insurance company for the purpose of defrauding or attempting to defraud the company. Penalties may include imprisonment, fines, denial of insurance and civil damages. Any insurance company or agent of an insurance company who knowingly provides false, incomplete, or misleading facts or information to a policy holder or claimant for the purpose of defrauding or attempting to defraud the policy holder or claimant with regard to a settlement or award payable from insurance proceeds shall be reported to the Colorado Division of Insurance within the Department of Regulatory Agencies. |
| **Washington, D.C.** | WARNING: It is a crime to provide false or misleading information to an insurer for the purpose of defrauding the insurer or any other person. Penalties include imprisonment and/or fines. In addition, an insurer may deny insurance benefits if false information materially related to a claim was provided by the applicant. |
| **Delaware** | Any person who knowingly, and with intent to injure, defraud or deceive any insurer, files a statement of claim containing any false, incomplete or misleading information is guilty of a felony. |
| **Florida** | Any person who knowingly and with intent to injure, defraud, or deceive any insurer files a statement of claim or an application containing any false, incomplete, or misleading information is guilty of a felony of the third degree. |

*********************** **Our toll-free number is 800-842-8496** ***********************
If possible, please send future communications and documents concerning this claim via email to JAJAMES@travelers.com Please include the claim number in the subject line. (Please note that in certain cases we may still request original documents).
Rev 05/09/15                                                                                                                            CR-01

| | |
|---|---|
| **Idaho** | Any person who knowingly, and with intent to defraud or deceive any insurance company, files a statement of claim containing any false, incomplete, or misleading information is guilty of a felony. |
| **Indiana** | A person who knowingly and with intent to defraud an insurer files a statement of claim containing any false, incomplete, or misleading information commits a felony. |
| **Kentucky** | Any person who knowingly and with intent to defraud any insurance company or other person files a statement of claim containing any materially false information or conceals, for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime. |
| **Louisiana** | Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison. |
| **Maine** | It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties may include imprisonment, fines or a denial of insurance benefits. |
| **Maryland** | Any person who knowingly and willfully presents a false or fraudulent claim for payment of a loss or benefit or who knowingly and willfully presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison. |
| **Minnesota** | A person who files a claim with intent to defraud or helps commit a fraud against an insurer is guilty of a crime. |
| **New Hampshire** | Any person who, with a purpose to injure, defraud or deceive any insurance company, files a statement of claim containing any false, incomplete or misleading information is subject to prosecution and punishment for insurance fraud, as provided in RSA 638.20. |
| **New Jersey** | Any person who knowingly files a statement of claim containing any false or misleading information is subject to criminal and civil penalties. |
| **New Mexico** | ANY PERSON WHO KNOWINGLY PRESENTS A FALSE OR FRAUDULENT CLAIM FOR PAYMENT OF A LOSS OR BENEFIT OR KNOWINGLY PRESENTS FALSE INFORMATION IN AN APPLICATION FOR INSURANCE IS GUILTY OF A CRIME AND MAY BE SUBJECT TO CIVIL FINES AND CRIMINAL PENALTIES. |
| **New York** | Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime, and shall also be subject to civil penalty not to exceed five thousand dollars and the stated value of the claim for each such violation. |
| **Ohio** | Any person who, with intent to defraud or knowing that he is facilitating a fraud against an insurer, submits an application or files a claim containing a false or deceptive statement is guilty of insurance fraud. |

| | |
|---|---|
| **Oklahoma** | WARNING: Any person who knowingly, and with intent to injure, defraud or deceive any insurer, makes any claim for the proceeds of an insurance policy containing any false, incomplete or misleading information is guilty of a felony. |
| **Oregon** | Any person who, with intent to defraud or knowing that he is facilitating a fraud against an insurer, submits an application or files a claim containing a false or deceptive statement may be guilty of insurance fraud. |
| **Pennsylvania** | Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information or conceals for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subjects such person to criminal and civil penalties. |
| **Puerto Rico** | Any person who knowingly and with the intention of defrauding presents false information in an insurance application, or presents, helps, or causes the presentation of a fraudulent claim for the payment of a loss or any other benefit, or presents more than one claim for the same damage or loss, shall incur a felony and, upon conviction, shall be sanctioned for each violation with the penalty of a fine of not less than five thousand dollars ($5,000) and not more than ten thousand dollars ($10,000), or a fixed term of imprisonment for three (3) years, or both penalties. Should aggravating circumstances are present, the penalty thus established may be increased to a maximum of five (5) years, if extenuating circumstances are present, it may be reduced to a minimum of two (2) years. |
| **Rhode Island** | Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison. |
| **Tennessee** | It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties include imprisonment, fines and denial of insurance benefits. |
| **Virginia** | It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties include imprisonment, fines and denial of insurance benefits. |
| **Washington** | It is a crime to knowingly provide false, incomplete, or misleading information to an insurance company for the purpose of defrauding the company. Penalties include imprisonment, fines, and denial of insurance benefits. |
| **West Virginia** | Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison. |

# Claim Service Guide & FAQ
## Commercial Crime and Financial Institution Bond Claims

Travelers understands that life is full of uncertainty. Rest assured that whenever possible, our claim professionals are ready to help. When you call you can always expect to be assisted promptly and treated with the utmost respect, integrity, professionalism and skill.

## I reported a claim. Now what?

The lifecycle of a claim varies depending on the nature of the claim. However, the claim process generally includes the following steps:

**1. Acknowledgment**
Now that you have received the attached letter acknowledging Travelers' receipt of the claim notice, you have the claim number and the name and contact information of the claim professional assigned to your matter. It also includes instructions regarding the submission of your proof of loss.

**2. Proof of Loss Submission**
Within 120 days of discovery, unless modified by endorsement, you must submit a proof of loss, duly sworn to, with full particulars.

**3. Information gathering**
Our formal investigation begins upon our receipt of the proof of loss. The claim professional may engage an expert and you may receive communications requesting additional information in order to assist in the investigation of the claim.

**4. Coverage determination**
Travelers will send you a letter which outlines the coverage available under the policy. This letter should be viewed as an informative document setting forth the terms, conditions and exclusions contained within the policy that may apply to your claim. It will also explain why a matter does not fall within the coverage provided.

**5. Resolution**
We strive to resolve all claims as expeditiously as possible. Claims involving many transactions or occurring over an extended period of time may require a fact intensive investigation.

**6. Release and assignment**
You may be asked to sign a release & assignment of your claim. This document permits Travelers to pursue recovery from any parties responsible for the loss.

**Who will handle my claim?**
Your claim will be handled by a Travelers Bond & Specialty Insurance claim professional. The Bond & Specialty Insurance claim department is made up of diverse claim and legal professionals. We employ claim professionals throughout the United States and provide personal, localized claim service. We work directly with insureds, policyholders, agents and brokers and are committed to delivering world class service to all our customers.

**Dedicated recovery management services**

To enhance potential for recovery of the loss, including your deductible, Travelers Bond and Specialty Insurance has a dedicated recovery management unit. Our staff has expertise and experience with:

- Preservation of recovery opportunities
- Federal and state laws impacting recovery
- Criminal proceedings
- Financial analysis
- Creditors rights
- Third party bank liability
- Attachment of real property
- Online resources to identify assets

This material does not amend, or otherwise affect, the provisions or coverages of any insurance policy or bond issued by Travelers  It is not a representation that coverage does or does not exist for any particular claim or loss under any such policy or bond   Coverage depends on the facts and circumstances involved in the claim or loss, all applicable policy or bond provisions, and any applicable law  Availability of coverage referenced in this document can depend on underwriting qualifications and state regulations

# Plaintiff's Exhibit 5



**D**AVILLIER **L**AW **G**ROUP, LLC
212 North First Avenue • Suite 303
Sandpoint • Idaho • 83864
Phone: 208-920-6140 • Fax: 208-920-6130

August 7, 2017

Jill James | Claim Counsel | Bond and Specialty Insurance
Travelers
385 Washington Street | MC: 9275-SB04B
St. Paul, MN 55102-1396

   *Re:*   *T1705497 – Big Sky Development, Inc.*

Dear Ms. James:

Further to the notice of claim previously delivered by my firm on behalf of your insured, Big Sky Development, Inc. ("Big Sky"), and our subsequent email exchanges and conversations, attached please find the completed Proof of Loss regarding the above captioned matter.

As you will see from reviewing the enclosed materials, Rob Welling fraudulently gained the confidence of a Big Sky employee over the course of approximately twelve months, purporting to operate as a legitimate vendor when he was not. Ultimately, his false communications defrauded Big Sky of $248,000.00, which is the subject of this claim.

The Proof of Loss provides the narrative of the loss, as well as backup for the financial loss, and the fraudulent communications leading to the loss.

Your insured stands ready to cooperate fully in your investigation of this matter, and looks forward to prompt payment of the claim.

Should you have any questions or need additional information, please do not hesitate to contact me at any time.

With kind regard, I remain

Sincerely,

George R. Wentz, Jr. Esq.
Licensed in Louisiana Only

cc: Big Sky Development, Inc.

# PROOF OF LOSS

| Name and Address of Insured<br>Big Sky Development, Inc., 10063 Navion Drive, Hayden, ID 83835 | Bond or Policy Number(s)<br>CPA 6024809 21 |
|---|---|
| Date(s) of Loss<br>4/20/17 | Date Insured Discovered Loss<br>4/20/17 | Date Loss Reported to Company or Agent<br>4/20/17 |

### SECTION I. (TO BE COMPLETED FOR EMPLOYEE DISHONESTY OR EMPLOYEE THEFT CLAIMS)

I,  _____N/A_____  certify that
(Name & Title {e.g. Owner, Partner, Managing Director, President, Chief Financial Officer, etc.} Of Person Signing
This Proof of Loss)

_____  has sustained a loss as a result of
(Name of Insured)

Employee Dishonesty or Employee Theft committed by  _____
(Name of Employee(s))

while employed as  _____
(Job Title of employee(s))

### SECTION II. (TO BE COMPLETED FOR ALL OTHER CLAIMS)

I,  _____Jeremy Tripp, President_____  certify that
(Name & Title {e.g. Owner, Partner, Managing Director, President, Chief Financial Officer, etc.} Of Person Signing This
Proof of Loss)

_____Big Sky Development, Inc._____  has sustained a loss as a result of (check appropriate box);
(Name of Insured)

| | | | |
|---|---|---|---|
| ☐ | Forgery | ☐ | Computer Crime |
| ☐ | On Premises | ☒ | Funds Transfer Fraud |
| ☐ | In Transit | ☐ | Personal Accounts Protection |
| ☐ | Money Order or Counterfeit Money | ☐ | Claim Expense |
| | | ☐ | Other |

### SECTION III. (TO BE COMPLETED FOR ALL CLAIMS)

I further certify that: (1) the amount of money or property loss is  Two Hundred Forty-Eight Thousand Dollars ($  248,000.00  );
(Amount in Words)

(2) that said amount is a true net loss for the period from  4/4/17  to  4/27/17  ;

and (3) that the following is a detailed statement of loss:

In the space below specify how the loss was caused; when the loss occurred; the name and addresses of all persons who have knowledge of the details of the loss; and how and when the loss was discovered; and provide all documents available to support the claimed loss or identify and state where such documents are located and available for review and copying.  Attach Additional Pages If Necessary.)

See Attached

_____
_____
_____
_____
_____
_____

(Attach Additional Pages If Necessary)

In the space below describe: Each item of loss for which claim is made and the amount claimed, (if merchandise list cost to insured) and each credit to be applied to this loss. Credits include any item of value available to offset against or reduce the loss. Attach additional sheets if necessary.

| Date of Loss or Credit | Description of Item of Loss or Credit | Amount Claimed or Credited |
|---|---|---|
| 4/20/17 | 2012 CAT 321-LC Excavator<br>VIN #CAT0321DCMPG00637 | $85,000 |
| 4/20/17 | CAT 950 Wheel Loader<br>VIN #J5J01720 | $85,000 |
| 4/20/17 | CAT 330 Excavator<br>VIN #CAT0330DKMWP02785 | $78,000 |
| | Total Loss | $248,000 |

It is understood that the above facts and details of loss are subject to verification. The acceptance and retention of this form by the Company as completed by the undersigned does not constitute a waiver of any stipulation or condition of the bond or policy, or an admission of coverage or liability thereunder.

**Fraud Warning: The undersigned affirms that he/she has reviewed the attached list of fraud warnings and has carefully read the fraud warning applicable in the state where the insured listed above is located, which fraud warning is hereby fully incorporated herein by reference.**

State of ____Idaho_____ }
                                    } ss
County of ____Kootenai_____ }

____Jeremy Tripp_____ being duly sworn, states that, he/she is

____President_____ of ____Big Sky Development, Inc._____ , the insured listed

above, and that the statements above, on the reverse side and in any papers attached constitute a complete and truthful recital of all facts now known concerning this claim; and that no material facts are being withheld or suppressed by the insured.

(Signature Of Person Completing This Proof Of Loss)

Subscribed and sworn to before me, this ____24ᵗʰ____ day of ____July____ 20 __17__

_____
Notary Public

STSP_FW1
My Commission Expires September 24, 2018

GENIE R. RIEGERT
Notary Public
State of Idaho

1. *How the loss was caused*: The loss was caused by Rob Welling ("Welling") who, through a front company called X5 Transport in Calgary, Canada ("X5"), purported to be a valid vendor to Big Sky Development, Inc. ("Big Sky") as part of a scheme to defraud Big Sky of money. Through a series of email, text message, and telephone communications that contained misrepresentations of material facts, Welling intentionally misled Big Sky employee Jacki Fullerton ("Fullerton"), who relied upon the material misstatements made by Welling, believing them to be true. Through those fraudulent communications, Welling gained Fullerton's trust over time, and directed Fullerton to pay $248,000.00 to X5 during late April, 2017, for the sale of three pieces of equipment that X5 claimed to own but did not.

Welling began the scam through a series of communications during April of 2016, when he falsely introduced himself to Fullerton as a legitimate equipment delivery and customs clearing service during a period when, due to the downturn in the oil industry in Calgary, construction equipment could be purchased at auction at attractive prices. Big Sky purchased two pieces of equipment at auction, after which Fullerton was approached by Welling. Welling gained Fullerton's confidence by purporting to be a legitimate equipment delivery and customs clearing service during this time. He successfully delivered two pieces of equipment at minimal charges in order to establish his *bona fides* and gain Fullerton's confidence. He then used that confidence to scam Fullerton into believing that X5 had title to expensive pieces of construction equipment that it could sell to Big Sky. Thus, he convinced Fullerton to pay X5 $248,000.00 under false pretenses, as X5 never had title to the equipment, and in fact had nothing to sell.

Our fact investigation has revealed that Weller has engaged in this scam repeatedly, preying on businesses in the United States from across the Canadian border. X5 purports to be a legitimate vendor to US businesses in order to gain their confidence and scam them of large sums, as was done in this instance.

2. *When the loss occurred*: The loss occurred on or about April 20, 2017, in the amount of $248,000.00. See attached check and wire transfer.

3. *The name and addresses of all persons who have knowledge of the details of the loss*:
    a. Jacki Fullerton, Construction Manager, Big Sky Development, Inc., 10063 N. Navion Drive, Hayden ID 38335
    b. Jeremy Tripp, President, Big Sky Development, Inc., 10063 N. Navion Drive, Hayden ID 38335
    c. Rob Welling, President, X5 Transport, 370,5222 130th Ave. SE, Suite 207, Calgary AB T2Z 0G4

d.  Nicki Welling, Office Manager, X5 Transport, 370,5222 130th Ave. SE, Suite 207, Calgary AB T2Z 0G4

e.  Monique Mattson, Vantage Point Services, 22513 Marine View Drive South, Suite 200, DeMoines, Washington 98198

4.  *How the loss was discovered*: The loss was discovered on or about April 20, 2017, after the equipment that had been paid for by Big Sky was not delivered by X5/Rob Weller, and the numerous excuses made by Weller did not add up.

5.  *Documentation supporting loss*: Evidence of payment is attached. All emails between Fullerton and Weller from the beginning of the scam in April, 2016 through the end of the scam in April, 2017, are attached. If additional documentation is required, it is housed at the corporate headquarters of Big Sky Development, Inc., 10063 N. Navion Drive, Hayden ID 38335, and will be made available for copying upon request.

RESOLUTION SECURITY - THE REVERSE SIDE OF THIS DOCUMENT INCLUDES MICROPRINTED ENDORSEMENT LINES AND ARTIFICIAL WATERMARK - HOLD AT AN ANGLE TO VIEW - DO NOT ACCEPT WITHOUT

**‹IDAHO›**
**INDEPENDENT BANK®**
8882 N Government Way • Hayden Lake, ID 83835
www.theidahobank.com
(208) 772-6290

92-373/1231
0202015012

**28852**

Apr 11, 2017

VOID AFTER 90 DAYS

Remitter: *** BIG SKY DEVELOPMENT ***

PAY
TO THE
ORDER OF            *** X5 TRANSPORT INC. ***

One Hundred Sixty Three Thousand and 00/100****************            $163,000.00

**CASHIER'S CHECK**

Memo: *** # 100334-5 ***

AUTHORIZED SIGNATURE

TWO SIGNATURES REQUIRED IF OVER $25,000

⑈028852⑈              5012⑈

ENDORSE HERE

X _____

_____

_____

**DO NOT WRITE, STAMP OR SIGN BELOW THIS LINE**
**↑RESERVED FOR FINANCIAL INSTITUTION USE↑**

APR 12 2017

10701 AVE. & RINGS. BANKING CTR.
CALGARY, AB

The security features listed below, exceed industry guidelines

Security Features:
Heat Sensitive Icon

Warning Band

Microprint
Diagonal Generational
Borders
Artificial Watermark

Toner Grip

Coated Back printed
the more Fluorescent Image

© Patrick Gray is a certified mate of Check Payment Systems Association

# INVOICE

**X5 TRANSPORT INC**
370,5222,130TH AVE SE CALGARY
T2Z 0G4
CANADA

**BILL TO**

Jacki Fullerton

Construction Manager

Big Sky Development, Inc.

P: 208.772.9646 F: 208.762.6376

**INVOICE #**  100334-5

**INVOICE DATE**  06/04/2017

| DESCRIPTION | AMOUNT |
|---|---|
| 1 cat 950 WHEEL LOADER CLEANED LUBED READY FOR BORDER CROSS @ $85,000 | 163,000.00 |
| 1 CAT 330 EXCAVATOR CLEANED LUBED READY FOR BORDER CROSS @ $78,000 | |
| PRICING ALL IN TO INCLUDE SHIPPING AND ALL CLEARANCE AND IMPORT FESS...ASSOCIATED WITH CROSSING USA. | |

**TOTAL**        **$163,000.00**



**TERMS & CONDITIONS**

WIRE TRANSFER TO
BANK IS CIBC
SWIFT CODE IS CIBCCATT
BANK INSTITUTION NUMBER 010
BRANCH IS 06909
ACCT # IS ████34
NIKKI WELLING
THANKS GUYS ENJOY YOUR NEW
MACHINE...

# INVOICE

**X5 TRANSPORT INC**
370,5222,130TH AVE SE CALGARY
T2Z 0G4
CANADA

**BILL TO**

Jacki Fullerton Construction Manager
Big Sky Corp.
P: 208.772.9646 C: 208.659.9532
10063 N Navion Drive Hayden, ID 83835

**INVOICE #**  100332

**INVOICE DATE**  04/04/2017

| DESCRIPTION | AMOUNT |
| --- | --- |
| 2012 CAT 321-LC VIN# CAT0321DCMPG00637 | 85,000.00 |
| **TOTAL** | **$85,000.00** |

**TERMS & CONDITIONS**

WIRE TRANSFER TO
BANK IS CIBC
SWIFT CODE IS CIBCCATT
BANK INSTUTION NUMBER 010
BRANCH IS 06909
ACCT # IS ███34
THANKS GUYS ENJOY YOUR NEW
MACHINE...

*Thank you*

Please forward to X5 Transport, thanks!

Genie Riegert, Office Manager


Big Sky Corporation
10063 Navion Drive
Hayden, ID 83835
Office (208) 772-9646
Fax (208) 762-6376
www.bigskyidaho.com


-----Original Message-----
From: Idaho Independent Bank [mailto:Acct_wires@iibk.net]
Sent: Wednesday, April 5, 2017 11:25 AM
To: Genie Riegert <genie@bigskyidaho.com>
Subject: Outgoing Wire Notification

Your wire transfer on 04/05/17, in the amount of $85,000.00, was successfully
sent to X5 Transport Inc. at WELLSFARGO NY INTL.

Contact Idaho Independent Bank at (208) 762-7309 if you have any questions
regarding this transaction. Refer to wire sequence number 41986 in your
inquiry.

Debited from account number ending with 331
Wire Fee: $0.00


OMAD: ███████████████████FT03
IMAD: ███████████████3920

Bank Instution # 010
Branch # 06909
Nikki Welling


------------------------------------------------------
This communication is intended only for the person or entity to which it is
addressed and may contain confidential, proprietary, and/or privileged
material. Unless you are the intended addressee, any review, reliance,
dissemination, distribution, copying or use whatsoever of this communication
is strictly prohibited. If you received this in error, please reply
immediately and delete the material from all computers.

| | |
|---|---|
| **From:** | Rob Welling <rob.x5transport@gmail.com> |
| **Sent:** | Friday, April 8, 2016 11:44 AM |
| **To:** | Jacki Fullerton |
| **Subject:** | Re: Big Sky Development - Dump Truck Import |

Its ok dont worry k.My team can bill for this anytime. We got you guys covered k..enjoy your weekend zero stress k..

Rob Welling
President
X5 Transport
403-850-2025 Office
Fax 587-471-1377
Your Trusted source for all
your shipping needs.
Customer satisfaction is # 1



On Fri, Apr 8, 2016 at 12:31 PM, Jacki Fullerton <jacki@bigskyidaho.com> wrote:

Hi Rob –

It is your neurotic dump truck owner...It is 11:30 my time and I still haven't heard from Monique. I know you were wanting to pick it up this weekend. Monique can call me on my cell phone anytime day or night at 208/659-9532. The trick however is I am not the one she needs the signature from so it could take me some time to get that as he is in the office now but he could be in the middle of the lake tomorrow.

Sorry...just want to make sure I have everything so we don't delay this fiasco any further.

Thanks.

**Jacki Fullerton**

Construction Manager

Big Sky Development, Inc.

P: 208.772.9646 F: 208.762.6376

**From:** rob.x5transport [mailto:rob.x5transport@gmail.com]
**Sent:** Friday, April 8, 2016 7:12 AM
**To:** Jacki Fullerton <jacki@bigskyidaho.com>

**Subject:** RE: Big Sky Development - Dump Truck Import

Oh hi Jackie. Nok worries I spoke to her and everything is fine. I will call you shortly ok.

Sent from my Samsung Galaxy smartphone.

-------- Original message --------

From: Jacki Fullerton <jacki@bigskyidaho.com>

Date: 2016-04-08 7:23 AM (GMT-07:00)

To: Rob Welling <rob.x5transport@gmail.com>

Subject: RE: Big Sky Development - Dump Truck Import

Hi Rob

I never did hear from Monique yesterday. I will only be in the office until 2 pm PST today. Hopefully I will hear from her today.

Thanks.

Jacki

2

Sent from my Verizon Wireless 4G LTE smartphone

-------- Original message --------

From: Rob Welling <rob.x5transport@gmail.com>

Date: 4/6/2016 4:18 PM (GMT-08:00)

To: Jacki Fullerton <jacki@bigskyidaho.com>

Subject: Re: Big Sky Development - Dump Truck Import

Hi there, Just letting you know my customs broker will be contacting you tomorrow k, All you need to do is fill out the power of attorney form and scan send back to her, There will be a small charge as all customs brokers charge to do the single entry bond clearance and we will have everything ready to go and be picked up tomorrow or Friday.. No sweat piece of cake k, Have a awesome evening, her name ins Monique

Cheers

Rob Welling

President

X5 Transport

403-850-2025 Office

Fax 587-471-1377

Your Trusted source for all

your shipping needs.

Customer satisfaction is # 1



On Wed, Apr 6, 2016 at 2:35 PM, Jacki Fullerton <jacki@bigskyidaho.com> wrote:

3

Hi Rob –

Here is all the information I have. If you need anything else please let me know. I can give you the info to the people at Ritchie Bros. who have been taking the photos for me. Like I said...if you can make this happen you are officially my new best friend!

Thanks again...I may actually be able to sleep again knowing there may be an end to this...

**Jacki Fullerton** Construction Manager
**Big Sky Corp.**
P: 208.772.9646 C: 208.659.9532
10063 N Navion Drive Hayden, ID 83835
✉ EMAIL     ⬇ VCARD

| | |
|---|---|
| **From:** | Jeremy Tripp |
| **Sent:** | Wednesday, April 6, 2016 4:25 PM |
| **To:** | Jacki Fullerton |
| **Subject:** | RE: Big Sky Development - Dump Truck Import |

WOW, WAS THAT ALMOST SCARY EASY, DO WE PAY HIM WHEN IT GETS HERE? ITS STILL NAMED JACKI YOU KNOW

Jeremy Tripp, President
Big Sky Corp.
P: 208/772-9646
C: 208/818-4843

**From:** Jacki Fullerton
**Sent:** Wednesday, April 6, 2016 4:22 PM
**To:** Jeremy Tripp <jeremy@bigskyidaho.com>
**Subject:** Fwd: Big Sky Development - Dump Truck Import

Am so drinking tonight...


Sent from my Verizon Wireless 4G LTE smartphone


-------- Original message --------
From: Rob Welling <rob.x5transport@gmail.com>
Date: 4/6/2016 4:18 PM (GMT-08:00)
To: Jacki Fullerton <jacki@bigskyidaho.com>
Subject: Re: Big Sky Development - Dump Truck Import

Hi there, Just letting you know my customs broker will be contacting you tomorrow k, All you need to do is fill
out the power of attorney form and scan send back to her, There will be a small charge as all customs brokers
charge to do the single entry bond clearance and we will have everything ready to go and be picked up
tomorrow or Friday.. No sweat piece of cake k, Have a awesome evening, her name ins Monique
Cheers


Rob Welling
President
X5 Transport
403-850-2025 Office
Fax 587-471-1377
Your Trusted source for all
your shipping needs.

1

Customer satisfaction is # 1



On Wed, Apr 6, 2016 at 2:35 PM, Jacki Fullerton <jacki@bigskyidaho.com> wrote:

Hi Rob –

Here is all the information I have. If you need anything else please let me know. I can give you the info to the people at Ritchie Bros. who have been taking the photos for me. Like I said...if you can make this happen you are officially my new best friend!

Thanks again...I may actually be able to sleep again knowing there may be an end to this...



**Jacki Fullerton** Construction Manager
**Big Sky Corp.**
P: <u>208.772.9646</u> C: <u>208.659.9532</u>
10063 N Navion Drive Hayden, ID 83835
WEBSITE    EMAIL    VCARD

free from company   com

| | |
|---|---|
| **From:** | Rob Welling <rob.x5transport@gmail.com> |
| **Sent:** | Wednesday, April 6, 2016 1:54 PM |
| **To:** | Jacki Fullerton |
| **Subject:** | Re: Big Sky Development - Dump Truck Import |

Hahahha omg impossible anything can be done with the right attitude and know how, Sorry you are having to go through this. like I said sit back relax, have a nice glass of vino and your new truck will be down there next week k.. Dont worry about a thing my customs will clear this all up..
cheers


Rob Welling
President
X5 Transport
403-850-2025 Office
Fax 587-471-1377
Your Trusted source for all
your shipping needs.
Customer satisfaction is # 1



On Wed, Apr 6, 2016 at 2:50 PM, Jacki Fullerton <jacki@bigskyidaho.com> wrote:

No, we don't have one because they all told me no it couldn't be done...so you are free to use whomever you like☺


**Jacki Fullerton**

Construction Manager

Big Sky Development, Inc.

P: 208.772.9646 F: 208.762.6376


From: Rob Welling [mailto:rob.x5transport@gmail.com]
Sent: Wednesday, April 6, 2016 1:50 PM
To: Jacki Fullerton <jacki@bigskyidaho.com>
Subject: Re: Big Sky Development - Dump Truck Import

Jacki dont worry let the pros take over from here. This is what we do, Let the stress and worry all come to us and we make it happen quick and go away.. i will get this sorted and ready to be picked up and delivered in no time for you. Did you have a customs broker you were working with already If so who or can we use ours?

Rob Welling

President

X5 Transport

403-850-2025 Office

Fax 587-471-1377

Your Trusted source for all

your shipping needs.

Customer satisfaction is # 1



On Wed, Apr 6, 2016 at 2:35 PM, Jacki Fullerton <jacki@bigskyidaho.com> wrote:

Hi Rob --

Here is all the information I have. If you need anything else please let me know. I can give you the info to the people at Ritchie Bros. who have been taking the photos for me. Like I said...if you can make this happen you are officially my new best friend!

Thanks again...I may actually be able to sleep again knowing there may be an end to this...

**Jacki Fullerton** Construction Manager
**Big Sky Corp.**
P: 208.772.9646 C: 208.659.9532
10063 N Navion Drive Hayden, ID 83835
WEBSITE    EMAIL    VCARD



free from company's com

| | |
|---|---|
| **From:** | Rob Welling <rob.x5transport@gmail.com> |
| **Sent:** | Friday, April 8, 2016 12:41 PM |
| **To:** | Jacki Fullerton |
| **Subject:** | Re: Scanned Items |

OK I sent it twice. Ill check my end but it was sent,   dont worry thoughh monday is fine ok


Rob Welling
President
X5 Transport
403-850-2025 Office
Fax 587-471-1377
Your Trusted source for all
 your shipping needs.
Customer satisfaction is # 1


On Fri, Apr 8, 2016 at 1:37 PM, Jacki Fullerton <jacki@bigskyidaho.com> wrote:

Thanks Rob –


I still haven't seen it (from either of you)...we have been having internet issues all day. It is not in my junk mail either.


**Jacki Fullerton**

Construction Manager

Big Sky Development, Inc.

P: 208.772.9646 F: 208.762.6376


**From:** Rob Welling [mailto:rob.x5transport@gmail.com]
**Sent:** Friday, April 8, 2016 11:52 AM
**To:** Jacki Fullerton <jacki@bigskyidaho.com>
**Subject:** Re: Scanned Items


Ill forward it to you k

Rob Welling

President

X5 Transport

403-850-2025 Office

Fax 587-471-1377

Your Trusted source for all

your shipping needs.

Customer satisfaction is # 1



On Fri, Apr 8, 2016 at 12:49 PM, Jacki Fullerton <jacki@bigskyidaho.com> wrote:

Thanks...I haven't seen it yet hopefully she remembered not to put an "e" on the end of my name in the email☺ I will come in off the ledge now...

**Jacki Fullerton**

Construction Manager

Big Sky Development, Inc.

P: 208.772.9646 F: 208.762.6376

**From:** Rob Welling [mailto:rob.x5transport@gmail.com]
**Sent:** Friday, April 8, 2016 11:46 AM
**To:** Jacki Fullerton <jacki@bigskyidaho.com>
**Subject:** Fwd: Scanned Items

Rob Welling

President

X5 Transport

403-850-2025 Office

Fax 587-471-1377

Your Trusted source for all

 your shipping needs.

Customer satisfaction is # 1



---------- Forwarded message ----------
From: **Monique Mattson** <monique@vantagept.com>
Date: Fri, Apr 8, 2016 at 11:37 AM
Subject: RE: Scanned Items
To: Rob Welling <rob.x5transport@gmail.com>

Hi Rob,


I just sent Jacki the billing for the below shipment and added you to the email.


Please keep me updated on the shipment picking up and the border crossing information : )


Monique Mattson

Vantage Point Services

22513 Marine View Dr S Ste 200

Des Moines, WA 98198

Tel 206 878 8884 / Fax 206 878 9001

Awesome that's all we will need and I will have that tomorrow cheers


Rob Welling

President

X5 Transport

403-850-2025 Office

Fax 587-471-1377

Your Trusted source for all

your shipping needs.

Customer satisfaction is # 1




On Wed, Apr 6, 2016 at 5:04 PM, Monique Mattson <monique@vantagept.com> wrote:

Thank you very much for the below docs and please send me the BOL and crossing information once available.



Monique Mattson

Vantage Point Services

22513 Marine View Dr S Ste 200

Des Moines, WA 98198

Tel 206 878 8884 / Fax 206 878 9001

**From:** Rob Welling [mailto:rob.x5transport@gmail.com]
**Sent:** Wednesday, April 6, 2016 2:49 PM
**To:** monique@vantagept.com
**Subject:** Fwd: Scanned Items

Rob Welling

President

X5 Transport

403-850-2025 Office

Fax 587-471-1377

Your Trusted source for all

 your shipping needs.

Customer satisfaction is # 1



---------- Forwarded message ----------
From: **Alicia Watson** <alicia.x5transport@gmail.com>
Date: Wed, Apr 6, 2016 at 3:33 PM
Subject: Scanned Items
To: Rob Welling <rob.x5transport@gmail.com>

Here you are.

--

Your Trusted source for all

your shipping needs.

Customer satisfaction is # 1

Alicia Watson

Office Admin

X5 Transport

<u>403-850-2025</u> Office

Fax <u>587-471-1377</u>


370, 5222-130th Ave SE

Suite #207 Calgary, AB T2Z 0G4

| | |
|---|---|
| **From:** | Rob Welling <rob.x5transport@gmail.com> |
| **Sent:** | Friday, April 8, 2016 12:41 PM |
| **To:** | Jacki Fullerton |
| **Subject:** | Re: Scanned Items |

OK  I sent it twice.  Ill check my end but it was sent,   dont worry thoughh monday is fine ok


Rob Welling
President
X5 Transport
403-850-2025 Office
Fax 587-471-1377
Your Trusted source for all
your shipping needs.
Customer satisfaction is # 1



On Fri, Apr 8, 2016 at 1:37 PM, Jacki Fullerton <jacki@bigskyidaho.com> wrote:

Thanks Rob –


I still haven't seen it (from either of you)...we have been having internet issues all day. It is not in my junk mail either.


## Jacki Fullerton

Construction Manager

Big Sky Development, Inc.

P: 208.772.9646 F: 208.762.6376


From: Rob Welling [mailto:rob.x5transport@gmail.com]
Sent: Friday, April 8, 2016 11:52 AM
To: Jacki Fullerton <jacki@bigskyidaho.com>
Subject: Re: Scanned Items


Ill forward it to you k

Rob Welling

President

X5 Transport

403-850-2025 Office

Fax 587-471-1377

Your Trusted source for all

your shipping needs.

Customer satisfaction is # 1



On Fri, Apr 8, 2016 at 12:49 PM, Jacki Fullerton <jacki@bigskyidaho.com> wrote:

Thanks...I haven't seen it yet hopefully she remembered not to put an "e" on the end of my name in the email☺ I will come in off the ledge now...

**Jacki Fullerton**

Construction Manager

Big Sky Development, Inc.

P: 208.772.9646 F: 208.762.6376

**From:** Rob Welling [mailto:rob.x5transport@gmail.com]
**Sent:** Friday, April 8, 2016 11:46 AM
**To:** Jacki Fullerton <jacki@bigskyidaho.com>
**Subject:** Fwd: Scanned Items

Rob Welling

President

X5 Transport

403-850-2025 Office

Fax 587-471-1377

Your Trusted source for all

 your shipping needs.

Customer satisfaction is # 1

[x]

---------- Forwarded message ----------
From: **Monique Mattson** <monique@vantagept.com>
Date: Fri, Apr 8, 2016 at 11:37 AM
Subject: RE: Scanned Items
To: Rob Welling <rob.x5transport@gmail.com>

Hi Rob,


I just sent Jacki the billing for the below shipment and added you to the email.


Please keep me updated on the shipment picking up and the border crossing information : )



Monique Mattson

Vantage Point Services

22513 Marine View Dr S Ste 200

Des Moines, WA 98198

Tel 206 878 8884 / Fax 206 878 9001

**From:** Rob Welling [mailto:rob.x5transport@gmail.com]
**Sent:** Wednesday, April 6, 2016 4:15 PM
**To:** Monique Mattson
**Subject:** Re: Scanned Items

Awesome that's all we will need and I will have that tomorrow cheers

Rob Welling

President

X5 Transport

403-850-2025 Office

Fax 587-471-1377

Your Trusted source for all

your shipping needs.

Customer satisfaction is # 1



On Wed, Apr 6, 2016 at 5:04 PM, Monique Mattson <monique@vantagept.com> wrote:

Thank you very much for the below docs and please send me the BOL and crossing information once available.

Monique Mattson

Vantage Point Services

22513 Marine View Dr S Ste 200

Des Moines, WA 98198

Tel 206 878 8884 / Fax 206 878 9001

**From:** Rob Welling [mailto:rob.x5transport@gmail.com]
**Sent:** Wednesday, April 6, 2016 2:49 PM
**To:** monique@vantagept.com
**Subject:** Fwd: Scanned Items

Rob Welling

President

X5 Transport

403-850-2025 Office

Fax 587-471-1377

Your Trusted source for all

your shipping needs.

Customer satisfaction is # 1

---------- Forwarded message ----------
From: Alicia Watson <alicia.x5transport@gmail.com>
Date: Wed, Apr 6, 2016 at 3:33 PM
Subject: Scanned Items
To: Rob Welling <rob.x5transport@gmail.com>

Here you are.

--

Your Trusted source for all

your shipping needs.

Customer satisfaction is # 1

Alicia Watson

Office Admin

X5 Transport

403-850-2025 Office

Fax 587-471-1377


370, 5222-130th Ave SE

Suite #207 Calgary, AB T2Z 0G4

| | |
|---|---|
| **From:** | Rob Welling <rob.x5transport@gmail.com> |
| **Sent:** | Friday, April 8, 2016 12:59 PM |
| **To:** | Jacki Fullerton |
| **Subject:** | Re: Scanned Items |

I think your email is wonky today haha,, She has sent again k.
Cheers


Rob Welling
President
X5 Transport
403-850-2025 Office
Fax 587-471-1377
Your Trusted source for all
your shipping needs.
Customer satisfaction is # 1



On Fri, Apr 8, 2016 at 1:37 PM, Jacki Fullerton <jacki@bigskyidaho.com> wrote:

Thanks Rob –


I still haven't seen it (from either of you)...we have been having internet issues all day. It is not in my junk mail either.


**Jacki Fullerton**

Construction Manager

Big Sky Development, Inc.

P: 208.772.9646 F: 208.762.6376


**From:** Rob Welling [mailto:rob.x5transport@gmail.com]
**Sent:** Friday, April 8, 2016 11:52 AM
**To:** Jacki Fullerton <jacki@bigskyidaho.com>
**Subject:** Re: Scanned Items

Ill forward it to you k


Rob Welling

President

X5 Transport

403-850-2025 Office

Fax 587-471-1377

Your Trusted source for all

 your shipping needs.

Customer satisfaction is # 1




On Fri, Apr 8, 2016 at 12:49 PM, Jacki Fullerton <jacki@bigskyidaho.com> wrote:

Thanks...I haven't seen it yet hopefully she remembered not to put an "e" on the end of my name in the email☺ I will come in off the ledge now...


**Jacki Fullerton**

Construction Manager

Big Sky Development, Inc.

P: 208.772.9646 F: 208.762.6376


**From:** Rob Welling [mailto:rob.x5transport@gmail.com]
**Sent:** Friday, April 8, 2016 11:46 AM
**To:** Jacki Fullerton <jacki@bigskyidaho.com>
**Subject:** Fwd: Scanned Items

Rob Welling

President

X5 Transport

403-850-2025 Office

Fax 587-471-1377

Your Trusted source for all

your shipping needs.

Customer satisfaction is # 1



---------- Forwarded message ----------
From: **Monique Mattson** <monique@vantagept.com>
Date: Fri, Apr 8, 2016 at 11:37 AM
Subject: RE: Scanned Items
To: Rob Welling <rob.x5transport@gmail.com>

Hi Rob,


I just sent Jacki the billing for the below shipment and added you to the email.


Please keep me updated on the shipment picking up and the border crossing information : )


Monique Mattson

Vantage Point Services

22513 Marine View Dr S Ste 200

Des Moines, WA 98198

Tel 206 878 8884 / Fax 206 878 9001

**From:** Rob Welling [mailto:rob.x5transport@gmail.com]
**Sent:** Wednesday, April 6, 2016 4:15 PM
**To:** Monique Mattson
**Subject:** Re: Scanned Items

Awesome that's all we will need and I will have that tomorrow cheers

Rob Welling

President

X5 Transport

403-850-2025 Office

Fax 587-471-1377

Your Trusted source for all

your shipping needs.

Customer satisfaction is # 1



On Wed, Apr 6, 2016 at 5:04 PM, Monique Mattson <monique@vantagept.com> wrote:

Thank you very much for the below docs and please send me the BOL and crossing information once available.

Monique Mattson

Vantage Point Services

22513 Marine View Dr S Ste 200

Des Moines, WA 98198

Tel 206 878 8884 / Fax 206 878 9001

**From:** Rob Welling [mailto:rob.x5transport@gmail.com]
**Sent:** Wednesday, April 6, 2016 2:49 PM
**To:** monique@vantagept.com
**Subject:** Fwd: Scanned Items

Rob Welling

President

X5 Transport

403-850-2025 Office

Fax 587-471-1377

Your Trusted source for all

your shipping needs.

Customer satisfaction is # 1



---------- Forwarded message ----------
From: **Alicia Watson** <alicia.x5transport@gmail.com>
Date: Wed, Apr 6, 2016 at 3:33 PM
Subject: Scanned Items
To: Rob Welling <rob.x5transport@gmail.com>

Here you are.

--

Your Trusted source for all

 your shipping needs.

Customer satisfaction is # 1

Alicia Watson

Office Admin

X5 Transport

403-850-2025 Office

Fax 587-471-1377


370, 5222-130th Ave SE

Suite #207 Calgary, AB T2Z 0G4

| | |
|---|---|
| **From:** | Rob Welling <rob.x5transport@gmail.com> |
| **Sent:** | Friday, April 8, 2016 1:07 PM |
| **To:** | Jacki Fullerton |
| **Subject:** | Re: Scanned Items |

Lol oppps  hahahaha

Rob Welling
President
X5 Transport
403-850-2025 Office
Fax 587-471-1377
Your Trusted source for all
your shipping needs.
Customer satisfaction is # 1



On Fri, Apr 8, 2016 at 2:02 PM, Jacki Fullerton <jacki@bigskyidaho.com> wrote:

She didn't spell Idaho out...that was the problem.

Thanks!

## Jacki Fullerton

Construction Manager

Big Sky Development, Inc.

P: 208.772.9646 F: 208.762.6376

**From:** Rob Welling [mailto:rob.x5transport@gmail.com]
**Sent:** Friday, April 8, 2016 1:00 PM
**To:** Jacki Fullerton <jacki@bigskyidaho.com>
**Subject:** Fwd: Scanned Items

Rob Welling

President

X5 Transport

403-850-2025 Office

Fax 587-471-1377

Your Trusted source for all

 your shipping needs.

Customer satisfaction is # 1



---------- Forwarded message ----------
From: **Monique Mattson** <monique@vantagept.com>
Date: Fri, Apr 8, 2016 at 11:36 AM
Subject: RE: Scanned Items
To: JACKI@bigskyid.com
Cc: Rob Welling <rob.x5transport@gmail.com>

Good Afternoon Jacki,


I hope all is well. I have been talking to Rob at X5 Transport regarding your shipment crossing the border. I will be the customs broker clearing the shipment with customs at the border and I have attached a copy of my billing invoice for the customs clearance, customs bond and local import customs tax.


I have attached a copy of my credit card form also and please note that we do have a 3% credit card processes fee for a visa/master card.


Please let me know if you need any more information after you look over this invoice.

Monique Mattson

Vantage Point Services

22513 Marine View Dr S Ste 200

Des Moines, WA 98198

Tel 206 878 8884 / Fax 206 878 9001

**From:** Rob Welling [mailto:rob.x5transport@gmail.com]
**Sent:** Wednesday, April 6, 2016 4:15 PM
**To:** Monique Mattson
**Subject:** Re: Scanned Items

Awesome that's all we will need and I will have that tomorrow cheers

Rob Welling

President

X5 Transport

403-850-2025 Office

Fax 587-471-1377

Your Trusted source for all

your shipping needs.

Customer satisfaction is # 1



On Wed, Apr 6, 2016 at 5:04 PM, Monique Mattson <monique@vantagept.com> wrote:

Thank you very much for the below docs and please send me the BOL and crossing information once available.

Monique Mattson

Vantage Point Services

22513 Marine View Dr S Ste 200

Des Moines, WA 98198

Tel 206 878 8884 / Fax 206 878 9001

**From:** Rob Welling [mailto:rob.x5transport@gmail.com]
**Sent:** Wednesday, April 6, 2016 2:49 PM
**To:** monique@vantagept.com
**Subject:** Fwd: Scanned Items

Rob Welling

President

X5 Transport

403-850-2025 Office

Fax 587-471-1377

Your Trusted source for all

your shipping needs.

Customer satisfaction is # 1



---------- Forwarded message ----------
From: **Alicia Watson** <alicia.x5transport@gmail.com>
Date: Wed, Apr 6, 2016 at 3:33 PM
Subject: Scanned Items
To: Rob Welling <rob.x5transport@gmail.com>

Here you are.

--

Your Trusted source for all

 your shipping needs.

Customer satisfaction is # 1

Alicia Watson

Office Admin

X5 Transport

403-850-2025 Office

Fax 587-471-1377


370, 5222-130th Ave SE

Suite #207 Calgary, AB T2Z 0G4

| | |
|---|---|
| **From:** | Monique Mattson <monique@vantagept.com> |
| **Sent:** | Friday, April 8, 2016 1:19 PM |
| **To:** | Jacki Fullerton |
| **Cc:** | 'Rob Welling' |
| **Subject:** | RE: Scanned Items |
| **Attachments:** | billing.pdf; Credit Card Form.pdf |

Good Afternoon Jacki,

I hope all is well. I have been talking to Rob at X5 Transport regarding your shipment crossing the border. I will be the customs broker clearing the shipment with customs at the border and I have attached a copy of my billing invoice for the customs clearance, customs bond and local import customs tax.

I have attached a copy of my credit card form also and please note that we do have a 3% credit card processes fee for a visa/master card.

Please let me know if you need any more information after you look over this invoice.

Monique Mattson
Vantage Point Services
22513 Marine View Dr S Ste 200
Des Moines, WA 98198
Tel 206 878 8884 / Fax 206 878 9001

**From:** Rob Welling [mailto:rob.x5transport@gmail.com]
**Sent:** Wednesday, April 6, 2016 4:15 PM
**To:** Monique Mattson
**Subject:** Re: Scanned Items

Awesome that's all we will need and I will have that tomorrow cheers

Rob Welling
President
X5 Transport
403-850-2025 Office
Fax 587-471-1377
Your Trusted source for all
your shipping needs.
Customer satisfaction is # 1



On Wed, Apr 6, 2016 at 5:04 PM, Monique Mattson <monique@vantagept.com> wrote:

Thank you very much for the below docs and please send me the BOL and crossing information once available.

Monique Mattson

**Vantage Point Services**

22513 Marine View Dr S Ste 200

Des Moines, WA 98198

Tel 206 878 8884 / Fax 206 878 9001

**From:** Rob Welling [mailto:rob.x5transport@gmail.com]
**Sent:** Wednesday, April 6, 2016 2:49 PM
**To:** monique@vantagept.com
**Subject:** Fwd: Scanned Items

Rob Welling

President

X5 Transport

403-850-2025 Office

Fax 587-471-1377

Your Trusted source for all

your shipping needs.

Customer satisfaction is # 1



2

Here you are.

--

Your Trusted source for all

 your shipping needs.

Customer satisfaction is # 1

Alicia Watson

Office Admin

X5 Transport

403-850-2025 Office

Fax 587-471-1377

370, 5222-130th Ave SE

Suite #207 Calgary, AB T2Z 0G4

| | |
|---|---|
| **From:** | Monique Mattson <monique@vantagept.com> |
| **Sent:** | Friday, April 8, 2016 1:57 PM |
| **To:** | Jacki Fullerton |
| **Subject:** | RE: Big Sky Dump Truck |

If you only planning to do this 1 shipment you can show 30days so May 8.

Monique Mattson
Vantage Point Services
22513 Marine View Dr S Ste 200
Des Moines, WA 98198
Tel 206 878 8884 / Fax 206 878 9001

**From:** Jacki Fullerton [mailto:jacki@bigskyidaho.com]
**Sent:** Friday, April 8, 2016 1:47 PM
**To:** Monique Mattson
**Subject:** RE: Big Sky Dump Truck

What date should I put on the power of attorney form for it to be effective through?

**Jacki Fullerton**

Construction Manager
Big Sky Development, Inc.
P: 208.772.9646 F: 208.762.6376

**From:** Monique Mattson [mailto:monique@vantagept.com]
**Sent:** Friday, April 8, 2016 1:37 PM
**To:** Jacki Fullerton <jacki@bigskyidaho.com>
**Subject:** RE: Big Sky Dump Truck

Hi Jacki,

Thank you for your quick reply : ) Yes I do need the power of attorney and I have attached a copy for you to complete, sign and add your tax ID # at the top right hand corner.

You can pay either by check or credit card. We do have a credit card fee of 3% so if you wanted to avoid that you could send me a check copy.

I have attached the credit card form if you need it.

I look forward to hearing from you and thank you!

Monique Mattson
Vantage Point Services
22513 Marine View Dr S Ste 200

Des Moines, WA 98198
Tel 206 878 8884 / Fax 206 878 9001

---

**From:** Jacki Fullerton [mailto:jacki@bigskyidaho.com]
**Sent:** Friday, April 8, 2016 1:04 PM
**To:** monique@vantagept.com
**Subject:** Big Sky Dump Truck

Hi Monique

How would you like me to pay this invoice? Also, Rob mentioned you needed a power of attorney? Do you still need that? I am leaving in an hour for the day. Please let me know ASAP.

Thanks.



**Jacki Fullerton** Construction Manager
**Big Sky Corp.**
P: 208.772.9646 C: 208.659.9532
10063 N Navion Drive Hayden, ID 83835
⌂ WEBSITE ✉ EMAIL ⬇ VCARD

free from company·  com

---------- Forwarded message ----------
From: **Monique Mattson** <monique@vantagept.com>
Date: Fri, Apr 8, 2016 at 11:36 AM
Subject: RE: Scanned Items
To: JACKI@bigskyid.com
Cc: Rob Welling <rob.x5transport@gmail.com>

Good Afternoon Jacki,


I hope all is well. I have been talking to Rob at X5 Transport regarding your shipment crossing the border. I will be the customs broker clearing the shipment with customs at the border and I have attached a copy of my billing invoice for the customs clearance, customs bond and local import customs tax.


I have attached a copy of my credit card form also and please note that we do have a 3% credit card processes fee for a visa/master card.

2

Please let me know if you need any more information after you look over this invoice.


Monique Mattson

Vantage Point Services

22513 Marine View Dr S Ste 200

Des Moines, WA 98198

Tel <u>206 878 8884</u> / Fax <u>206 878 9001</u>

Awesome that's all we will need and I will have that tomorrow cheers


Rob Welling

President

X5 Transport

<u>403-850-2025</u> Office

Fax <u>587-471-1377</u>

Your Trusted source for all

your shipping needs.

Customer satisfaction is # 1



3

On Wed, Apr 6, 2016 at 5:04 PM, Monique Mattson <monique@vantagept.com> wrote:

Thank you very much for the below docs and please send me the BOL and crossing information once available.

Monique Mattson

Vantage Point Services

22513 Marine View Dr S Ste 200

Des Moines, WA 98198

Tel 206 878 8884 / Fax 206 878 9001

**From:** Rob Welling [mailto:rob.x5transport@gmail.com]
**Sent:** Wednesday, April 6, 2016 2:49 PM
**To:** monique@vantagept.com
**Subject:** Fwd: Scanned Items

Rob Welling

President

X5 Transport

403-850-2025 Office

Fax 587-471-1377

Your Trusted source for all

your shipping needs.

Customer satisfaction is # 1

[×]

Here you are.

--

Your Trusted source for all

your shipping needs.

Customer satisfaction is # 1

Alicia Watson

Office Admin

X5 Transport

403-850-2025 Office

Fax 587-471-1377

370, 5222-130th Ave SE

Suite #207 Calgary, AB T2Z 0G4

| | |
|---|---|
| **From:** | Jacki Fullerton |
| **Sent:** | Friday, April 8, 2016 2:06 PM |
| **To:** | Jacki Fullerton |
| **Subject:** | RE: Big Sky Dump Truck |
| **Attachments:** | Document (5).pdf |

Here is a copy of the check. I will send it out in the mail.

Thanks!

**Jacki Fullerton**
Construction Manager
Big Sky Development, Inc.
P: 208.772.9646 F: 208.762.6376

**From:** Jacki Fullerton
**Sent:** Friday, April 8, 2016 2:00 PM
**To:** 'Monique Mattson' <monique@vantagept.com>
**Cc:** Genie Riegert <genie@bigskyidaho.com>
**Subject:** RE: Big Sky Dump Truck

Hi Monique –

Here is the power of attorney. Genie will send you a scan of the check as soon as it is ready.

Thanks!

**Jacki Fullerton**
Construction Manager
Big Sky Development, Inc.
P: 208.772.9646 F: 208.762.6376

**From:** Monique Mattson [mailto:monique@vantagept.com]
**Sent:** Friday, April 8, 2016 1:37 PM
**To:** Jacki Fullerton <jacki@bigskyidaho.com>
**Subject:** RE: Big Sky Dump Truck

Hi Jacki,

Thank you for your quick reply : ) Yes I do need the power of attorney and I have attached a copy for you to complete, sign and add your tax ID # at the top right hand corner.

You can pay either by check or credit card. We do have a credit card fee of 3% so if you wanted to avoid that you could send me a check copy.

I have attached the credit card form if you need it.

I look forward to hearing from you and thank you!

Monique Mattson
Vantage Point Services
22513 Marine View Dr S Ste 200
Des Moines, WA 98198
Tel 206 878 8884 / Fax 206 878 9001

---

**From:** Jacki Fullerton [mailto:jacki@bigskyidaho.com]
**Sent:** Friday, April 8, 2016 1:04 PM
**To:** monique@vantagept.com
**Subject:** Big Sky Dump Truck

Hi Monique

How would you like me to pay this invoice? Also, Rob mentioned you needed a power of attorney? Do you still need that? I am leaving in an hour for the day. Please let me know ASAP.

Thanks.



**Jacki Fullerton** Construction Manager
**Big Sky Corp.**
P: 208.772.9646 C: 208.659.9532
10063 N Navion Drive Hayden, ID 83835
🏠 WEBSITE  ✉ EMAIL  ⬇ VCARD

free from company·  ·.com

---------- Forwarded message ----------
From: **Monique Mattson** <monique@vantagept.com>
Date: Fri, Apr 8, 2016 at 11:36 AM
Subject: RE: Scanned Items
To: JACKI@bigskyid.com
Cc: Rob Welling <rob.x5transport@gmail.com>

Good Afternoon Jacki,

I hope all is well. I have been talking to Rob at X5 Transport regarding your shipment crossing the border. I will be the customs broker clearing the shipment with customs at the border and I have attached a copy of my billing invoice for the customs clearance, customs bond and local import customs tax.

I have attached a copy of my credit card form also and please note that we do have a 3% credit card processes fee for a visa/master card.

Please let me know if you need any more information after you look over this invoice.

Monique Mattson

Vantage Point Services

22513 Marine View Dr S Ste 200

Des Moines, WA 98198

Tel 206 878 8884 / Fax 206 878 9001

**From:** Rob Welling [mailto:rob.x5transport@gmail.com]
**Sent:** Wednesday, April 6, 2016 4:15 PM
**To:** Monique Mattson
**Subject:** Re: Scanned Items

Awesome that's all we will need and I will have that tomorrow cheers

Rob Welling

President

X5 Transport

403-850-2025 Office

Fax 587-471-1377

Your Trusted source for all

your shipping needs.

Customer satisfaction is # 1



On Wed, Apr 6, 2016 at 5:04 PM, Monique Mattson <monique@vantagept.com> wrote:

Thank you very much for the below docs and please send me the BOL and crossing information once available.

Monique Mattson

Vantage Point Services

22513 Marine View Dr S Ste 200

Des Moines, WA 98198

Tel 206 878 8884 / Fax 206 878 9001

**From:** Rob Welling [mailto:rob.x5transport@gmail.com]
**Sent:** Wednesday, April 6, 2016 2:49 PM
**To:** monique@vantagept.com
**Subject:** Fwd: Scanned Items

Rob Welling

4

President

X5 Transport

**403-850-2025** Office

Fax **587-471-1377**

Your Trusted source for all

 your shipping needs.

Customer satisfaction is # 1



---------- Forwarded message ----------
From: **Alicia Watson** <alicia.x5transport@gmail.com>
Date: Wed, Apr 6, 2016 at 3:33 PM
Subject: Scanned Items
To: Rob Welling <rob.x5transport@gmail.com>

Here you are.

--

Your Trusted source for all

 your shipping needs.

Customer satisfaction is # 1

Alicia Watson

Office Admin

X5 Transport

<u>403-850-2025</u> Office

Fax <u>587-471-1377</u>

370, 5222-130th Ave SE

Suite #207 Calgary, AB T2Z 0G4

| | |
|---|---|
| **From:** | Monique Mattson <monique@vantagept.com> |
| **Sent:** | Friday, April 8, 2016 2:18 PM |
| **To:** | Jacki Fullerton |
| **Cc:** | Genie Riegert |
| **Subject:** | RE: Big Sky Dump Truck |

Thank you for both your emails : )

I will take care of the customs clearance and will send you the backup once completed.

Have a nice weekend.


Monique Mattson
Vantage Point Services
22513 Marine View Dr S Ste 200
Des Moines, WA 98198
Tel 206 878 8884 / Fax 206 878 9001


**From:** Jacki Fullerton [mailto:jacki@bigskyidaho.com]
**Sent:** Friday, April 8, 2016 2:03 PM
**To:** Monique Mattson
**Cc:** Genie Riegert
**Subject:** RE: Big Sky Dump Truck

Hi Monique –

Here is the power of attorney. Genie will send you a scan of the check as soon as it is ready.

Thanks!

**Jacki Fullerton**
Construction Manager
Big Sky Development, Inc.
P: 208.772.9646 F: 208.762.6376

**From:** Monique Mattson [mailto:monique@vantagept.com]
**Sent:** Friday, April 8, 2016 1:37 PM
**To:** Jacki Fullerton <jacki@bigskyidaho.com>
**Subject:** RE: Big Sky Dump Truck

Hi Jacki,

Thank you for your quick reply : ) Yes I do need the power of attorney and I have attached a copy for you to complete, sign and add your tax ID # at the top right hand corner.

1

You can pay either by check or credit card. We do have a credit card fee of 3% so if you wanted to avoid that you could send me a check copy.

I have attached the credit card form if you need it.

I look forward to hearing from you and thank you!

Monique Mattson
Vantage Point Services
22513 Marine View Dr S Ste 200
Des Moines, WA 98198
Tel 206 878 8884 / Fax 206 878 9001

---

**From:** Jacki Fullerton [mailto:jackl@bigskyidaho.com]
**Sent:** Friday, April 8, 2016 1:04 PM
**To:** monique@vantagept.com
**Subject:** Big Sky Dump Truck

Hi Monique

How would you like me to pay this invoice? Also, Rob mentioned you needed a power of attorney? Do you still need that? I am leaving in an hour for the day. Please let me know ASAP.

Thanks.



**Jacki Fullerton** Construction Manager
**Big Sky Corp.**
P: 208.772.9646 C: 208.659.9532
10063 N Navion Drive Hayden, ID 83835
WEBSITE    EMAIL    VCARD

free from company s⋅ ⋅ . com

---------- Forwarded message ----------
From: Monique Mattson <monique@vantagept.com>
Date: Fri, Apr 8, 2016 at 11:36 AM
Subject: RE: Scanned Items
To: JACKI@bigskyid.com
Cc: Rob Welling <rob.x5transport@gmail.com>

Good Afternoon Jacki,

2

I hope all is well. I have been talking to Rob at X5 Transport regarding your shipment crossing the border. I will be the customs broker clearing the shipment with customs at the border and I have attached a copy of my billing invoice for the customs clearance, customs bond and local import customs tax.

I have attached a copy of my credit card form also and please note that we do have a 3% credit card processes fee for a visa/master card.

Please let me know if you need any more information after you look over this invoice.

Monique Mattson

Vantage Point Services

22513 Marine View Dr S Ste 200

Des Moines, WA 98198

Tel 206 878 8884 / Fax 206 878 9001

**From:** Rob Welling [mailto:rob.x5transport@gmail.com]
**Sent:** Wednesday, April 6, 2016 4:15 PM
**To:** Monique Mattson
**Subject:** Re: Scanned Items

Awesome that's all we will need and I will have that tomorrow cheers

Rob Welling

President

X5 Transport

403-850-2025 Office

Fax 587-471-1377

Your Trusted source for all

 your shipping needs.

Customer satisfaction is # 1

☒

On Wed, Apr 6, 2016 at 5:04 PM, Monique Mattson <monique@vantagept.com> wrote:

Thank you very much for the below docs and please send me the BOL and crossing information once available.

Monique Mattson

Vantage Point Services

22513 Marine View Dr S Ste 200

Des Moines, WA 98198

Tel 206 878 8884 / Fax 206 878 9001

**From:** Rob Welling [mailto:rob.x5transport@gmail.com]
**Sent:** Wednesday, April 6, 2016 2:49 PM
**To:** monique@vantagept.com
**Subject:** Fwd: Scanned Items

Rob Welling

President

X5 Transport

<u>403-850-2025</u> Office

Fax <u>587-471-1377</u>

Your Trusted source for all

 your shipping needs.

Customer satisfaction is # 1

[x]

---------- Forwarded message ----------
From: **Alicia Watson** <<u>alicia.x5transport@gmail.com</u>>
Date: Wed, Apr 6, 2016 at 3:33 PM
Subject: Scanned Items
To: Rob Welling <<u>rob.x5transport@gmail.com</u>>

Here you are.

--

Your Trusted source for all

 your shipping needs.

Customer satisfaction is # 1

Alicia Watson

Office Admin

X5 Transport

<u>403-850-2025</u> Office

Fax <u>587-471-1377</u>

370, 5222-130th Ave SE

Suite #207 Calgary, AB T2Z 0G4

**Jacki Fullerton**

| | |
|---|---|
| **From:** | rob.x5transport <rob.x5transport@gmail.com> |
| **Sent:** | Friday, April 8, 2016 4:50 PM |
| **To:** | Jacki Fullerton |
| **Subject:** | Re: Big Sky |

Will do Jackie Have yourself a awesome weekend.

Sent from my Samsung Galaxy smartphone.
-------- Original message --------
From: Jacki Fullerton <jacki@bigskyidaho.com>
Date: 2016-04-08 5:42 PM (GMT-07:00)
To: Rob Welling <rob.x5transport@gmail.com>
Subject: Big Sky

I took care of everything with Monique. If you would please email or text me when the dump truck is picked up and when it clears customs and is on the way I would appreciate it. Doesn't matter day or time...my cell # is 208-659-9532.

Thanks
Jacki

Sent from my Verizon Wireless 4G LTE smartphone

1

| | |
|---|---|
| **From:** | Rob Welling <rob.x5transport@gmail.com> |
| **Sent:** | Monday, April 11, 2016 9:20 AM |
| **To:** | Jacki Fullerton |
| **Subject:** | Re: Big Sky |

Hahahaha that's hilarious Kinda,, lol.. We are in the yard right now loading the truck as we speak. He should be out there Thursday or first thing Friday Morning. If I give you our banking info. Can you do a wire transfer for payment please Jackie. Ive tried to keep the cost down for you, Where would you feel comfortable at. I know we were around 4600 before. Can you do 4800 usd?Just a couple extra to get the fast truck over there to help you out?


Rob Welling
President
X5 Transport
403-850-2025 Office
Fax 587-471-1377
Your Trusted source for all
your shipping needs.
Customer satisfaction is # 1



On Mon, Apr 11, 2016 at 9:52 AM, Jacki Fullerton <jacki@bigskyidaho.com> wrote:
  Hi Rob

  Just checking to see what you think the ETA is on the dump truck. The boss is super excited now so he is
  asking me all the time! Unfortunately after all the drama trying to get the truck into the US...he thinks it will be
  funny to name it after me...haha so he is wondering how soon "Jacki" will be here.



  Sent from my Verizon Wireless 4G LTE smartphone



  -------- Original message --------
  From: "rob.x5transport" <rob.x5transport@gmail.com>
  Date: 4/8/2016 4:49 PM (GMT-08:00)
  To: Jacki Fullerton <jacki@bigskyidaho.com>
  Subject: Re: Big Sky

  Will do Jackie Have yourself a awesome weekend.



  Sent from my Samsung Galaxy smartphone.
  -------- Original message --------
  From: Jacki Fullerton <jacki@bigskyidaho.com>

Date: 2016-04-08 5:42 PM (GMT-07:00)
To: Rob Welling <rob.x5transport@gmail.com>
Subject: Big Sky

I took care of everything with Monique. If you would please email or text me when the dump truck is picked up and when it clears customs and is on the way I would appreciate it. Doesn't matter day or time...my cell # is 208-659-9532.

Thanks
Jacki


Sent from my Verizon Wireless 4G LTE smartphone

| | |
|---|---|
| **From:** | Rob Welling <rob.x5transport@gmail.com> |
| **Sent:** | Monday, April 11, 2016 10:25 AM |
| **To:** | Jacki Fullerton |
| **Subject:** | Re: Big Sky |

Yes totally fine Jacki, You can do the remainder once delivered. Half is super fine with us. Banking info is
BANK IS CIBC
TRANSIT 06909
BANK ID 010
ACCT# ███████17
SWIFT IS CIBCCATT
ADSDRESS IS 130TH AVE CALGARY
OUR ADDRESS IS 5222 370 130 THA VAE CALGARY T2Z 0G4.  X5 TRANSPORT INC


Rob Welling
President
X5 Transport
403-850-2025 Office
Fax 587-471-1377
Your Trusted source for all
 your shipping needs.
Customer satisfaction is # 1



On Mon, Apr 11, 2016 at 11:15 AM, Jacki Fullerton <jacki@bigskyidaho.com> wrote:

> $4800 is fine. Can you send me an invoice and the wire transfer info? He was wondering if it would be acceptable to do
> ½ now and ½ when he has crossed the border?


> Thanks!


> **Jacki Fullerton**

> Construction Manager

> Big Sky Development, Inc.

> P: 208.772.9646 F: 208.762.6376

**To:** Jacki Fullerton <jacki@bigskyidaho.com>
**Subject:** Re: Big Sky

Hahahaha that's hilarious Kinda,, lol.. We are in the yard right now loading the truck as we speak. He should be out there Thursday or first thing Friday Morning. If I give you our banking info. Can you do a wire transfer for payment please Jackie. Ive tried to keep the cost down for you, Where would you feel comfortable at. I know we were around 4600 before. Can you do 4800 usd?Just a couple extra to get the fast truck over there to help you out?


Rob Welling

President

X5 Transport

403-850-2025 Office

Fax 587-471-1377

Your Trusted source for all

 your shipping needs.

Customer satisfaction is # 1




On Mon, Apr 11, 2016 at 9:52 AM, Jacki Fullerton <jacki@bigskyidaho.com> wrote:

Hi Rob


Just checking to see what you think the ETA is on the dump truck. The boss is super excited now so he is asking me all the time! Unfortunately after all the drama trying to get the truck into the US...he thinks it will be funny to name it after me...haha so he is wondering how soon "Jacki" will be here.

Sent from my Verizon Wireless 4G LTE smartphone

-------- Original message --------

From: "rob.x5transport" <rob.x5transport@gmail.com>

Date: 4/8/2016 4:49 PM (GMT-08:00)

To: Jacki Fullerton <jacki@bigskyidaho.com>

Subject: Re: Big Sky

Will do Jackie Have yourself a awesome weekend.

Sent from my Samsung Galaxy smartphone.

-------- Original message --------

From: Jacki Fullerton <jacki@bigskyidaho.com>

Date: 2016-04-08 5:42 PM (GMT-07:00)

To: Rob Welling <rob.x5transport@gmail.com>

Subject: Big Sky

I took care of everything with Monique. If you would please email or text me when the dump truck is picked up and when it clears customs and is on the way I would appreciate it. Doesn't matter day or time...my cell # is 208-659-9532.

Thanks

Jacki

Sent from my Verizon Wireless 4G LTE smartphone

| | |
|---|---|
| **From:** | rob.x5transport <rob.x5transport@gmail.com> |
| **Sent:** | Tuesday, April 12, 2016 2:30 PM |
| **To:** | Jacki Fullerton |
| **Subject:** | Re: Checking In |

HI Jackie your dealing with the best haha.  No snags yet so far so good haha.  I'll check this evening if the wire went ok.  On shedule no delays.  Cheers


Sent from my Samsung Galaxy smartphone.
-------- Original message --------
From: Jacki Fullerton <jacki@bigskyidaho.com>
Date: 2016-04-12 3:15 PM (GMT-07:00)
To: Rob Welling <rob.x5transport@gmail.com>
Subject: Checking In


Hi Rob –


I am guessing the truck has passed through customs and is on the way. I was just checking in to make sure there were no snafu's and we are on schedule. Also, I wanted to make sure you got the wire transfer.


Thanks.




Jacki Fullerton Construction Manager
Big Sky Corp.
P: 208.772.9646 C: 208.659.9532
10063 N Navion Drive Hayden, ID 83835
WEBSITE    EMAIL ,    VCARD·

free from company · . com

1

| From: | Rob Welling <rob.x5transport@gmail.com> |
|---|---|
| Sent: | Thursday, April 14, 2016 8:00 AM |
| To: | Jacki Fullerton |
| Subject: | hello |

Hello Jacki, we still havn't had a payment go through.. Can you advise?

Rob Welling
President
X5 Transport
403-850-2025 Office
Fax 587-471-1377
Your Trusted source for all
your shipping needs.
Customer satisfaction is # 1



| | |
|---|---|
| **From:** | Rob Welling <rob.x5transport@gmail.com> |
| **Sent:** | Thursday, April 14, 2016 8:06 AM |
| **To:** | Jacki Fullerton |
| **Subject:** | Re: hello |

Let me call the driver I know he had to stop aty border and he had to get the paperwork from broker which late yesterday afternoon they were working on still. Ill find out k
Thanks


Rob Welling
President
X5 Transport
403-850-2025 Office
Fax 587-471-1377
Your Trusted source for all
your shipping needs.
Customer satisfaction is # 1



On Thu, Apr 14, 2016 at 9:01 AM, Jacki Fullerton <jacki@bigskyidaho.com> wrote:

Our accounting gal is not in until 8:45 I will check with her and make sure she has done it. If she hasn't I will get her to do it immediately and send you confirmation.



Do you think the truck will be here today? Were you able to get the customs paperwork from the driver?


**Jacki Fullerton**

Construction Manager

Big Sky Development, Inc.

P: 208.772.9646 F: 208.762.6376



From: Rob Welling [mailto:rob.x5transport@gmail.com]
Sent: Thursday, April 14, 2016 8:00 AM
To: Jacki Fullerton <jacki@bigskyidaho.com>
Subject: hello

Hello Jacki, we still havn't had a payment go through.. Can you advise?

Rob Welling

President

X5 Transport

<u>403-850-2025</u> Office

Fax <u>587-471-1377</u>

Your Trusted source for all

 your shipping needs.

Customer satisfaction is # 1



| | |
|---|---|
| **From:** | Rob Welling <rob.x5transport@gmail.com> |
| **Sent:** | Thursday, April 14, 2016 9:09 AM |
| **To:** | Jacki Fullerton |
| **Subject:** | Re: hello |

Ok shes is going to check, Do you know what the ammount was she deposited?


Rob Welling
President
X5 Transport
403-850-2025 Office
Fax 587-471-1377
Your Trusted source for all
 your shipping needs.
Customer satisfaction is # 1



On Thu, Apr 14, 2016 at 10:00 AM, Jacki Fullerton <jacki@bigskyidaho.com> wrote:

> Hi Rob --
>
>
> The wire transfer was done on Monday afternoon and has been deducted from our account. You should have the 50% payment in your account.
>
>
> **Jacki Fullerton**
>
> Construction Manager
>
> Big Sky Development, Inc.
>
> P: 208.772.9646 F: 208.762.6376
>
>
> **From:** Rob Welling [mailto:rob.x5transport@gmail.com]
> **Sent:** Thursday, April 14, 2016 8:06 AM
> **To:** Jacki Fullerton <jacki@bigskyidaho.com>
> **Subject:** Re: hello

Let me call the driver I know he had to stop aty border and he had to get the paperwork from broker which late yesterday afternoon they were working on still. Ill find out k

Thanks


Rob Welling

President

X5 Transport

403-850-2025 Office

Fax 587-471-1377

Your Trusted source for all

 your shipping needs.

Customer satisfaction is # 1

☒


On Thu, Apr 14, 2016 at 9:01 AM, Jacki Fullerton <jacki@bigskyidaho.com> wrote:

Our accounting gal is not in until 8:45 I will check with her and make sure she has done it. If she hasn't I will get her to do it immediately and send you confirmation.


Do you think the truck will be here today? Were you able to get the customs paperwork from the driver?


**Jacki Fullerton**

Construction Manager

Big Sky Development, Inc.

P: 208.772.9646 F: 208.762.6376


**From:** Rob Welling [mailto:rob.x5transport@gmail.com]
**Sent:** Thursday, April 14, 2016 8:00 AM

**To:** Jacki Fullerton <jacki@bigskyidaho.com>
**Subject:** hello


Hello Jacki, we still havn't had a payment go through.. Can you advise?

Rob Welling

President

X5 Transport

403-850-2025 Office

Fax 587-471-1377

Your Trusted source for all

your shipping needs.

Customer satisfaction is # 1

| | |
|---|---|
| **From:** | rob.x5transport <rob.x5transport@gmail.com> |
| **Sent:** | Thursday, April 14, 2016 6:26 PM |
| **To:** | Jacki Fullerton |
| **Subject:** | Re: Big Sky Dump Truck |

HI there young lady. Seem like everything is great still on shedule. I'm pretty sure he's crossed into usa now and yes last I spoke to him around 1 he said he would make it most likely tomorrow ok. a have a nice night

Sent from my Samsung Galaxy smartphone.
-------- Original message --------
From: Jacki Fullerton <jacki@bigskyidaho.com>
Date: 2016-04-14 6:59 PM (GMT-07:00)
To: Rob Welling <rob.x5transport@gmail.com>
Subject: Big Sky Dump Truck

Hi Rob
Just checking on the dump truck. You were going to check with the driver for the customs paperwork and to make sure he is on schedule for delivery tomorrow.

Also, we're you able to confirm the wire transfer? I can send you the info from our bank if needed.

Thanks.

Sent from my Verizon, Samsung Galaxy smartphone

1

| | |
|---|---|
| **From:** | Rob Welling <rob.x5transport@gmail.com> |
| **Sent:** | Friday, April 15, 2016 7:10 AM |
| **To:** | Jacki Fullerton |
| **Subject:** | Re: Big Sky Dump Truck |

Hi Jacki just spoke to driver. Hes about 53 kms from your shop ok. Thanks


Rob Welling
President
X5 Transport
403-850-2025 Office
Fax 587-471-1377
Your Trusted source for all
your shipping needs.
Customer satisfaction is # 1



On Fri, Apr 15, 2016 at 7:18 AM, Jacki Fullerton <jacki@bigskyidaho.com> wrote:
Thanks Rob - if he crossed the border he shouldn't be too far away then😊. We are usually out of the office by 3:30 - 4 on Friday. Please let me know what the ETA is. Also, our accounting gal is off at 1 so hopefully he get here before then so I can have her wire you the rest of the $$.
Thanks!!


Sent from my Verizon, Samsung Galaxy smartphone


-------- Original message --------
From: "rob.x5transport" <rob.x5transport@gmail.com>
Date: 4/14/16 6:26 PM (GMT-08:00)
To: Jacki Fullerton <jacki@bigskyidaho.com>
Subject: Re: Big Sky Dump Truck

HI there young lady. Seem like everything is great still on shedule. I'm pretty sure he's crossed into usa now and yes last I spoke to him around 1 he said he would make it most likely tomorrow ok. a have a nice night


Sent from my Samsung Galaxy smartphone.
-------- Original message --------
From: Jacki Fullerton <jacki@bigskyidaho.com>
Date: 2016-04-14 6:59 PM (GMT-07:00)
To: Rob Welling <rob.x5transport@gmail.com>
Subject: Big Sky Dump Truck

1

Hi Rob
Just checking on the dump truck. You were going to check with the driver for the customs paperwork and to make sure he is on schedule for delivery tomorrow.

Also, we're you able to confirm the wire transfer? I can send you the info from our bank if needed.

Thanks.


Sent from my Verizon, Samsung Galaxy smartphone

| | |
|---|---|
| **From:** | Rob Welling <rob.x5transport@gmail.com> |
| **Sent:** | Friday, April 15, 2016 7:56 AM |
| **To:** | Jacki Fullerton |
| **Subject:** | Re: Big Sky Dump Truck |

Awesome Jacki. thats just great,, Hope you happy,, We made it hahhahaha I told you so...lol. I bet you dont here that much from a trucking company.


Rob Welling
President
X5 Transport
403-850-2025 Office
Fax 587-471-1377
Your Trusted source for all
 your shipping needs.
Customer satisfaction is # 1



On Fri, Apr 15, 2016 at 8:37 AM, Jacki Fullerton <jacki@bigskyidaho.com> wrote:

Thanks, he just called T minus 10 minutes.


**Jacki Fullerton**

Construction Manager

Big Sky Development, Inc.

P: 208.772.9646 F: 208.762.6376


**From:** Rob Welling [mailto:rob.x5transport@gmail.com]
**Sent:** Friday, April 15, 2016 7:10 AM


**To:** Jacki Fullerton <jacki@bigskyidaho.com>
**Subject:** Re: Big Sky Dump Truck


Hi Jacki just spoke to driver. Hes about 53 kms from your shop ok.  Thanks

1

Rob Welling

President

X5 Transport

403-850-2025 Office

Fax 587-471-1377

Your Trusted source for all

your shipping needs.

Customer satisfaction is # 1



On Fri, Apr 15, 2016 at 7:18 AM, Jacki Fullerton <jacki@bigskyidaho.com> wrote:

Thanks Rob - if he crossed the border he shouldn't be too far away then😄. We are usually out of the office by 3:30 - 4 on Friday. Please let me know what the ETA is. Also, our accounting gal is off at 1 so hopefully he get here before then so I can have her wire you the rest of the $$.

Thanks!!

Sent from my Verizon, Samsung Galaxy smartphone

-------- Original message --------

From: "rob.x5transport" <rob.x5transport@gmail.com>

Date: 4/14/16 6:26 PM (GMT-08:00)

To: Jacki Fullerton <jacki@bigskyidaho.com>

Subject: Re: Big Sky Dump Truck

HI there young lady.  Seem like everything is great still on shedule. I'm pretty sure he's crossed into usa now and yes last I spoke to him around 1 he said he would make it most likely tomorrow ok.  a have a nice night

Sent from my Samsung Galaxy smartphone.

-------- Original message --------

From: Jacki Fullerton <jacki@bigskyidaho.com>

Date: 2016-04-14 6:59 PM (GMT-07:00)

To: Rob Welling <rob.x5transport@gmail.com>

Subject: Big Sky Dump Truck

Hi Rob

Just checking on the dump truck. You were going to check with the driver for the customs paperwork and to make sure he is on schedule for delivery tomorrow.

Also, we're you able to confirm the wire transfer? I can send you the info from our bank if needed.

Thanks.

Sent from my Verizon, Samsung Galaxy smartphone

| | |
|---|---|
| **From:** | Rob Welling <rob.x5transport@gmail.com> |
| **Sent:** | Friday, April 15, 2016 8:07 AM |
| **To:** | Jacki Fullerton |
| **Subject:** | Re: Big Sky Dump Truck |

Awww thank you, That's so nice. Glad we were able to do it right for you and get your new machine there. Please keep us in mind and call when you do get a new one again, We would love to run it for you guys again. Ritchie Bros in Edmonton is having the worlds biggest auction ever to date. Lots of toys. For sale hehe Cheers and thanks

Rob Welling
President
X5 Transport
403-850-2025 Office
Fax 587-471-1377
Your Trusted source for all
 your shipping needs.
Customer satisfaction is # 1



On Fri, Apr 15, 2016 at 8:57 AM, Jacki Fullerton <jacki@bigskyidaho.com> wrote:

I am so excited. I will have her transfer the funds as soon as she gets in this am. I even told him he could buy more equipment in Canada!

Thank you so much! If you ever need a letter of recommendation or anything let me know!

**Jacki Fullerton**

Construction Manager

Big Sky Development, Inc.

P: 208.772.9646 F: 208.762.6376

From: Rob Welling [mailto:rob.x5transport@gmail.com]
Sent: Friday, April 15, 2016 7:56 AM

**To:** Jacki Fullerton <jacki@bigskyidaho.com>
**Subject:** Re: Big Sky Dump Truck


Awesome Jacki. thats just great,, Hope you happy,, We made it hahhahaha I told you so...lol. I bet you dont here that much from a trucking company.



Rob Welling

President

X5 Transport

403-850-2025 Office

Fax 587-471-1377

Your Trusted source for all

 your shipping needs.

Customer satisfaction is # 1




On Fri, Apr 15, 2016 at 8:37 AM, Jacki Fullerton <jacki@bigskyidaho.com> wrote:

Thanks, he just called T minus 10 minutes.


**Jacki Fullerton**

Construction Manager

Big Sky Development, Inc.

P: 208.772.9646 F: 208.762.6376


**From:** Rob Welling [mailto:rob.x5transport@gmail.com]
**Sent:** Friday, April 15, 2016 7:10 AM

2

**To:** Jacki Fullerton <jacki@bigskyidaho.com>
**Subject:** Re: Big Sky Dump Truck

Hi Jacki just spoke to driver. Hes about 53 kms from your shop ok. Thanks

Rob Welling

President

X5 Transport

403-850-2025 Office

Fax 587-471-1377

Your Trusted source for all

your shipping needs.

Customer satisfaction is # 1

☒

On Fri, Apr 15, 2016 at 7:18 AM, Jacki Fullerton <jacki@bigskyidaho.com> wrote:

Thanks Rob - if he crossed the border he shouldn't be too far away then😀. We are usually out of the office by 3:30 - 4 on Friday. Please let me know what the ETA is. Also, our accounting gal is off at 1 so hopefully he get here before then so I can have her wire you the rest of the $$.

Thanks!!

Sent from my Verizon, Samsung Galaxy smartphone

-------- Original message --------

From: "rob.x5transport" <rob.x5transport@gmail.com>

Date: 4/14/16 6:26 PM (GMT-08:00)

To: Jacki Fullerton <jacki@bigskyidaho.com>

Subject: Re: Big Sky Dump Truck


HI there young lady.  Seem like everything is great still on shedule. I'm pretty sure he's crossed into usa now and yes last I spoke to him around 1 he said he would make it most likely tomorrow ok.  a have a nice night




Sent from my Samsung Galaxy smartphone.

-------- Original message --------

From: Jacki Fullerton <jacki@bigskyidaho.com>

Date: 2016-04-14 6:59 PM (GMT-07:00)

To: Rob Welling <rob.x5transport@gmail.com>

Subject: Big Sky Dump Truck


Hi Rob

Just checking on the dump truck. You were going to check with the driver for the customs paperwork and to make sure he is on schedule for delivery tomorrow.


Also, we're you able to confirm the wire transfer? I can send you the info from our bank if needed.


Thanks.

Sent from my Verizon, Samsung Galaxy smartphone

| | |
|---|---|
| **From:** | Rob Welling <rob.x5transport@gmail.com> |
| **Sent:** | Friday, April 15, 2016 2:11 PM |
| **To:** | Jacki Fullerton |
| **Subject:** | Payment |

| | |
|---|---|
| **Follow Up Flag:** | FollowUp |
| **Due By:** | Friday, April 15, 2016 3:48 PM |
| **Flag Status:** | Completed |

Dis she manage to send the final Jacki???  Cheers

Rob Welling
President
X5 Transport
403-850-2025 Office
Fax 587-471-1377
Your Trusted source for all
your shipping needs.
Customer satisfaction is # 1

| | |
|---|---|
| **From:** | Rob Welling <rob.x5transport@gmail.com> |
| **Sent:** | Friday, April 15, 2016 2:36 PM |
| **To:** | Jacki Fullerton |
| **Subject:** | Re: Payment |

Ohhhh GREAt tHANKS jACKI....

Rob Welling
President
X5 Transport
403-850-2025 Office
Fax 587-471-1377
Your Trusted source for all
your shipping needs.
Customer satisfaction is # 1



On Fri, Apr 15, 2016 at 3:13 PM, Jacki Fullerton <jacki@bigskyidaho.com> wrote:

The bank is sending the wire today. So yes, and Thank you!!

## Jacki Fullerton

Construction Manager

Big Sky Development, Inc.

P: 208.772.9646 F: 208.762.6376

**From:** Rob Welling [mailto:rob.x5transport@gmail.com]
**Sent:** Friday, April 15, 2016 2:11 PM
**To:** Jacki Fullerton <jacki@bigskyidaho.com>
**Subject:** Payment

Dis she manage to send the final Jacki??? Cheers

Rob Welling

President

X5 Transport

<u>403-850-2025</u> Office

Fax <u>587-471-1377</u>

Your Trusted source for all

 your shipping needs.

Customer satisfaction is # 1



| | |
|---|---|
| **From:** | Rob Welling <rob.x5transport@gmail.com> |
| **Sent:** | Monday, April 25, 2016 4:33 PM |
| **To:** | Jacki Fullerton |
| **Subject:** | Re: Excavator |

You'll have no issue purchasing up there, they are all oil n gas machines and the economy is dead here and they have been meticulously maintained. , Made in north America is the best but we can get anything to you.Any machine any size big or small we got your back ok.  Good Luck im heading to Edmonton tomorrow and can check something out if you want...


Rob Welling
President
X5 Transport
403-850-2025 Office
Fax 587-471-1377
Your Trusted source for all
your shipping needs.
Customer satisfaction is # 1



On Mon, Apr 25, 2016 at 4:33 PM, Jacki Fullerton <jacki@bigskyidaho.com> wrote:

Hi Rob –


So since you were so awesome in getting the dump truck to us he is now searching the Edmonton Auction. Can you let me know if you know of any reason or issues we may have if we purchase an Excavator in Canada? Do we need to make sure it was American made? Thoughts?


Thanks!!


**Jacki Fullerton** Construction Manager
**Big Sky Corp.**
P: 208.772.9646 C: 208.659.9532
10063 N Navion Drive Hayden, ID 83835
⌂ WEBSITE   ✉ EMAIL   ⬇ VCARD



free from company · com

| | |
|---|---|
| **From:** | rob.x5transport <rob.x5transport@gmail.com> |
| **Sent:** | Friday, April 29, 2016 5:52 PM |
| **To:** | Jacki Fullerton |
| **Subject:** | Re: Big Sky |

Yuuuip you got it. Congrats guys. That's a sweet machine. I'll set it up with monique again I'll call her Monday and when you have the paperwork send er over. Again we got ur backs guys. Awesome working with you guys. Cheers

Sent from my Samsung Galaxy smartphone.
-------- Original message --------
From: Jacki Fullerton <jacki@bigskyidaho.com>
Date: 2016-04-29 2:33 PM (GMT-08:00)
To: Rob Welling <rob.x5transport@gmail.com>
Subject: Big Sky

Hi Rob –

Sounds like Jeremy bought an excavator at the Edmonton Auction. It's a 320 CAT (American made) around 45,000 lbs. We should have the paperwork from Ritchie Bros on Monday. He would like it ASAP. I would like you to handle all the nasty customs stuff just like last time ☺!!!

He just wanted to make sure to get in your que so that we are good to go as soon as possible, he is hoping to have it very soon.

Thanks,

Jacki

1



**Jacki Fullerton** Construction Manager
**Big Sky Corp.**
P: 208.772.9646 C: 208.659.9532
10063 N Navion Drive Hayden, ID 83835

WEBSITE    EMAIL    VCARD

free from company    com

| | |
|---|---|
| **From:** | Rob Welling <rob.x5transport@gmail.com> |
| **Sent:** | Monday, May 2, 2016 10:04 AM |
| **To:** | Jacki Fullerton |
| **Subject:** | Re: Big Sky Excavator |

On it, and we are getting it going...

Rob Welling
President
X5 Transport
403-850-2025 Office
Fax 587-471-1377
Your Trusted source for all
your shipping needs.
Customer satisfaction is # 1



On Mon, May 2, 2016 at 7:54 AM, Jacki Fullerton <jacki@bigskyidaho.com> wrote:

Hi Rob –

Attached is our invoice from Ritchie Bros. What else will you need me to get in order to get this one going and get her down here☺

Thanks again for taking care of all of this.



**Jacki Fullerton** Construction Manager
**Big Sky Corp.**
P: 208.772.9646 C: 208.659.9532
10063 N Navion Drive Hayden, ID 83835
🏠 WEBSITE  ✉ EMAIL  ⬇ VCARD

free from company⟍ ⋅.com

1

| | |
|---|---|
| **From:** | rob.x5transport <rob.x5transport@gmail.com> |
| **Sent:** | Wednesday, May 4, 2016 2:57 PM |
| **To:** | Jacki Fullerton |
| **Subject:** | Re: Big Sky Excavator |

HI Jackie sorry I missed you yesterday I was in the mountains rains travelling back from my father in laws funeral.  Machine is scheduled to be picked up tomorrow am and down to you by Tuesday k.  I'll call Monique now as I do have some signal just stopped for a meal with the fam

Sent from my Samsung Galaxy smartphone.
-------- Original message --------
From: Jacki Fullerton <jacki@bigskyidaho.com>
Date: 2016-05-04 2:51 PM (GMT-08:00)
To: Rob Welling <rob.x5transport@gmail.com>
Subject: Big Sky Excavator

Hi Rob –

Just checking in again on the excavator. Please let me know if you need anything else. I still have not heard from Monique.

Thanks!

**Jacki Fullerton** Construction Manager
**Big Sky Corp.**
P: 208.772.9646 C: 208.659.9532
10063 N Navion Drive Hayden, ID 83835

1

| | |
|---|---|
| **From:** | rob.x5transport <rob.x5transport@gmail.com> |
| **Sent:** | Wednesday, May 4, 2016 7:30 PM |
| **To:** | Jacki Fullerton |
| **Subject:** | RE: Big Sky Excavator |

Yes that's fine is everything ok?

Sent from my Samsung Galaxy smartphone.
-------- Original message --------
From: Jacki Fullerton <jacki@bigskyidaho.com>
Date: 2016-05-04 4:20 PM (GMT-07:00)
To: "rob.x5transport" <rob.x5transport@gmail.com>
Subject: RE: Big Sky Excavator

Hi Rob –

So it is past the cut off for the wire transfer so I am not certain they will release the truck to you tomorrow. Any chance we can postpone until Friday for pick up?

**Jacki Fullerton**

Construction Manager

Big Sky Development, Inc.

P: 208.772.9646 F: 208.762.6376

**From:** rob.x5transport [mailto:rob.x5transport@gmail.com]
**Sent:** Wednesday, May 4, 2016 2:57 PM
**To:** Jacki Fullerton <jacki@bigskyidaho.com>
**Subject:** Re: Big Sky Excavator

HI Jackie sorry I missed you yesterday I was in the mountains rains travelling back from my father in laws funeral. Machine is scheduled to be picked up tomorrow am and down to you by Tuesday k. I'll call Monique now as I do have some signal just stopped for a meal with the fam

Sent from my Samsung Galaxy smartphone.

-------- Original message --------

From: Jacki Fullerton <jacki@bigskyidaho.com>

Date: 2016-05-04 2:51 PM (GMT-08:00)

To: Rob Welling <rob.x5transport@gmail.com>

Subject: Big Sky Excavator


Hi Rob –


Just checking in again on the excavator. Please let me know if you need anything else. I still have not heard from Monique.


Thanks!




**Jacki Fullerton** Construction Manager
**Big Sky Corp.**
P: 208.772.9646 C: 208.659.9532
10063 N Navion Drive Hayden, ID 83835

| | |
|---|---|
| **From:** | rob.x5transport <rob.x5transport@gmail.com> |
| **Sent:** | Wednesday, May 4, 2016 7:35 PM |
| **To:** | Jacki Fullerton |
| **Subject:** | RE: Big Sky Excavator |

No worries I guess sometimes they take longer. but don't worry we got yiu covered

Sent from my Samsung Galaxy smartphone.
-------- Original message --------
From: Jacki Fullerton <jacki@bigskyidaho.com>
Date: 2016-05-04 4:02 PM (GMT-07:00)
To: "rob.x5transport" <rob.x5transport@gmail.com>
Subject: RE: Big Sky Excavator

Awesome, thanks. I will make sure they have the wire transfer done so they will let you pick it up☺

# Jacki Fullerton

Construction Manager

Big Sky Development, Inc.

P: 208.772.9646 F: 208.762.6376

From: rob.x5transport [mailto:rob.x5transport@gmail.com]
Sent: Wednesday, May 4, 2016 2:57 PM
To: Jacki Fullerton <jacki@bigskyidaho.com>
Subject: Re: Big Sky Excavator

HI Jackie sorry I missed you yesterday I was in the mountains rains travelling back from my father in laws funeral. Machine is scheduled to be picked up tomorrow am and down to you by Tuesday k. I'll call Monique now as I do have some signal just stopped for a meal with the fam

Sent from my Samsung Galaxy smartphone.

-------- Original message --------

From: Jacki Fullerton <jacki@bigskyidaho.com>

Date: 2016-05-04 2:51 PM (GMT-08:00)

To: Rob Welling <rob.x5transport@gmail.com>

Subject: Big Sky Excavator


Hi Rob –


Just checking in again on the excavator. Please let me know if you need anything else. I still have not heard from Monique.


Thanks!


**Jacki Fullerton** Construction Manager
**Big Sky Corp.**
P: 208.772.9646 C: 208.659.9532
10063 N Navion Drive Hayden, ID 83835

| | |
|---|---|
| **From:** | Rob Welling <rob.x5transport@gmail.com> |
| **Sent:** | Thursday, May 5, 2016 12:03 PM |
| **To:** | Jacki Fullerton |
| **Subject:** | Re: Big Sky Excavator |

Ok great thanks Jacki Ill follow up with her now ok.. Thanks again

Rob Welling
President
X5 Transport
403-850-2025 Office
Fax 587-471-1377
Your Trusted source for all
your shipping needs.
Customer satisfaction is # 1



On Thu, May 5, 2016 at 12:02 PM, Jacki Fullerton <jacki@bigskyidaho.com> wrote:

Ok, the wire transfer will be done in an hour or so. So tomorrow is a go to pick up the excavator. I still haven't heard from Monique though and I know she will want some $$ and might need extra paperwork.

Thanks for your help!

## Jacki Fullerton

Construction Manager

Big Sky Development, Inc.

P: 208.772.9646 F: 208.762.6376

From: rob.x5transport [mailto:rob.x5transport@gmail.com]
Sent: Wednesday, May 4, 2016 7:38 PM
To: Jacki Fullerton <jacki@bigskyidaho.com>
Subject: RE: Big Sky Excavator

hehe no worries at all we always have a plan a b c d and even a plan e

Shipping life  haha

`

Sent from my Samsung Galaxy smartphone.

-------- Original message --------

From: Jacki Fullerton <jacki@bigskyidaho.com>

Date: 2016-05-04 8:35 PM (GMT-07:00)

To: "rob.x5transport" <rob.x5transport@gmail.com>

Subject: RE: Big Sky Excavator

The boss was out of town over the weekend then had issues at the airport and didn't get back until today and forgot to tell the bookkeeper what to do....

Thanks for the help!

Sent from my Verizon, Samsung Galaxy smartphone

-------- Original message --------

From: "rob.x5transport" <rob.x5transport@gmail.com>

Date: 5/4/16 7:30 PM (GMT-08:00)

To: Jacki Fullerton <jacki@bigskyidaho.com>

Subject: RE: Big Sky Excavator

Yes that's fine is everything ok?

Sent from my Samsung Galaxy smartphone.

-------- Original message --------

From: Jacki Fullerton <jacki@bigskyidaho.com>

Date: 2016-05-04 4:20 PM (GMT-07:00)

To: "rob.x5transport" <rob.x5transport@gmail.com>

Subject: RE: Big Sky Excavator

Hi Rob –

So it is past the cut off for the wire transfer so I am not certain they will release the truck to you tomorrow. Any chance we can postpone until Friday for pick up?

**Jacki Fullerton**

Construction Manager

Big Sky Development, Inc.

P: 208.772.9646 F: 208.762.6376

**From:** rob.x5transport [mailto:rob.x5transport@gmail.com]
**Sent:** Wednesday, May 4, 2016 2:57 PM
**To:** Jacki Fullerton <jacki@bigskyidaho.com>
**Subject:** Re: Big Sky Excavator

HI Jackie sorry I missed you yesterday I was in the mountains rains travelling back from my father in laws funeral. Machine is scheduled to be picked up tomorrow am and down to you by Tuesday k. I'll call Monique now as I do have some signal just stopped for a meal with the fam

Sent from my Samsung Galaxy smartphone.

-------- Original message --------

From: Jacki Fullerton <jacki@bigskyidaho.com>

Date: 2016-05-04 2:51 PM (GMT-08:00)

To: Rob Welling <rob.x5transport@gmail.com>

Subject: Big Sky Excavator

Hi Rob –

Just checking in again on the excavator. Please let me know if you need anything else. I still have not heard from Monique.

Thanks!

Jacki Fullerton Construction Manager
Big Sky Corp.
P: 208.772.9646 C: 208.659.9532
10063 N Navion Drive Hayden, ID 83835

**From:** Rob Welling <rob.x5transport@gmail.com>
**Sent:** Monday, May 9, 2016 12:55 PM
**To:** Jacki Fullerton
**Subject:** Re: ??????????

Jacki any word????


Rob Welling
President
X5 Transport
403-850-2025 Office
Fax 587-471-1377
Your Trusted source for all
 your shipping needs.
Customer satisfaction is # 1



On Mon, May 9, 2016 at 1:04 PM, Rob Welling <rob.x5transport@gmail.com> wrote:
 Ok let me know as soon as you here so i can get the truck in k.. Damm ritchies


 Rob Welling
 President
 X5 Transport
 403-850-2025 Office
 Fax 587-471-1377
 Your Trusted source for all
  your shipping needs.
 Customer satisfaction is # 1



On Mon, May 9, 2016 at 12:55 PM, Jacki Fullerton <jacki@bigskyidaho.com> wrote:

 Still fighting with RB to find the $$$


 **Jacki Fullerton**

 Construction Manager

 Big Sky Development, Inc.

 P: 208.772.9646 F: 208.762.6376

Rob Welling

President

X5 Transport

403-850-2025 Office

Fax 587-471-1377

Your Trusted source for all

your shipping needs.

Customer satisfaction is # 1

| | |
|---|---|
| **From:** | rob.x5transport <rob.x5transport@gmail.com> |
| **Sent:** | Monday, May 9, 2016 1:28 PM |
| **To:** | Jacki Fullerton |
| **Subject:** | RE: ??????????? |

Hahs oh gezzz ok no worries just stay calm ok. They are extremely overloaded over 5 here and these things do happen
  I can get back at it as soon as it's ready k.


Sent from my Samsung Galaxy smartphone.
-------- Original message --------
From: Jacki Fullerton <jacki@bigskyidaho.com>
Date: 2016-05-09 2:08 PM (GMT-07:00)
To: Rob Welling <rob.x5transport@gmail.com>
Subject: RE: ???????????


They are now not answering my phone call...I have sent them all the information to show the wire was complete...I don't know what to do with them. I am so sorry for this.


## Jacki Fullerton

Construction Manager

Big Sky Development, Inc.

P: 208.772.9646 F: 208.762.6376


**From:** Rob Welling [mailto:rob.x5transport@gmail.com]
**Sent:** Monday, May 9, 2016 12:55 PM
**To:** Jacki Fullerton <jacki@bigskyidaho.com>
**Subject:** Re: ???????????


Jacki any word????


Rob Welling

1

President

X5 Transport

403-850-2025 Office

Fax 587-471-1377

Your Trusted source for all

your shipping needs.

Customer satisfaction is # 1

On Mon, May 9, 2016 at 1:04 PM, Rob Welling <rob.x5transport@gmail.com> wrote:

Ok let me know as soon as you here so i can get the truck in k.. Damm ritchies

Rob Welling

President

X5 Transport

403-850-2025 Office

Fax 587-471-1377

Your Trusted source for all

your shipping needs.

Customer satisfaction is # 1

On Mon, May 9, 2016 at 12:55 PM, Jacki Fullerton <jacki@bigskyidaho.com> wrote:

Still fighting with RB to find the $$$

**Jacki Fullerton**

Construction Manager

Big Sky Development, Inc.

P: 208.772.9646 F: 208.762.6376

**From:** Rob Welling [mailto:rob.x5transport@gmail.com]
**Sent:** Monday, May 9, 2016 11:55 AM
**To:** Jacki Fullerton <jacki@bigskyidaho.com>
**Subject:** ???????????

Rob Welling

President

X5 Transport

403-850-2025 Office

Fax 587-471-1377

Your Trusted source for all

your shipping needs.

Customer satisfaction is # 1



**Jacki Fullerton**

From:           rob.x5transport <rob.x5transport@gmail.com>
Sent:           Monday, May 9, 2016 1:29 PM
To:             Jacki Fullerton
Subject:        RE: ??????????

Monique is off haha I just sent you a email before reading this . ok I'll get in it hanks

Sent from my Samsung Galaxy smartphone.
-------- Original message --------
From: Jacki Fullerton <jacki@bigskyidaho.com>
Date: 2016-05-09 2:22 PM (GMT-07:00)
To: Rob Welling <rob.x5transport@gmail.com>
Subject: RE: ??????????

They have released the order. I haven't heard from Monique yet though.

# Jacki Fullerton

Construction Manager

Big Sky Development, Inc.

P: 208.772.9646 F: 208.762.6376

From: Rob Welling [mailto:rob.x5transport@gmail.com]
Sent: Monday, May 9, 2016 12:55 PM
To: Jacki Fullerton <jacki@bigskyidaho.com>
Subject: Re: ??????????

Jacki any word????

Rob Welling

President

X5 Transport

403-850-2025 Office

Fax 587-471-1377

Your Trusted source for all

your shipping needs.

Customer satisfaction is # 1



On Mon, May 9, 2016 at 1:04 PM, Rob Welling <rob.x5transport@gmail.com> wrote:

Ok let me know as soon as you here so i can get the truck in k.. Damm ritchies

Rob Welling

President

X5 Transport

403-850-2025 Office

Fax 587-471-1377

Your Trusted source for all

your shipping needs.

Customer satisfaction is # 1



On Mon, May 9, 2016 at 12:55 PM, Jacki Fullerton <jacki@bigskyidaho.com> wrote:

Still fighting with RB to find the $$$

**Jacki Fullerton**

Construction Manager

Big Sky Development, Inc.

P: 208.772.9646 F: 208.762.6376

**From:** Rob Welling [mailto:rob.x5transport@gmail.com]
**Sent:** Monday, May 9, 2016 11:55 AM
**To:** Jacki Fullerton <jacki@bigskyidaho.com>
**Subject:** ???????????

Rob Welling

President

X5 Transport

403-850-2025 Office

Fax 587-471-1377

Your Trusted source for all

 your shipping needs.

Customer satisfaction is # 1

| | |
|---|---|
| **From:** | Rob Welling <rob.x5transport@gmail.com> |
| **Sent:** | Thursday, May 12, 2016 11:06 AM |
| **To:** | Jacki Fullerton |
| **Subject:** | Fwd: Invoice from X5 Transport Inc: INV-0033332 |

Rob Welling
President
X5 Transport
403-850-2025 Office
Fax 587-471-1377
Your Trusted source for all
your shipping needs.
Customer satisfaction is # 1



---------- Forwarded message ----------
From: **X5 Transport Inc** <no-reply@invoiced.com>
Date: Thu, May 12, 2016 at 9:34 AM
Subject: Invoice from X5 Transport Inc: INV-0033332
To: "Construction Manager Big Sky Development, Inc. P: 208.772.9646 F: 208.762.6376"
<rob.x5transport@gmail.com>

---

# X5 Transport Inc

Hi Construction Manager Big Sky Development, Inc. P: 208.772.9646 F: 208.762.6376 ,

A new invoice has been issued on your account: # INV-0033332. The balance of $5,700 is now outstanding.

We appreciate your business.

View Invoice

Powered by **Invoiced**

| | |
|---|---|
| **From:** | Rob Welling <rob.x5transport@gmail.com> |
| **Sent:** | Thursday, May 12, 2016 11:58 AM |
| **To:** | Jacki Fullerton |
| **Subject:** | Re: Hello |

No worries get well k, Feel better

Rob Welling
President
X5 Transport
403-850-2025 Office
Fax 587-471-1377
Your Trusted source for all
your shipping needs.
Customer satisfaction is # 1



On Thu, May 12, 2016 at 12:56 PM, Jacki Fullerton <jacki@bigskyidaho.com> wrote:

I got it Rob, I am home sick today but I will have her take care of it tomorrow.

## Jacki Fullerton

Construction Manager

Big Sky Development, Inc.

P: 208.772.9646 F: 208.762.6376

**From:** Rob Welling [mailto:rob.x5transport@gmail.com]
**Sent:** Thursday, May 12, 2016 11:23 AM
**To:** Jacki Fullerton <jacki@bigskyidaho.com>
**Subject:** Hello

Hi there Jacki, Sent you off the invoice did you receive?, Everything ok?

Rob Welling

President

X5 Transport

403-850-2025 Office

Fax 587-471-1377

Your Trusted source for all

 your shipping needs.

Customer satisfaction is # 1



| | |
|---|---|
| **From:** | Rob Welling <rob.x5transport@gmail.com> |
| **Sent:** | Friday, May 13, 2016 10:41 AM |
| **To:** | Jacki Fullerton |
| **Subject:** | Re: Hello |

Lol well we just want you guys comfortable and happy. I will change the invoice ok.  Thanks Jacki


Rob Welling
President
X5 Transport
403-850-2025 Office
Fax 587-471-1377
Your Trusted source for all
your shipping needs.
Customer satisfaction is # 1



On Fri, May 13, 2016 at 11:39 AM, Jacki Fullerton <jacki@bigskyidaho.com> wrote:
 That would be great Rob...I might be able to peel him off the ceiling:)



Sent from my Verizon, Samsung Galaxy smartphone


-------- Original message --------
From: Rob Welling <rob.x5transport@gmail.com>
Date: 5/13/16 10:37 AM (GMT-08:00)
To: Jacki Fullerton <jacki@bigskyidaho.com>
Subject: Re: Hello

Hi Jacki thanks for your message, the thing is there is a lot more trucks running in ontario so we have a bigger
pool to get from, as well that was our owned x5 truck on your last one.  we did have a 24 hour wait at the
border they did also hit me with a wait for the day at Ritchie bros when he waited all day and couldn't load. I
can drop it down to 5000 if that will help you guys out.  I love working for you and would defiantly like to still
be your carrier of choice.  Does that help Jacki??  Basically when all said and done were pretty much breaking
even and We have terminated our carrier contract with the trucking company and we have already paid them.
Our biggest thing is to make sure you are comfortable and happy that is all. First and for most!!!


Rob Welling
President
X5 Transport
403-850-2025 Office
Fax 587-471-1377
Your Trusted source for all

your shipping needs.
Customer satisfaction is # 1



On Fri, May 13, 2016 at 11:27 AM, Jacki Fullerton <jacki@bigskyidaho.com> wrote:
Hi Rob

I just opened the invoice and noticed it is quite a bit higher than the dump truck and it was a lot closer. Can you tell me what the difference was?

Thanks.


Sent from my Verizon, Samsung Galaxy smartphone


-------- Original message --------
From: Rob Welling <rob.x5transport@gmail.com>
Date: 5/12/16 11:22 AM (GMT-08:00)
To: Jacki Fullerton <jacki@bigskyidaho.com>
Subject: Hello

Hi there Jacki, Sent you off the invoice did you receive?, Everything ok?

Rob Welling
President
X5 Transport
403-850-2025 Office
Fax 587-471-1377
Your Trusted source for all
 your shipping needs.
Customer satisfaction is # 1



# Plaintiff's Exhibit 6

 **TRAVELERS J**  385 Washington Street
St. Paul, MN 55102

Jill James
Claim Counsel
Bond & Specialty Insurance Claim
Phone: (651) 310-3927
Fax: (866) 608-9632
Email: JAJAMES@travelers.com

September 28, 2017
**Via E-Communication Only**

George R. Wentz
Davillier Law Group, LLC
212 North First Avenue
Suite 303
Standpoint, Idaho 83864
Email Address: GWentz@DavillierLawGroup.com

In Care of:

Jeremy Tripp
Big Sky Development, Inc.
10063 N Navion Drive
HAYDEN, ID 83835

RE:     Insured Name:     Big Sky Development, Inc.
        Policy Number:    055-LB-106160096
        Matter Number:    037-BSE-T1705497-NR

Dear Mr. Tripp:

This is a follow-up to our communications with your attorney, George Wentz on August 9, 2017 and
serves to acknowledge Travelers Casualty and Surety Company of America's (hereinafter "Travelers")
August 8, 2017 receipt of the proof of loss dated July 24, 2017 submitted for coverage under Insuring
Agreement G. Funds Transfer Fraud of the above-captioned Policy.

Based on our review of the materials provided to us, and for the reasons set forth below, Travelers must
respectfully disclaim coverage for this matter under the above-referenced Policy. Please note that
certain terms in this letter are defined terms under the Policy. Kindly refer to the Policy for the specific
meanings of those terms.

**Brief Description of the Facts**

Travelers bases its understanding of the factual background of this claim on the information that Big
Sky Development, Inc. (hereinafter "Big Sky") provided, including, but not limited to, the Proof of
Loss.

Travelers understands that during an equipment auction, where Big Sky's Jackie Fullerton attended
and purchased two pieces of equipment, Rob Welling approached her claiming to be a legitimate
equipment delivery and customs clearing services. Purportedly with Mr. Welling's assistance, the two
pieces of equipment purchased at the auction were successfully delivered to Big Sky at minimal
charges.

*********************** **Our toll-free number is 800-842-8496** ***********************
If possible, please send future communications and documents concerning this claim via email to JAJAMES@travelers.com Please include
the claim number in the subject line. (Please note that in certain cases we may still request original documents).
Rev 11/09/13                                                                                    CR-15CCCD

Through email communications, Mr. Welling next claimed that his company, X5 Transport, purportedly located in Calgary Canada could also sell construction equipment, and claimed to offer Big Sky an opportunity to purchase a 2012 CAT 321-LC Excavator, a CAT 950 Wheel Loader, and a CAT 330 Excavator all for $248,000.00, which X5 would deliver from Canada to Big Sky in Hayden, Idaho, after receiving payment in full. Mr. Welling claimed that they would handle all of the customs processing. On April 20, 2017, Big Sky wired payment, but the equipment X5/Mr. Welling never delivered the equipment.

## The Policy

Travelers issued Policy number 055-LB-106160096 to Big Sky Development, Inc. with effective dates from August 13, 2015 to August 13, 2018. We note that the Policy includes Insuring Agreements F. Computer Crime and G. Funds Transfer Fraud with $250,000.00 Single Loss Limits of Insurance subject to a $2,500.00 Single Loss Retention.

Effective August 13, 2016 Big Sky Development, Inc. requested and received an increase in coverage under Insuring Agreements F. Computer Crime and G. Funds Transfer Fraud, increasing its Single Loss Limit of Insurance to $500,000.00, subject to a $2,500.00 Single Loss Retention[1].

Travelers has reviewed this claim under all available Insuring Agreements in the Policy, including Insuring Agreements F. Computer Crime and G. Funds Transfer Fraud, which appeared to give Big Sky the most favorable possibility of coverage.

Please direct your attention to the following relevant Policy Provisions:

II.     INSURING AGREEMENTS

     **F.**     **Computer Crime**

     **F.1.**     The Company will pay the Insured for the Insured's direct loss of, or direct loss from damage to, Money, Securities and Other Property directly caused by Computer Fraud.

<div align="center">***</div>

     **G.**     **Funds Transfer Fraud**

     The Company will pay the Insured for the Insured's direct loss of Money and Securities contained in the Insured's Transfer Account directly caused by Funds Transfer Fraud.

III.     DEFINITIONS

     E.     *Computer Fraud* means:

     The use of any computer to fraudulently cause a transfer of Money, Securities or Other Property from inside the Premises or Financial Institution Premises:

---

[1] See Endorsement CRI-7112 Rev. 12-14.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\* **Our toll-free number is 800-842-8496** \*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
If possible, please send future communications and documents concerning this claim via email to JAJAMES@travelers.com Please include the claim number in the subject line. (Please note that in certain cases we may still request original documents).
Rev 11/09/13                                                    CR-15CCCD

    1.    to a person (other than a Messenger) outside the Premises or Financial Institution Premises; or

    2.    to a place outside the Premises or Financial Institution Premises.

G.    *Computer System* means:

a computer and all input, output, processing, storage and communication facilities and equipment that are connected to such a device and that the operating system or application software used by the Insured are under the direct operational control of the Insured. Off-line media libraries are deemed to be part of such Computer System.

\*\*\*

Q.    *Electronic Data* means:

facts or information converted to a form:

    1.    usable in a Computer System;
    2    that does not provide instructions or directions to a Computer System; or
    3.    that is stored on electronic processing media for use by a Computer Program.

\*\*\*

AA.    *Funds Transfer Fraud* means:

    1.    an electronic, telegraphic, cable, teletype or telephone instruction fraudulently transmitted to a Financial Institution directing such institution to debit a Transfer Account and to transfer, pay or deliver Money or Securities from the Transfer Account which instruction purports to have been transmitted by the Insured, but was in fact fraudulently transmitted by someone other than the Insured without the Insured's knowledge or consent;

    2.    a fraudulent written instruction, other than one covered under Insuring Agreement B., issued to a Financial Institution directing such Financial Institution to debit a Transfer Account and to transfer, pay or deliver Money or Securities from such Transfer Account by use of an electronic funds transfer system at specified intervals or under specified conditions, which written instruction purports to have been issued by the Insured but was in fact fraudulently issued, Forged or altered by someone other than the Insured without the Insured's knowledge or consent; or

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\* **Our toll-free number is 800-842-8496** \*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
If possible, please send future communications and documents concerning this claim via email to JAJAMES@travelers.com Please include the claim number in the subject line. (Please note that in certain cases we may still request original documents).
Rev 11/09/13                                                    CR-15CCCD

3.      an electronic, telegraphic, cable, teletype, telefacsimile, telephone or written instruction initially received by the Insured, which purports to have been transmitted by an Employee, but which was in fact fraudulently transmitted by someone else without the Insured's or the Employee's consent.

\*\*\*

II.      *Money* means:

a medium of exchange in current use and authorized or adopted by a domestic or foreign government, including currency, coins, bank notes, bullion, travelers' checks, registered checks and money orders held for sale to the public.

\* \* \*

KK.      *Other Property* means:

any tangible property other than Money and Securities that has intrinsic value.

\* \* \*

VV.      *Transfer Account* means:

an account maintained by the Insured at a Financial Institution from which the Insured can initiate the transfer, payment or delivery of Money or Securities:

1.      by means of electronic, telegraphic, cable, teletype, telefacsimile or telephone instructions communicated directly or through an electronic funds transfer system; or

2.      by means of written instructions (other than those described in Insuring Agreements B. and H.1.) establishing the conditions under which such transfers are to be initiated by such Financial Institution through an electronic funds transfer system.

IV.      EXCLUSIONS

G.      This Crime Policy will not apply to loss or damages resulting directly or indirectly from the input of Electronic Data by a natural person having the authority to enter the Insured's Computer System, unless covered under Insuring Agreements A.1., A.2., A.3., F.2. or G.

H.      This Crime Policy will not apply to loss resulting directly or indirectly from forged, altered or fraudulent documents or written instruments used as

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\* **Our toll-free number is 800-842-8496** \*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

If possible, please send future communications and documents concerning this claim via email to JAJAMES@travelers.com Please include the claim number in the subject line. (Please note that in certain cases we may still request original documents).

Rev 11/09/13             CR-15CCCD

source documentation in the preparation of Electronic Data, unless covered under Insuring Agreements A.1., A.2., or A.3.

***

R.     This Crime Policy will not apply to loss resulting directly or indirectly from the giving or surrendering of Money, Securities or Other Property in any exchange or purchase, whether or not fraudulent, with any other party not in collusion with an Employee, except when covered under Insuring Agreement E.

In addition to the Policy language above, other terms, conditions, exclusions, and limitations may apply to the claimed loss.

## Coverage Analysis

As referenced above, Travelers conducted a review and analysis under every available Insuring Agreement, including Insuring Agreements F.1 Computer Fraud and G. Funds Transfer Fraud, which appeared to give Big Sky the most favorable possibility of coverage. Unfortunately, after careful review and analysis of the documentation and information provided, it appears the matter does not fall within the scope of coverage afforded under the Crime Policy, as set forth in further detail below.

### Insuring Agreement F.1. Computer Fraud

Based on the information currently available there is no coverage under Insuring Agreement F. Computer Fraud because the loss was not directly caused by the fraudulent use of a Computer. Although Mr. Welling used email as part of his fraudulent scheme, the loss was not caused directly by the use of a computer to fraudulently cause a transfer of Money from inside the Premises or Financial Institution Premises to some outside location. Mr. Welling did not directly cause Money to be transferred from Big Sky's Premises. Rather, he induced Big Sky to voluntarily send Money in anticipation of its order to purchase the construction equipment, which Mr. Welling promised to deliver across the Canadian border directly to Big Sky in Idaho. Thus, Big Sky has not identified a Computer Fraud as defined in the Policy. As a result, coverage for this claim is not triggered under Insuring Agreement F.1.

Unfortunately, even if the claim triggered Insuring Agreement F.1., Exclusion G. would exclude coverage. As noted above, it excludes loss or damages resulting indirectly from an input of electronic data by a natural person having authority to enter the Insured's computer system unless covered under certain enumerated insuring agreements. Here, an authorized Big Sky employee input the electronic data into the system to process the order thus triggering the application of Exclusion G. Additionally, Exclusion H would also exclude coverage under Insuring Agreement F.1. Exclusion H. excludes this loss from coverage because the fraudulent emails are source documents from which a Big Sky Employee input information in Big Sky's Computer. No exception to the Exclusion applies. Insuring Agreement A. is not triggered because there is no that indication any Employee was in the fraudulent scheme.

*********************** **Our toll-free number is 800-842-8496** ***********************
If possible, please send future communications and documents concerning this claim via email to JAJAMES@travelers.com Please include the claim number in the subject line. (Please note that in certain cases we may still request original documents).
Rev 11/09/13                                                                                                          CR-15CCCD

Finally, Exclusion R precludes coverage for this loss because the shipment was voluntarily surrendered as the result of an "exchange or purchase, whether or not fraudulent." Big Sky wired $248,000.00 to purchase 3 large pieces of construction equipment out of Canada based upon fraudulent representations made by Mr. Welling. Unfortunately, the fact that the purported new vendor was fraudulently posing as a legitimate construction equipment dealer to procure the transaction does not change the application of the Exclusion. Unfortunately, no exception to the Exclusion applies. As previously stated, there is no evidence that an employee was in any way involved in the fraudulent scheme. Further, there is no evidence that Counterfeit Money or Money Orders were used in the transaction, rendering inapplicable the exception to this exclusion under Insuring Agreement E.

### *Insuring Agreement G. Funds Transfer Fraud*

Unfortunately, it does not appear there is coverage under Insuring Agreement G. Funds Transfer Fraud. The Funds Transfer Fraud provides certain coverage for the Insured's direct loss of Money and Securities contained in the Insured's Transfer Account directly caused by Funds Transfer Fraud. It does not appear the instructions are fraudulently transmitted, instead the instructions appear to be made by an employee of Big Sky with authority to make such transactions. Funds Transfer Fraud definition 1 and 2 concern fraudulent instructions purportedly transmitted by the Insured to a Financial Institution to debit a Transfer Account. Definition 1 and 2 do not apply because the alleged instructions to the Financial Institution did not come from a fraudster purporting to be Big Sky, instead the instructions came from Big Sky, namely Ms. Fullerton. It does not appear the instructions were fraudulently transmitted, instead the instructions appear to be made by an individual with authority to make such transactions. Additionally, the instructions Big Sky sent to its bank to make the wire transfer, were not forged or altered. Section 3 of the definition concerns instructions received by the Insured which purport to have been transmitted by an employee, but which were in fact fraudulently transmitted by someone else without the Insured's or the Insured's employee's consent. Finally, definition 3 does not apply because Mr. Welling's email setting forth the fraudulent wire instructions did not purport to be from an employee of Big Sky. Regrettably, the loss does not fall within Insuring Clause G. because the fraudulent activity does not meet the definition of Funds Transfer Fraud as defined above.

For the reasons stated above, even if this claim triggered Insuring Agreement G., for purposes of this analysis only, coverage would be excluded by the application of Exclusion R. It excludes coverage for loss of money voluntarily surrendered as the result of an exchange or purchase, whether or not fraudulent. Here the wire transfer of $248,000.00 was made to X5/Mr. Welling for the purchase of 3 pieces of large construction equipment. Unfortunately, the fact the transfer instructions were fraudulent does not change the application of the exclusion.

### Conclusion

Because we view the foregoing as dispositive of coverage for this matter, we have not raised other Policy terms, conditions, limitations or exclusions that may further limit or exclude coverage for this matter. As I am sure you can appreciate, Travelers' attention to this matter is subject to a full and complete reservation of all rights, remedies and defenses under the Policy or otherwise including but not limited to the right to raise other Policy terms and conditions as defenses to coverage in the future as appropriate. Neither this letter, nor any actions by Travelers or any of its agents shall constitute or be deemed a waiver of any right or defense available to Travelers under the Policy or applicable law.

*********************** **Our toll-free number is 800-842-8496** ************************
If possible, please send future communications and documents concerning this claim via email to JAJAMES@travelers.com Please include the claim number in the subject line. (Please note that in certain cases we may still request original documents).
Rev 11/09/13                                                                                                                                    CR-15CCCD

However, if there is additional information which you believe may alter our coverage position I invite you to provide me with that information for further coverage consideration. Otherwise, Travelers intends to take no further action in this matter.

We regret we are unable to advise you more favorably regarding this matter. Of course, please do not hesitate to contact us if you have any questions regarding Travelers' position in this matter.

Please contact me at the above number if you have any questions.

Sincerely,

Jill James

cc:     Patty Cowen, BK-JET GROUP LLC - pcowen@bkjet.com
        Kimberly McMacken, Travelers – KMCMACKE@travelers.com

*********************** **Our toll-free number is 800-842-8496** ***********************
If possible, please send future communications and documents concerning this claim via email to JAJAMES@travelers.com Please include
the claim number in the subject line. (Please note that in certain cases we may still request original documents).
Rev 11/09/13                                                                                    CR-15CCCD